```
RUN DATE: 03/22/2018 Bexar County Centralized Docket System Pg: 1  PGM: DKB4900P
RUN TIME: 10:28:47                                                  JCL: SPPROD
```

---

```
                        * D O C K E T   I N F O R M A T I O N *

CAUSE NUM: 2017CI09876
DATE FILED: 05/30/2017        COURT: 073      UNPAID BALANCE:    0.00
TYPE OF DOCKET: EMPLOYMENT-DISCRIMIN
                        * * * S T Y L E * * *
        CAROLINE ROSS
             VS JUDSON INDEPENDENT SCHOOL DISTRICT

ACCOUNT TYPE:              ACCOUNT NO:
ACCESS: 0                  STATUS: PENDING
LIST TYPE: C
                    * L I T I G A N T   I N F O R M A T I O N *
SEQ  LAST /FIRST /MIDDLE NAME        LIT. TYPE/ATTORNEY         DATE

00001 ROSS CAROLINE                  PLAINTIFF                05/30/2017
                                       00001 WATTS, LARRY

00002 JUDSON INDEPENDENT SCHOOL DISTRICT  DEFENDANT           05/30/2017
                                       00002 WOOD, DONALD CRAIG

                    * S E R V I C E S   I N F O R M A T I O N *
SEQ  SERVICE TYPE / DATES         DIST   LITIGANT NAME

00001 CITATION CERTIFIED MAIL         150
      ISS: 07/03/2017  REC: 07/03/2017  EXE: 07/06/2017  RET: 07/10/2017

                    * A T T O R N E Y   I N F O R M A T I O N *
 SEQ DATE FILED BAR NBR. NAME               STATUS       DATE

00001 05/30/2017 20981000  WATTS, LARRY             SELECTED   05/31/2017
00002 07/07/2017 21888700  WOOD, DONALD CRAIG       SELECTED   07/07/2017
00003 03/02/2018 24071347  PAYNE, KATIE E           SELECTED   03/02/2018

                    * P R O C E E D I N G   I N F O R M A T I O N *
 SEQ    DATE FILED      REEL    IMAGE   PAGE COUNT

00001   05/30/2017      0000    0000     0000
        DESC: PETITION
00002   05/31/2017      0000    0000     0000
        DESC: FIRST AMENDED PETITION
00003   06/29/2017      0000    0000     0000
        DESC: SERVICE ASSIGNED TO CLERK 2
00004   06/29/2017      0000    0000     0000
        DESC: REQUEST FOR SERVICE AND PROCES
00005   07/07/2017      0000    0000     0000
        DESC: REQUEST FOR
              COPY OF PETITION
00006   07/07/2017      0000    0000     0000
        DESC: EMAILED COPY OF:
```

```
RUN DATE: 03/22/2018 Bexar County Centralized Docket System Pg: 2  PGM: DKB4900P
RUN TIME: 10:28:47                                                 JCL: SPPROD
```

---

```
              PETITION TO
         WALSH GALLEGOS TREVINO RUSSO & KYLE PC
00007   07/28/2017        0000     0000      0000
   DESC: ORIGINAL ANSWER OF
         JUDSON INDEPENDENT SCHOOL DISTRICT
00008   09/11/2017        0000     0000      0000
   DESC: CERTIFICATE OF WRITTEN DISCOVE
00010   12/28/2017        0000     0000      0000
   DESC: PLEA
         TO JURISDICTION W/PROPOSED ORDER ATTACHE
         D
00011   01/09/2018        0000     0000      0000
   DESC: MOTION FOR CONTINUANCE
         W/ PROPOSED ORDER ATTACHED
00012   01/12/2018        0000     0000      0000
   DESC: MOTION FOR
         TELEPHONIC HEARING (UNOPPOSED)
00016   01/18/2018        0000     0000      0000
   DESC: HEARING/TRIAL CRT REPORTER ASS
         LD LUIS DURAN, 73RD DISTRICT COURT
00017   01/18/2018        0000     0000      0000
   DESC: JUDGES DOCKET NOTES
00018   03/02/2018        0000     0000      0000
   DESC: LETTER TO DISTRICT CLERK
         FR: WALSH GALLEGOS RE: COPIES
00019   03/02/2018        0000     0000      0000
   DESC: EMAILED COPY OF:
         JUDGES NOTES TO; WALSH GALLEGOS
00020   03/08/2018        0000     0000      0000
   DESC: MOTION TO COMPEL
         AND M/F SANCTIONS
00021   03/08/2018        0000     0000      0000
   DESC: SECOND AMENDED PETITION
00022   03/08/2018        0000     0000      0000
   DESC: RESPONSE
         TO PLEA TO THE JURISDICTION
00023   03/16/2018        0000     0000      0000
   DESC: SUPPLEMENTAL
         RESPONSE TO PLEA TO THE JURISDICTION
00024   03/21/2018        0000     0000      0000
   DESC: LETTER TO DISTRICT CLERK
         REQUESTING ENTIRE FILE


                  *TRIAL   INFORMATION*
   SEQ   DATE FILED      COURT        SETT. DATE  TIME     ATTY

00009   12/28/2017        109        01/19/2018 08:30AM   CW
   DESC: NON-JURY TRIAL
         SETTING ON PLEA TO THE JURISDICTION
         **RESET TO 03/09/18**
00013   01/16/2018        109        01/18/2018 08:30AM   LW
   DESC: NON-JURY TRIAL
```

```
RUN DATE: 03/22/2018 Bexar County Centralized Docket System Pg: 3  PGM: DXB4900P
RUN TIME: 10:28:48                                                 JCL: SPPROD
```

---

```
                    SETTING ON H/F CONTINUANCE
                    **ASSIGNED TO JUDGE CANALES**
00014   01/16/2018         109         01/18/2018 08:30AM    LH
        DESC: NON-JURY TRIAL
                    SETTING ON H/F TELEPHONIC HEARING
                    **ASSIGNED TO JUDGE CANALES**
00015   01/16/2018         109         03/09/2018 08:30AM
        DESC: NON-JURY TRIAL
                    SETTING ON PLEA TO THE JURISDICTION
                    **ASSIGNED TO JUDGE ALVARADO**


                    * O R D E R    I N F O R M A T I O N *
        SEQ   DATE FILED JUDGE NAME       VOLUME   PAGE  PAGE CNT   AMOUNT  SOF



                    * B O N D    I N F O R M A T I O N *
        SEQ    DATE FILED  PRINCIPAL
```

CERTIFIED MAIL #70160600000042383509

2017CI09876 S00001

### Case Number: 2017-CI-09876

**CAROLINE ROSS**

vs.

**JUDSON INDEPENDENT SCHOOL DISTRICT**

(Note: Attached document may contain additional litigants).

**CITATION**

 **CRT**

IN THE DISTRICT COURT
73rd JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

**FILED**
O'CLOCK ____ M

**JUL 1 0 2017**

DONNA KAY McKINNEY
District Clerk, Bexar County, Texas

By _____ DEPUTY

**"THE STATE OF TEXAS"**

**DIRECTED TO:**   JUDSON INDEPENDENT SCHOOL DISTRICT
BY SERVING SUPERINTENDENT OF SCHOOL

8012 SHIN OAK DRIVE
LIVE OAK TX 78233-2413

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this CITATION and AMENDED PETITION , a default judgment may be taken against you." Said CITATION with AMENDED PETITION was filed on the 31st day of May, 2017.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 3RD DAY OF July A.D., 2017.

LARRY WATTS
ATTORNEY FOR PLAINTIFF
PO BOX 2214
MISSOURI CITY, TX 77459-9214

**Donna Kay McKinney**
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas 78205

By: *Norma Gonzalez,* Deputy

---

CAROLINE ROSS
vs
JUDSON INDEPENDENT SCHOOL DISTRICT

**Officer's Return**

Case Number: 2017-CI-09876
Court: 73rd Judicial District Court

Came to hand on the 3rd day of July 2017, A.D., at 1:20 o'clock P.M. and EXECUTED (NOT EXECUTED) by CERTIFIED MAIL, on the _____ day of _____ 20___, by delivering to: _____ at 8012 SHIN OAK DRIVE LIVE OAK TX 78233-2413 a true copy of this Citation, upon which I endorsed that date of delivery, together with the accompanying copy of the CITATION with AMENDED PETITION .

Cause of failure to execute this Citation is _____



**Donna Kay McKinney**
Clerk of the District Courts of
Bexar County, TX

By: *Norma Gonzalez,* Deputy

RETURN TO COURT (DK983)

**DOCUMENT SCANNED AS FILED**



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

# OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postmark
Here

JUL 05 2017

Postage
$

JUDSON INDEPENDENT SCHOOL DISTRICT
BY SERVING SUPERINTENDENT OF SCHOOL
8012 SHIN OAK DRIVE
LIVE OAK, TX 78233-2413

2017C109876   7/3/2017   CITCM   NORMA GONZALEZ

7016 0600 0000 4238 3509

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JUDSON INDEPENDENT SCHOOL DISTRICT
BY SERVING SUPERINTENDENT OF SCHOOL
8012 SHIN OAK DRIVE
LIVE OAK, TX 78233-2413

2017CI09876  7/3/2017  CITCM  NORMA GONZALEZ

2. Article Number *(Transfer from service label)*

7016  0600  0000  4238  3509

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _____  ☒ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery
7/6/17

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Restricted Delivery
Collect on Delivery
Collect on Delivery Restricted Delivery
Restricted Delivery

PS Form 3811, July 2015  DOCUMENT SCANNED AS FILED  Domestic Return Receipt

**USPS TRACKING #**



9590 9402 1478 6123 2136 45

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service**



● Sender: Please print your name, address, and ZIP+4® in this box●

Donna Kay M⁰Kinney
Bexar County District C
101 W. Nueva, Suite 2
San Antonio, TX 782

CERTIFIED MAIL #7016060000042383509

**Case Number: 2017-CI-09876**

2017CI09876    S00001

**CAROLINE ROSS**

     **vs.**

IN THE DISTRICT COURT
73rd JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

**JUDSON INDEPENDENT SCHOOL DISTRICT**

(Note: Attached document may contain additional litigants).

**CITATION**

**"THE STATE OF TEXAS"**

**DIRECTED TO:**    JUDSON INDEPENDENT SCHOOL DISTRICT
BY SERVING SUPERINTENDENT OF SCHOOL

          8012 SHIN OAK DRIVE
LIVE OAK TX 78233-2413

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this CITATION and AMENDED PETITION , a default judgment may be taken against you." Said CITATION with AMENDED PETITION was filed on the 31st day of May, 2017.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 3RD DAY OF July A.D., 2017.

LARRY WATTS
ATTORNEY FOR PLAINTIFF
PO BOX 2214
MISSOURI CITY, TX 77459-9214



**Donna Kay McKinney**
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas 78205

By : *Norma Gonzalez*, Deputy

---

CAROLINE ROSS
vs
JUDSON INDEPENDENT SCHOOL DISTRICT

**Officer's Return**

Case Number: 2017-CI-09876
Court: 73rd Judicial District Court

Came to hand on the 3rd day of July 2017, A.D., at 1:20 o'clock P.M. and EXECUTED (NOT EXECUTED) by CERTIFIED MAIL, on the _____ day of _____ 20_____, by delivering to: _____ at 8012 SHIN OAK DRIVE LIVE OAK TX 78233-2413 a true copy of this Citation, upon which I endorsed that date of delivery, together with the accompanying copy of the CITATION with AMENDED PETITION .

Cause of failure to execute this Citation is _____.

**Donna Kay McKinney**
Clerk of the District Courts of
Bexar County, TX

By : *Norma Gonzalez*, Deputy

FILE COPY (DK003)

**DOCUMENT SCANNED AS FILED**

FILED
5/30/2017 7:06:18 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Monica Hernandez

CASE No._____ **2017CI09876**

| | | |
|---|---|---|
| CAROLINE ROSS, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | OF |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | **73RD** |
| JUDSON INDEPENDENT | § | _____JUDICIAL DISTRICT |
| SCHOOL DISTRICT, | § | |
| *Defendant* | § | TRIAL BY JURY |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Caroline Ross (hereafter "Plaintiff" or "Ross"), an African American female, who was born in 1961, files this Original Petition (hereafter "this Petition") complaining of Judson Independent School District (hereafter "Defendant" or "JISD") and would show the Court as follows:

### DISCOVERY CONTROL PLAN

Plaintiff alleges that discovery in this lawsuit is intended to be conducted under level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### TRCP 46 COMPLIANCE

Ross presents two claims against JISD. The first is a legal claim under Tx. Lab. Code, Chapter 21, and based on two Charges of Discrimination, No's. 451-2017-00505, and 451-2016-01981 whereby Ross seeks money damages.

No claim herein is brought pursuant or ancillary to the school laws of the state of Texas.

The damages sought herein for Ross' legal claim, are within the jurisdictional limits of the court and seek monetary relief over $200,000.00 but not more $1,000,000.00.

### THE PARTIES

Plaintiff is an individual who resides in Bexar County, Texas.

Defendant JISD is an independent school district, located in Live Oak, Bexar County, Texas.

### JURISDICTION AND VENUE

JISD, at all times relevant to this lawsuit levied taxes and received governmental monies to do operate a public education facility in Bexar County, Texas. Therefore,

Page 1

jurisdiction and venue are proper in Bexar, County, Texas.  As a proximate result of said "incident," damages in excess of the minimum jurisdictional limits of this Court were incurred by Plaintiff. The damages suffered include, but are not limited to economic and non-economic losses.

## SERVICE

JISD may be served by serving the Petition, citation, service of process and discovery upon the Superintendent of Schools, at his office at 8012 Shin Oak Drive, Live Oak, Texas 78233.

## FACTS

Ross (African American) served with distinction and loyalty as a public educator with the JISD for approximately 19 years.

Ross served for approximately 8 years as the Assistant Principal of various JISD schools, and then served as a building Principal for approximately 10 years, before she was terminated for pretextual reasons in 2016.

For the last several years of her employment by JISD, Ross served as the Principal of Metzger Middle School.

The approximate racial make-up of JISD's student body is 63% +/- Hispanic, 30% +/- African American, and 7% +/- Caucasian.

For many years Anita Vera (Hispanic) served as an Associate Superintendent.

In December 2007, the JISD Board of Trustees hired Dr. Willis Mackey (African American) as Superintendent.

Superintendent Mackey disapproved of Vera's service in her position as Associate Superintendent, and demoted her to the position of Assistant Superintendent.

During Ross's 19 years in the JISD, or performance assessments were proficient and when serving as a Principal her appraisals were outstanding earning her distinctions year after year. The Associate Superintendent of PAISD at the time even noted, "Ms. Ross has built a strong instructional team, she's led the school to once again grow in terms of student achievement."

Meanwhile, racial tensions amongst white patrons of the district and others began to focus on JISDs Superintendent, perceived by many onlookers as being the result of his being African American. Under Mackey's leadership PAISD passed its first bond issue in nearly 7 years and made singular improvements and academics. Significantly, not only did Mackey open new and important educational venues in the district but the district's fund balance topped $40 million realizing significant savings through the refinancing of older bonds to the tune of $11 million. Superintendent Mackey's curriculum decisions and implementation of

instructional systems because JI asked E to become one of only three public school districts in the San Antonio Metro area in which all campuses, elementary-middle school-in high school, met state and federal academic standards.  His leadership both past and present was generally considered to be outstanding; but he had his critics, and those critics generally formed along race lines, using Twitter and other social media to generate back channel complaints and criticisms about the Mackey administration.

On April 14, 2014, Superintendent Mackey informed the school board of JISD that he intended to retire at the end of the 2014-2015 school year.

On September 17, 2015, JISD , building a new high school, and wrestling with the task of deciding what name should be placed on the building, dealt with a social media backlash against naming the school after the former African-American Superintendent, and voted 5 to 2 in favor of naming the new school after Dr. Willis Mackey.

Media took note that the decision was met with plenty of negative comments on the districts Facebook and Twitter accounts.

Nevertheless, despite the negative feedback, the district defended its decision to name the school after Superintendent Mackey.

In December 2015, JISD was again whipped by local forces into changing the name of the under construction Mackey high school; yet the board resisted, and the name of the building remained Willis Mackey high school… for a while longer, until the tweets and social media opposition resulted in changes on the school board. Racism disguised as some other more socially palatable excuse pressed the JISD Board to not name the new high school after the District's former African American Superintendent.

In the meantime, sometime in February 2016, false allegations were generated against Ross, falsely accusing her of misappropriation of funds. Ross received the most severe punishment available, nonrenewal and termination after 19 years of service. In Ms. Ross's situation, the hollow and fake allegations against her were never verified or supported by credible evidence.

Ross was not the only JISD professional educator accused of offenses similar to the one leveled against her or worse.

Ross was the only JISD Principal or Administrator terminated or nonrenewed by JISD in her memory.

JISD has pursued a pattern and practice of treating protected persons less favorably than non-protected persons.

**OTHERS OUTSIDE OF ROSS' PROTECTED CLASS WHO HAVE BEEN TREATED MORE FAVORABLY**

For example there were other district administrators, none of whom were African American who were treated far more favorably than Ross under similar or worse accusations of misconduct. Even in the instances of the other non-African-American administrators/educators, many of the more favorably treated employees were admittedly or substantially culpable or responsible for the charges made against them.

In 2015, **Steve Yaklin, Dir. of Maintenance, a white male**, was placed on administrative leave for failure to follow procurement law processes and board policy where he had violated vendor contract rules. PAISD publicly rescinded a termination of Yaklin, reinstating him and returning him to duty.

**Marsha Bellinger, former Principal at Park Village Elementary, a white female**, was transferred to Judson Alternative School in 2015 rather than being nonrenewed for alleged leadership issues.

In 2016, Marsha Belanger was transferred again to a district office level position after being placed on administrative leave and threatened with nonrenewal, which new position was effectively a promotion carrying with it a raise in salary.

**Elaine Howard, Executive Director of Human Resources, a white female**, in 2013 failed to terminate an employee (Troy Richleau) in the district and he was awarded over $12,000.

Elaine Howard's failure to follow proper personnel and district policies and procedures cost the school district thousands of dollars and she was neither terminated nor reprimanded.

In 2014, **Evelyn Cantu (Hispanic)** was not terminated from payroll after her resignation from district employment resulted in an overpayment of over $30,000 to her; however, Marlene Glover, an African-American female, was required to pay back a retention bonus of $1200.

**Cindy Barnhart, a white female, former Principal at Franz Elementary**, allegedly failed to take an action against the teacher who was convicted of having improper sexual contact with students. Ms. Barnhart allegedly had first-hand knowledge of the incidents and was ultimately sued by the victims which resulted in a settlement, yet she was only reassigned to another campus as a Principal and not threatened with nor are nonrenewed in her employment.

**Greg Milchder, a white male, former Vice-Principal at Judson High School** was reassigned for allegedly requiring teachers to change grades of students and has since been promoted to be the current principal at Park Village Elementary School.

**Kristy Vidaurri, a white female, and former Principle of Judson High School** was reassigned to the districts main office because of her alleged failure in leadership at the campus.
**Barbara Mead, a white female was reassigned as Executive Director of Judson Educational Foundation** after having been the head counselor at Metzger who had allegedly disrupted the administration of Tracy Val-Ray, an African American female. It should be noted that the board of JISD was going to replace Ross at Metzger with Beverly Broome, a white female but was told by their consultants not to do so at this time because of Ross's pending

claim that as soon the Charge of Discrimination by Ross was disposed of they could put Broome in as principal at Metzger.

**Michael Wacker, a white male, was Head Boys Basketball Coach** and was arrested by the police for Driving While Intoxicated, the arrest being widely publicized on area television news; nevertheless, Wacker was merely suspended for one week and returned to his duties.

**Don Pittman, a white male, Principal of Judson High School** was never terminated or nonrenewed even after accusations of violating Judson policies and practices, being merely reassigned to the districts office and then to become Principal of an elementary school where he served for four years before retiring to seek employment in the Northeast ISD.

**Kamara Adams, a white female, Vice Principal at Judson High School** was accused of violating district policy and procedure and transferred to the district office.

**Mr. Joe Gonzales, Hispanic male, Principle of Wagner High School** was transferred to the district office then to Executive Director Student Supply Services, after being accused of violating district policy and procedures.

**Erica Garza, Hispanic female, Principal Rolling Meadows Elementary** was demoted and reassigned to the position of Vice Principal at Kitty Hawk middle school for having allegedly violated district policies and procedures.

**René Briske, a white female was demoted and transferred from Principal Paschall Elementary to become Vice Principal at Judson Elementary College Academy** and has since been re-promoted to be Principal at Eloff Elementary after allegedly violating district policies and procedures.

### TIMELINE OF 2015-2016

| | |
|---|---|
| June 11, 2015- | Ms. Ross received a Principal Appraisal Summary Sheet with "E" to" E+" (outstanding) evaluations and a comment by Assoc. Superintendent Nancy Robinson, to wit: " Ms. Ross has built a strong instructional team. She has led the school to once again grow in terms of student achievement." |
| July 2015 | Superintendent forced to retire. Assoc. Sup. Nancy Robinson also retires. |
| September 2015 | Notice of Texas Education Agency's 2014-2015 "Distinction" for academic improvement and progressive |

improvement in attendance at Metzger Middle School.( No Banner provided by JISD as for 2012-2013 year: causing Public humiliation and disrespect to students and community.

February 23, 2016    Campus Police interview Secretary/Bookkeeper, Laura Hopkins, in regard to her having committed forgery. Ms Hopkins denied signing checks, denied petty cash fund. The police state that an ongoing investigation will clear her if she says Ms. Ross okayed it. She swooped up the police offered chance to falsely blame someone else.

February 24, 2016    Ross interviewed by police and for the first time sees checks. Ms. Ross denied ever giving permission to anyone to sign her name to checks and pointed out that any two out of three people were available to sign checks. Understanding seriousness of forgery charge Ross wants to check to calendar to see if she was on campus on the days the checks were signed. Ross denies ever giving permission and wanted to see original records and checks along with documentation submitted at the time the checks were requested and issued.

February 25, 2016    Ross was placed on administrative leave with pay- with the Superintendent's Letter stating misappropriation of funds. Barred from campus and unable to examine records to establish proof that she did not want or need signatory authorization for anyone. Unable to secure records for PAD (Principal's activity fund)

March 23, 2016    Ms. Laura Hopkins claims Ross had given permission for check writing; maintained a petty cash fund and allowed Ms. Hopkins to use password for routine forms and check requisitions. Ms. Hopkins was told that the police had established that "all funds were accounted for" and the only criminal action toward Ms. statement from Ms.Coggins,. Ross's former secretary/ bookkeeper. Ms. Coggins vehemently denied the outrageous story that Ms. Coggins

|  | Had instructed Hopkins how to trace Ross's signature by holding it up to window light. |
|---|---|
| May 9, 2016 | Ross was ambushed with a request for" an interview since investigation was over".<br>She attended with her Representative of choice. The attorney for the District was there and had 30 pages of questions based entirely on the interview with Ms. Laura Hopkins. Ross denied each and every allegation while pointing out that her calendar will show that she was on campus every day and there was no need for anyone except the assistant Principal, was the second in charge, to sign any checks or access reporting channels. The issue of Jean Day was raised although IlSD had no Policy (A policy against Jean Days was issued on May 31,2016. The Wagner staff had put Jean Day money in a fund to sponsor alternative graduation parties and post prom "safe events".) |
| May 19, 2016 | Board meeting held with Ms. Ross's non renewal on the agenda. Several people spoke in support.<br>Board, by motion, voted 6-1 to not renew and authorized formal notice be sent . |
| May 21, 2016 | Ross requested an open hearing. |
| May 25,2016 | Notice was provided to Ross that her hearing was scheduled for June 7, 2016. |

3

May 30, 2016        JISD Attorney Russo filed claim of misrepresentation of items
                    that are based solely on Ms. Hopkins statement or statements made by
                    others to Ms. Hopkins.

June 2, 2016        Ross and JISD Exchanged exhibits for the hearing.

June 6 2016         Ross objected to Russo's JISD's Exhibits 23 and 37 because they were
                    unreliable hearsay.

June 7, 2016        The hearing was rife with unconstitutional violations of due process,
                    all the more important because Ross' was denied a constitutionally
                    adequate hearing, upon which her career and job depended. The
                    constitutionally deficient hearing was held-and the majority of the
                    Board ignored the morally correct and legal thing, deprived Ross of
                    fundamental fairplay even though Ross objected repeatedly: to
                    unreliable hearsay by a declarant with reputation for untruthfulness
                    and acts of moral turpitude; because Board's wrongful act, JISD-HR
                    director Irma Hernandez testified that the person who had altered
                    official records and forged Ross' name, Hopkins was the only one
                    who had made the allegation of a criminal action by Ms. Ross- JISD
                    caused Hopkins, Ross' accuser-the declarant not to appear. Asst.
                    Prin. Gomez was impeached as to existence of petty cash fund or a"
                    pot". Gomez admitted she never saw Hopkins deposit money into a
                    pot; she also admitted she only heard Ms. Ross make reference to a
                    pot "once in 4years. She stated she did not know if a Principal
                    Activity Fund existed.HR Irma Hernandez was also impeached as to
                    Ms. Hopkins being made aware Ms. Ross's former secretary/
                    bookkeeper. Ms. Coggins, vehemently denied the outrageous story
                    that Ms. Coggins had showed Ms. Hopkins how to trace Ms. Ross's
                    signature by holding it up to window light. Board voted 5-1 to non
                    renew-and **one member who voted with the majority did not
                    appear**.

                    **The District's wrongdoing caused Ms. Hopkins to not be available.**
                    The Districts HR administrator proffered legal advice to Ms. Hopkins
                    that the District could not prevent Ross from bringing criminal charges
                    against Hopkins. District's Exhibit 37, pages205-206. This effectively
                    dissuaded the witness from attending live, and being subject to cross
                    examination, on the inconsistent and discredited stories she has given.

The statements should have been denied admittance. Tex R. Evid. 801(5). Consequently not only was one of the jurors or board members who convicted Ross was missing from the vote at the hearing, but the single and only accuser of Ross refused to appear for fear of subjecting herself to perjury charges.

**Ross was subjected to discriminatory employment practices because of her race, sex, and age, when other persons outside of her protected classifications were treated more favorably than Ross.**

### CAUSE OF ACTION AGAINST DEFENDANT:
### DISCRIMINATION IN VIOLATION OF THE
### TEXAS COMMISSION ON HUMAN RIGHTS ACT

Pursuant to Texas state law, Ross pleads a cause of action against JISD for sex , race and age discrimination in violation of the Texas Commission on Human Rights Act. Tex. Lab. Code § 21.051 ("TCHRA"). The allegations contained in all of the paragraphs of this Petition are hereby reaverred and realleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

JISD terminated/non-renewed Ross from her supervisory position because of her sex (female) in violation of the TCHRA.  JISD effectuated this discriminatory act by and through fluid pretextual and non-specific charges of at first misappropriation of funds, and when there were no accusers who would falsely swear, JISD nimbly shifted to "performance" reasons which were unconstitutionally vague .

Ross has met all procedural prerequisites to bringing this TCHRA claim.  Plaintiff filed TCHRA charges relating to these violations on June 9, 2016, and an amendment and/or second Charge on November 16, 2016. Ross has received Right to Sue letters relating to these charges. Further, Plaintiff is within all applicable statutes of limitations for bringing this civil action.

### NOTICE OF REQUEST FOR DISCLOSURE

Please note that Ross hereby serves her Request for Disclosure to JISD, pursuant to Rule 194, Texas Rules of Civil Procedure, you are requested to disclose, within thirty (30) days of service of this request, the information and material described in Rule 194.2 (a) through (j).

### JURY DEMAND

Ross demands that this Court empanel a lawful jury to hear this case.

*1*

## RESERVATION OF RIGHTS

Ross specifically reserves the right to bring additional causes of action against JISD and to amend this Petition as necessary.

## DAMAGES FOR MENTAL ANGUISH

As a consequence of the foregoing facts and the willful and malicious nature of the wrongs committed against Ross, Ross has suffered and will suffer past, present and future severe mental anguish, for which she pleads to recover at trial. The damages for said mental anguish exceed the minimum jurisdictional limits of this court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Ross prays that JISD be cited to appear and to answer herein and that upon final hearing, the Court enter judgment in favor of Ross against JISD, jointly and severally, in an amount in excess of the minimum jurisdictional limits of this Court, for compensatory damages, punitive damages, reasonable attorneys' fees, reasonable paralegal fees, costs of court, and pre-and post-judgment interest at the highest rate allowed by law, and also enter an order revoking any certificate enabling JISD's Superintendent to function as a certified public school admin in Texas and revoking any certificate authorizing Defendant to do business in Texas if any judgment rendered in this case has not been satisfied within three (3) months from the date of filing said final judgment, and for such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,
WATTS & COMPANY, LAWYERS, LTD.

By: _____
Larry Watts
T.B.N. 20981000
P.O. Box 2214
Missouri City, Texas 77459
Telephone: (281) 431-1500
Facsimile: (877) 797-4055
e-mail: Wattstrial@gmail.com
*Attorneys for Plaintiff*

ATTORNEYS FOR PLAINTIFF

FILED
5/31/2017 6:11:36 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Christopher Morrow

## CASE NO. 2017CI09876

| | | |
|---|---|---|
| CAROLINE ROSS, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | OF |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| JUDSON INDEPENDENT | § | 73rd JUDICIAL DISTRICT |
| SCHOOL DISTRICT, | § | |
| *Defendant* | § | TRIAL BY JURY |

## PLAINTIFF'S AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Caroline Ross (hereafter "Plaintiff" or "Ross"), an African American female, who was born in 1961, files this Original Petition (hereafter "this Petition") complaining of Judson Independent School District (hereafter "Defendant" or "JISD") and would show the Court as follows:

### DISCOVERY CONTROL PLAN

Plaintiff alleges that discovery in this lawsuit is intended to be conducted under level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### TRCP 46 COMPLIANCE

Ross presents two claims against JISD. The first is a legal claim under Tx. Lab. Code, Chapter 21, and based on two Charges of Discrimination, No's. 451-2017-00505, and 451-2016-01981 whereby Ross seeks money damages.

No claim herein is brought pursuant or ancillary to the school laws of the state of Texas.

The damages sought herein for Ross' legal claim, are within the jurisdictional limits of the court and seek monetary relief over $200,000.00 but not more $1,000,000.00.

### THE PARTIES

Plaintiff is an individual who resides in Bexar County, Texas.

Defendant JISD is an independent school district, located in Live Oak, Bexar County, Texas.

## JURISDICTION AND VENUE

JISD, at all times relevant to this lawsuit levied taxes and received governmental monies to do operate a public education facility in Bexar County, Texas. Therefore, jurisdiction and venue are proper in Bexar, County, Texas.  As a proximate result of said "incident," damages in excess of the minimum jurisdictional limits of this Court were incurred by Plaintiff. The damages suffered include, but are not limited to economic and non-economic losses.

## SERVICE

JISD may be served by serving the Petition, citation, service of process and discovery upon the Superintendent of Schools, at his office at 8012 Shin Oak Drive, Live Oak, Texas 78233.

## FACTS

Ross (African American) served with distinction and loyalty as a public educator with the JISD for approximately 19 years.

Ross served for approximately 8 years as the Assistant Principal of various JISD schools, and then served as a building Principal for approximately 10 years, before she was terminated for pretextual reasons in 2016.

For the last several years of her employment by JISD, Ross served as the Principal of Metzger Middle School.

The approximate racial make-up of JISD's student body is 63% +/- Hispanic, 30% +/- African American, and 7% +/- Caucasian.

For many years Anita Bera (Hispanic) served as an Associate Superintendent.

In December 2007, the JISD Board of Trustees hired Dr. Willis Mackey (African American) as Superintendent.

Superintendent Mackey disapproved of Bera's service in her position as Associate Superintendent, and demoted her to the position of Assistant Superintendent.

During Ross's 19 years in the JISD, or performance assessments were proficient and when serving as a Principal her appraisals were outstanding earning her distinctions year after year. The Associate Superintendent of JISD at the time even noted, "Ms. Ross has built a strong instructional team, she's led the school to once again grow in terms of student achievement."

Meanwhile, racial tensions amongst white patrons of the district and others began to focus on JISDs Superintendent, perceived by many onlookers as being the result of his being

African American. Under Mackey's leadership JISD passed its first bond issue in nearly 7 years and made singular improvements and academics. Significantly, not only did Mackey open new and important educational venues in the district but the district's fund balance topped $40 million realizing significant savings through the refinancing of older bonds to the tune of $11 million. Superintendent Mackey's curriculum decisions and implementation of instructional systems because JI asked E to become one of only three public school districts in the San Antonio Metro area in which all campuses, elementary-middle school-in high school, met state and federal academic standards.  His leadership both past and present was generally considered to be outstanding; but he had his critics, and those critics generally formed along race lines, using Twitter and other social media to generate back channel complaints and criticisms about the Mackey administration.

On April 14, 2014, Superintendent Mackey informed the school board of JISD that he intended to retire at the end of the 2014-2015 school year.

On September 17, 2015, JISD, building a new high school, and wrestling with the task of deciding what name should be placed on the building, dealt with a social media backlash against naming the school after the former African-American Superintendent, and voted 5 to 2 in favor of naming the new school after Dr. Willis Mackey.

Media took note that the decision was met with plenty of negative comments on the districts Facebook and Twitter accounts.

Nevertheless, despite the negative feedback, the district defended its decision to name the school after Superintendent Mackey.

In December 2015, JISD was again whipped by local forces into changing the name of the under-construction Mackey high school; yet the board resisted, and the name of the building remained Willis Mackey high school… for a while longer, until the tweets and social media opposition resulted in changes on the school board. Racism disguised as some other more socially palatable excuse pressed the JISD Board to not name the new high school after the District's former African American Superintendent.

In the meantime, sometime in February 2016, false allegations were generated against Ross, falsely accusing her of misappropriation of funds. Ross received the most severe punishment available, nonrenewal and termination after 19 years of service. In Ms. Ross's situation, the hollow and fake allegations against her were never verified or supported by credible evidence.

Ross was not the only JISD professional educator accused of offenses similar to the one leveled against her or worse.

Ross was the only JISD Principal or Administrator terminated or nonrenewed by JISD in her memory.

JISD has pursued a pattern and practice of treating protected persons less favorably than non-protected persons.

## OTHERS OUTSIDE OF ROSS' PROTECTED CLASS WHO HAVE BEEN TREATED MORE FAVORABLY

For example, there were other district administrators, none of whom were African American who were treated far more favorably than Ross under similar or worse accusations of misconduct. Even in the instances of the other non-African-American administrators/educators, many of the more favorably treated employees were admittedly or substantially culpable or responsible for the charges made against them.

In 2015, **Steve Yaklin, Dir. of Maintenance, a white male,** was placed on administrative leave for failure to follow procurement law processes and board policy where he had violated vendor contract rules. JISD publicly rescinded a termination of Yaklin, reinstating him and returning him to duty.

**Marsha Bellinger, former Principal at Park Village Elementary, a white female**, was transferred to Judson Alternative School in 2015 rather than being nonrenewed for alleged leadership issues.

In 2016, Marsha Belanger was transferred again to a district office level position after being placed on administrative leave and threatened with nonrenewal, which new position was effectively a promotion carrying with it a raise in salary.

**Elaine Howard, Executive Director of Human Resources, a white female**, in 2013 failed to terminate an employee (Troy Richleau) in the district and he was awarded over $12,000.

Elaine Howard's failure to follow proper personnel and district policies and procedures cost the school district thousands of dollars and she was neither terminated nor reprimanded.

In 2014, **Evelyn Cantu (Hispanic)** was not terminated from payroll after her resignation from district employment resulted in an overpayment of over $30,000 to her; however, Marlene Glover, an African-American female, was required to pay back a retention bonus of $1200.

**Cindy Barnhart, a white female, former Principal at Franz Elementary**, allegedly failed to take an action against the teacher who was convicted of having improper sexual contact with students. Ms. Barnhart allegedly had first-hand knowledge of the incidents and was ultimately sued by the victims which resulted in a settlement, yet she was only reassigned to another campus as a Principal and not threatened with nor are nonrenewed in her employment.

**Greg Milchder, a white male, former Vice-Principal at Judson High School** was reassigned for allegedly requiring teachers to change grades of students and has since been promoted to be the current principal at Park Village Elementary School.

**Kristy Vidaurri, a white female, and former Principle of Judson High School** was reassigned to the districts main office because of her alleged failure in leadership at the campus.

**Barbara Mead, a white female was reassigned as Executive Director of Judson Educational Foundation** after having been the head counselor at Metzger who had allegedly disrupted the administration of Tracy Val-Ray, an African American female. It should be noted that the board of JISD was going to replace Ross at Metzger with Beverly Broome, a white female but was told by their consultants not to do so at this time because of Ross's pending claim that as soon the Charge of Discrimination by Ross was disposed of they could put Broome in as principal at Metzger.

**Michael Wacker, a white male, was Head Boys Basketball Coach** and was arrested by the police for Driving While Intoxicated, the arrest being widely publicized on area television news; nevertheless, Wacker was merely suspended for one week and returned to his duties.

**Don Pittman, a white male, Principal of Judson High School** was never terminated or nonrenewed even after accusations of violating Judson policies and practices, being merely reassigned to the districts office and then to become Principal of an elementary school where he served for four years before retiring to seek employment in the Northeast ISD.

**Kamara Adams, a white female, Vice Principal at Judson High School** was accused of violating district policy and procedure and transferred to the district office.

**Mr. Joe Gonzales, Hispanic male, Principle of Wagner High School** was transferred to the district office then to Executive Director Student Supply Services, after being accused of violating district policy and procedures.

**Erica Garza, Hispanic female, Principal Rolling Meadows Elementary** was demoted and reassigned to the position of Vice Principal at Kitty Hawk middle school for having allegedly violated district policies and procedures.

**René Briske, a white female was demoted and transferred from Principal Paschall Elementary to become Vice Principal at Judson Elementary College Academy** and has since been re-promoted to be Principal at Eloff Elementary after allegedly violating district policies and procedures.

## TIMELINE OF 2015-2016

June 11, 2015-                        Ms. Ross received a Principal Appraisal Summary
                                      Sheet with "E" to" E+" (outstanding) evaluations and
                                      a comment by Assoc. Superintendent Nancy
                                      Robinson, to wit: " Ms. Ross has built a strong
                                      instructional team. She has led the school to once
                                      again grow in terms of student achievement.

| | |
|---|---|
| July 2015 | Superintendent forced to retire. Assoc. Sup. Nancy Robinson also retires |
| September 2015 | Notice of Texas Education Agency's 2014-2015 "Distinction" for academic improvement and progressive improvement in attendance at Metzger Middle School. (No Banner provided by JISD as for 2012-2013 year: causing Public humiliation and disrespect to students and community. |
| February 23, 2016 | Campus Police interview Secretary/Bookkeeper, Laura Hopkins, in regard to her having committed forgery. Ms. Hopkins denied signing checks, denied petty cash fund. The police state that an ongoing investigation will clear her if she says Ms. Ross okayed it. She swooped up the police offered chance to falsely blame someone else. |
| February 24, 2016 | Ross interviewed by police and for the first time sees checks. Ms. Ross denied ever giving permission to anyone to sign her name to checks and pointed out that any two out of three people were available to sign checks. Understanding seriousness of forgery charge Ross wants to check to calendar to see if she was on campus on the days the checks were signed. Ross denies ever giving permission and wanted to see original records and checks along with documentation submitted at the time the checks were requested and issued. |
| February 25, 2016 | Ross was placed on administrative leave with pay-with the Superintendent's Letter stating misappropriation of funds. Barred from campus and unable to examine records to establish proof that she did not want or need signatory authorization for anyone. Unable to secure records for PAD (Principal's activity fund) |
| March 23, 2016 | Ms. Laura Hopkins claims Ross had given permission for check writing; maintained a petty cash fund and allowed Ms. Hopkins to use password for routine forms and check requisitions. Ms. Hopkins was told that the police had established that "all funds were accounted for" and the only criminal action toward |

|   |   |
|---|---|
|   | Ms. statement from Ms. Coggins, Ross's former secretary/ bookkeeper. Ms. Coggins vehemently denied the outrageous story that Ms. Coggins Had instructed Hopkins how to trace Ross's signature by holding it up to window light. |
| May 9, 2016 | Ross was ambushed with a request for" an interview since investigation was over". |
|   | She attended with her Representative of choice. The attorney for the District was there and had 30 pages of questions based entirely on the interview with Ms. Laura Hopkins. Ross denied each and every allegation while pointing out that her calendar will show that she was on campus every day and there was no need for anyone except the assistant Principal, was the second in charge, to sign any checks or access reporting channels. The issue of Jean Day was raised although JISD had no Policy (A policy against Jean Days was issued on May 31,2016. The Wagner staff had put Jean Day money in a fund to sponsor alternative graduation parties and post prom "safe events".) |
| May 19, 2016 | Board meeting held with Ms. Ross's non-renewal on the agenda. Several people spoke in support. |
|   | Board, by motion, voted 6-1 to not renew and authorized formal notice be sent. |
| May 21, 2016 | Ross requested an open hearing. |
| May 25,2016 | Notice was provided to Ross that her hearing was scheduled for June 7, 2016. |
| May 30, 2016 | JISD Attorney Russo filed claim of misrepresentation of items that are based solely on Ms. Hopkins statement or statements made by others to Ms. Hopkins |
| June 2, 2016 | Ross and JISD Exchanged exhibits for the hearing. |
| June 6 2016 | Ross objected to Russo's JISD's Exhibits 23 and 37 because they were unreliable hearsay. |
| June 7, 2016 | The hearing was rife with unconstitutional violations of due process, all the more important because Ross' was denied a constitutionally adequate hearing, upon |

which her career and job depended. The constitutionally deficient hearing was held-and the majority of the Board ignored the morally correct and legal thing, deprived Ross of fundamental fair play even though Ross objected repeatedly: to unreliable hearsay by a declarant with reputation for untruthfulness and acts of moral turpitude; because Board's wrongful act, JISD-HR director Irma Hernandez testified that the person who had altered official records and forged Ross' name, Hopkins was the only one who had made the allegation of a criminal action by Ms. Ross- JISD caused Hopkins, Ross' accuser-the declarant not to appear. Asst. Prin. Gomez was impeached as to existence of petty cash fund or a" pot". Gomez admitted she never saw Hopkins deposit money into a pot; she also admitted she only heard Ms. Ross make reference to a pot "once in 4years. She stated she did not know if a Principal Activity Fund existed.HR Irma Hernandez was also impeached as to Ms. Hopkins being made aware Ms. Ross's former secretary/ bookkeeper. Ms. Coggins, vehemently denied the outrageous story that Ms. Coggins had showed Ms. Hopkins how to trace Ms. Ross's signature by holding it up to window light. Board voted 5-1 to non-renew and **one member who voted with the majority did not appear**.

**The District's wrongdoing caused Ms. Hopkins to not be available.** The Districts HR administrator proffered legal advice to Ms. Hopkins that the District could not prevent Ross from bringing criminal charges against Hopkins. District's Exhibit 37, pages 205-206. This effectively dissuaded the witness from attending live, and being subject to cross examination, on the inconsistent and discredited stories she has given. The statements should have been denied admittance. Tex R. Evid. 801(5). Consequently, not only was one of the jurors or board members who convicted Ross was missing from the vote at the hearing, but the single and only accuser of Ross refused to appear for fear of subjecting herself to perjury charges.

**Ross was subjected to discriminatory employment practices because of her race, sex, and age, when other persons outside of her protected classifications were treated more favorably than Ross.**

**CAUSE OF ACTION AGAINST DEFENDANT:**
**DISCRIMINATION IN VIOLATION OF THE**
**TEXAS COMMISSION ON HUMAN RIGHTS ACT**

Pursuant to Texas state law, Ross pleads a cause of action against JISD for sex, race and age discrimination in violation of the Texas Commission on Human Rights Act. Tex. Lab. Code § 21.051 ("TCHRA"). The allegations contained in all of the paragraphs of this Petition are hereby reaverred and realleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

JISD terminated/non-renewed Ross from her supervisory position because of her sex (female) in violation of the TCHRA. JISD effectuated this discriminatory act by and through fluid pretextual and non-specific charges of at first misappropriation of funds, and when there were no accusers who would falsely swear, JISD nimbly shifted to "performance" reasons which were unconstitutionally vague.

Ross has met all procedural prerequisites to bringing this TCHRA claim. Plaintiff filed TCHRA charges relating to these violations on June 9, 2016, and an amendment and/or second Charge on November 16, 2016. Ross has received Right to Sue letters relating to these charges. Further, Plaintiff is within all applicable statutes of limitations for bringing this civil action.

**NOTICE OF REQUEST FOR DISCLOSURE**

Please note that Ross hereby serves her Request for Disclosure to JISD, pursuant to Rule 194, Texas Rules of Civil Procedure, you are requested to disclose, within thirty (30) days of service of this request, the information and material described in Rule 194.2 (a) through (j).

**JURY DEMAND**

Ross demands that this Court empanel a lawful jury to hear this case.

**RESERVATION OF RIGHTS**

Ross specifically reserves the right to bring additional causes of action against JISD and to amend this Petition as necessary.

## DAMAGES FOR MENTAL ANGUISH

As a consequence of the foregoing facts and the willful and malicious nature of the wrongs committed against Ross, Ross has suffered and will suffer past, present and future severe mental anguish, for which she pleads to recover at trial. The damages for said mental anguish exceed the minimum jurisdictional limits of this court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Ross prays that JISD be cited to appear and to answer herein and that upon final hearing, the Court enter judgment in favor of Ross against JISD, jointly and severally, in an amount in excess of the minimum jurisdictional limits of this Court, for compensatory damages, punitive damages, reasonable attorneys' fees, reasonable paralegal fees, costs of court, and pre-and post-judgment interest at the highest rate allowed by law, and also enter an order revoking any certificate enabling JISD's Superintendent to function as a certified public school admin in Texas and revoking any certificate authorizing Defendant to do business in Texas if any judgment rendered in this case has not been satisfied within three (3) months from the date of filing said final judgment, and for such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

WATTS & COMPANY, LAWYERS, Ltd.

**/s/ Laurence "Larry" Watts**
Laurence "Larry" Watts
T.B.N. 20981000
P.O. Box 2214
Missouri City, Texas 77459
Tel: (281) 431-1500
Fax: (877) 797-4055
E-mail: wattstrial@gmail.com

*Attorney for Plaintiff*

FILED
6/29/2017 4:41 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Consuelo Gomez



**Cause Number:** 2017CI09876

**District Court :** 73rd

# Donna Kay M<sup>c</sup>Kinney
## Bexar County District Clerk

## **Request for Process**

Style: Caroline Ross     **Vs.** Judson Independent School District

**Request the following process:** (Please check all that Apply)

☑ Citation ☐ Notice ☐ Temporary Restraining Order ☐ Notice of Application for Protective Order
☐ Temporary Protective Order ☐ Precept with hearing ☐ Precept with*out* a hearing ☐ Writ of Attachment
☐ Writ of Habeas Corpus ☐ Writ of Garnishment ☐ Writ of Sequestration ☐ Capias ☐ Other: _____

**1.**
**Name:** Judson Independent School District
**Registered Agent/By Serving:** Superintendent of Schools
**Address** 8012 Shin Oak Drive, Live oak Teddxas 78233
**Service Type:** (Check One) ☐ *Private Process* ☐ *Sheriff* ☐ *Commissioner of Insurance* ☐ *SA Express News* ☐ *Hart Beat* ☐ *Courthouse Door*
    ☑ *Certified Mail* ☐ *Registered Mail* ☐ *Out of County* ☐ *Secretary of State* ☐ *Constable Pct __*
                                           *(Pct. 3 serves process countywide)*

**2.**
**Name:** _____
**Registered Agent/By Serving:** _____
**Address** _____
**Service Type:** (Check One) ☐ *Private Process* ☐ *Sheriff* ☐ *Commissioner of Insurance* ☐ *SA Express News* ☐ *Hart Beat* ☐ *Courthouse Door*
    ☐ *Certified Mail* ☐ *Registered Mail* ☐ *Out of County* ☐ *Secretary of State* ☐ *Constable Pct __*
                                           *(Pct. 3 serves process countywide)*

**3.**
**Name:** _____
**Registered Agent/By Serving:** _____
**Address** _____
**Service Type:** (Check One) ☐ *Private Process* ☐ *Sheriff* ☐ *Commissioner of Insurance* ☐ *SA Express News* ☐ *Hart Beat* ☐ *CourthouseDoor*
    ☐ *Certified Mail* ☐ *Registered Mail* ☐ *Out of County* ☐ *Secretary of State* ☐ *Constable Pct __*
                                           *(Pct. 3 serves process countywide)*

**4.**
**Name:** _____
**Registered Agent/By Serving:** _____
**Address** _____
**Service Type:** (Check One) ☐ *Private Process* ☐ *Sheriff* ☐ *Commissioner of Insurance* ☐ *SA Express News* ☐ *Hart Beat* ☐ *Courthouse Door*
    ☐ *Certified Mail* ☐ *Registered Mail* ☐ *Out of County* ☐ *Secretary of State* ☐ *Constable Pct __*
                                           *(Pct. 3 serves process countywide)*

**Title of Document/Pleading to be Attached to Process:** _____

**Name of Attorney/Pro se:** Larry Watts     **Bar Number:** 20981000
**Address:** P.O. Box 2214     **Phone Number:** 281-431-1500
       Missouri City, Texas 77459

     **Attorney for Plaintiff** ___X___ **Defendant** _____ **Other** _____

***\*\*\*\*IF SERVICE IS NOT PICKED UP WITHIN 14 BUSINESS DAYS, SERVICE WILL BE DESTROYED\*\*\*\****

FILED
7/7/2017 11:52 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Cynthia Aponte



**WG | WALSH GALLEGOS**
TREVIÑO RUSSO & KYLE P.C.

July 7, 2017

Ms. Donna Kay McKinney                                      *E-File*
Bexar County District Clerk
Bexar County Courthouse
Paul Elizondo Tower
101 W. Nueva, Suite 217
San Antonio, Texas 78205-3411

***ATTN: RECORDS DIVISION***

Re:     Cause No. 2017-CI-09876; *Caroline Ross v. Judson Independent School District*; in
        the 73rd Judicial District Court of Bexar County, Texas

Dear Ms. McKinney:

This letter is to request a copy of Plaintiff's Original Petition filed on May 30, 2017 in
connection with the above-referenced lawsuit.  Please fax a copy to my attention at (210) 979-7024
or e-mail the copy to vdurocher@wabsa.com.

Should you have any questions or need additional information, please do not hesitate to call.

Very truly yours,

Valerie J. Durocher Herbert
Paralegal to
D. CRAIG WOOD

/vjh

FILED
7/28/2017 3:36 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Edgar Garcia

CAUSE NO. 2017-CI-09876

| | | |
|---|---|---|
| **CAROLINE ROSS,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | **OF** |
| | § | |
| **v.** | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| **JUDSON INDEPENDENT** | § | **73ʳᵈ JUDICIAL DISTRICT** |
| **SCHOOL DISTRICT,** | § | |
| *Defendant* | § | **TRIAL BY JURY** |

**DEFENDANT JUDSON INDEPENDENT SCHOOL
<u>DISTRICT'S ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Defendant JUDSON INDEPENDENT SCHOOL DISTRICT (hereinafter "the District"), in the above-styled and numbered cause, and files this its Original Answer and Affirmative Defenses, and shows the Court the following:

**I.
<u>GENERAL DENIAL</u>**

The District denies each and every allegation, all and singular, contained within the Plaintiff's Amended Petition. The Texas Rules of Civil Procedure, and in particular Rule 92, afford citizens and entities of this state certain protections with respect to lawsuits of this type. Accordingly, the District invokes the provisions of that rule and does generally deny the allegations now made against it by the Plaintiff. At any trial of this cause, the District will exercise its legal rights in this regard, and require Plaintiff to carry the burden of proof which the law imposes upon her to prove each and every material allegation contained in her pleading by a preponderance of the credible evidence.

*Page 1 of 4*

## II.
## AFFIRMATIVE DEFENSES

The District asserts that Plaintiff has failed to state a claim upon which relief can be granted under the Texas Labor Code, the Texas Constitution, or under any other statute, constitutional theory, or legal authority.

Notwithstanding the foregoing, the District asserts that there were legitimate, non-discriminatory/non-retaliatory reasons for the employment action(s) being challenged in Plaintiff's pleadings.

Notwithstanding the foregoing, the District asserts that the alleged acts complained of by Plaintiff are prohibited by the District and any differential treatment, if any, was based on factors other than race, sex, age or protected activity.

Notwithstanding the foregoing, any challenged action, practice or policy would have been taken regardless of any discriminatory/retaliatory motivating factor (which discriminatory/retaliatory factor is specifically denied).

Notwithstanding the foregoing, Defendant asserts privilege and legal justifications, including the privileges and justifications of closely aligned parties, corporate agents, truthful information and honest advice, res judicata and estoppel.

Notwithstanding the foregoing, the Court lacks subject matter jurisdiction over Plaintiff's claims to the extent that any of these claims are barred by immunity, were not part of the underlying administrative proceedings or claims not filed within the relevant statute of limitations.

Notwithstanding the foregoing, the District asserts that Plaintiff is not entitled to any of the relief demanded in her pleadings, and that Plaintiff is not entitled to damages or costs in any amount.

The District further asserts that as a governmental entity Plaintiff is not entitled to punitive or exemplary damages against it, as a matter of law.

Notwithstanding the foregoing, the District asserts its right to mitigation of damages and to the extent the Plaintiff has failed to mitigate her damages that her damages, if any, should be adjusted accordingly.

Notwithstanding the foregoing, the District claims its entitlement to recover attorney's fees and costs of suit pursuant to the Texas Rules of Civil Procedure, Texas Education Code and judicial interpretation.

Notwithstanding the foregoing, the District asserts the right to raise additional defenses that become apparent throughout the factual development of the case.

## III.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, the District prays that Plaintiff's suit be dismissed at Plaintiff's cost, and for such other and further relief to which the District may be entitled, either at law or in equity.

Respectfully submitted,

WALSH GALLEGOS TREVIÑO
RUSSO & KYLE P.C.
100 NE Loop 410, Suite 900
San Antonio, Texas 78216
Tel No.: (210) 979-6633
Fax No.: (210) 979-7024

By:   _/s/ D. Craig Wood_
      D. CRAIG WOOD
      State Bar No. 21888700
      cwood@wabsa.com
      KATIE E. PAYNE
      State Bar No. 24071347
      kpayne@wabsa.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2017, a true and correct copy of the above and foregoing Defendant Judson Independent School District's Original Answer and Affirmative Defenses was electronically filed pursuant to the TEXAS RULES OF CIVIL PROCEDURE, which provides electronic service to counsel of record if the email address of the attorney to be served is on file. Additionally, a copy of the foregoing pleading was served upon counsel of record as set out below:

Mr. Laurence "Larry" Watts
WATTS & COMPANY, LAWYERS, Ltd.
P.O. Box 2214
Missouri City, Texas 77459
wattstrial@gmail.com

**COUNSEL FOR PLAINTIFF**

                          _/s/ D. Craig Wood_
                          D. CRAIG WOOD

FILED
9/11/2017 5:59 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Laura Rodriguez

## CASE NO. 2017-CI-09876

| | | |
|---|---|---|
| CAROLINE ROSS,<br>*Plaintiff* | § <br> § <br> § | IN THE DISTRICT COURT<br>OF |
| v. | § <br> § | BEXAR COUNTY, TEXAS |
| JUDSON INDEPENDENT<br>SCHOOL DISTRICT,<br>*Defendant.* | § <br> § <br> § | 73rd JUDICIAL DISTRICT |

### PLAINTIFF'S CERTIFICATE OF WRITTEN DISCOVERY

TO THE HONORABLE DISTRICT CLERK OF Bexar COUNTY, TEXAS:

COMES NOW, **CAROLINE ROSS,** Plaintiff, and files this certificate of written discovery. The undersigned Plaintiff's counsel of record certifies that on August 8, 2017, he served the following written discovery upon Defendant, **JUDSON INDEPENDENT SCHOOL DISTRICT** by and through their attorneys of record:

      1. Requests for Disclosure;

      2. Requests for Production;

      3. First Set of Interrogatories to Clear Channel Houston.

                  Respectfully submitted,

                  WATTS & COMPANY, LAWYERS, LTD.

                  By: _____
                  Larry Watts
                  T.B.N. 20981000
                  P.O. Box 2214
                  Missouri, Texas 77459
                  Telephone: (281) 431-1500
                  Facsimile: (281) 431-1298
                  e-mail: Watts@ev1.net

                  *Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true, complete, and correct copy of the foregoing Plaintiff's Certificate of Written Discovery was served, via fax, on September 11, 2017 to the following:

Larry Watts

FILED
12/28/2017 11:06 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Anthony Barrow

Case 5:18-cv-00269-FB-HJB   Document 1-2   Filed 03/22/18   Page 37 of 178

## CAUSE NO. 2017-CI-09876

| | | |
|---|---|---|
| **CAROLINE ROSS,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | **OF** |
| | § | |
| **v.** | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| **JUDSON INDEPENDENT** | § | **73rd JUDICIAL DISTRICT** |
| **SCHOOL DISTRICT,** | § | |
| *Defendant* | § | **TRIAL BY JURY** |

### DEFENDANT JUDSON INDEPENDENT
### SCHOOL DISTRICT'S PLEA TO THE JURISDICTION

**TO THE HONORABLE JUDGE OF THE COURT:**

COMES NOW, **JUDSON INDEPENDENT SCHOOL DISTRICT**, ("District"),

Defendant in the above-entitled and numbered cause and files this Plea to the Jurisdiction and in

support thereof would respectfully show the Court as follows:

### I. STATEMENT OF THE CASE

1.      Plaintiff claims that the District discriminated against her on the basis of race, sex, and

age in violation of the Texas Commission on Human Rights Act ("TCHRA"), found in Chapter

21 of the Texas Labor Code. *See* Ex. A, Plaintiff's Amended Petition.  Plaintiff alleges that she

was "terminated/non-renewed…from her supervisory position" in violation of the TCHRA. *See*

*id.* at p. 9. The facts regarding Plaintiff's termination/nonrenewal have already been litigated

before the District's Board of Trustees and the Texas Commissioner of Education, who issued

findings of fact and conclusions of law regarding Plaintiff's termination/nonrenewal. *See* Ex. B,

Decision of the Commissioner.  Specifically, the Commissioner of Education made factual

findings that Plaintiff's employment was not renewed because as a Principal she was responsible

for the proper administration of transactions and documentation including two signatures per

check. *See* Ex. B, ¶ 2. However, "[Plaintiff] failed on numerous occasions to have proper

Page 1 of 10

documentation for expenditures and two signatures per check[]. Further, [Plaintiff] directed her secretary to sign checks for her. [Plaintiff] denied that she allowed her secretary to sign checks for her. She also told her secretary to lie to district investigators about this matter." *See id.*, ¶ 3. Plaintiff also "engaged in impermissible fund raising activities by charging students for composition books paid for by the district and for attending events such as pep rallies and performances." *See id.* ¶ 4.

2.      The non-renewal of Plaintiff's employment has already been fully and fairly litigated before the District's Board of Trustees and the Texas Commissioner of Education, who made findings of fact and conclusions of law. *See* Ex. B. Plaintiff is collaterally estopped from re-litigating the factual issues regarding her termination/non-renewal. Because Plaintiff is collaterally estopped from re-litigating the factual issues regarding her non-renewal, she cannot state a claim for violation of the TCHRA, and the District retains its governmental immunity from suit. This Court thus lack subject-matter jurisdiction, and this suit should be dismissed with prejudice, in its entirety, as a matter of law.

## II. PLEA TO THE JURISDICTION

3.      A plea to the jurisdiction of a trial court seeks dismissal of a case on the ground that the court lacks subject matter jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). "A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The Court must decide whether Plaintiff has affirmatively demonstrated this Court's subject matter jurisdiction to hear this suit, based on the facts alleged by Plaintiff and, when necessary to resolve jurisdictional facts, on evidence submitted by the parties.

*See State v. Holland*, 221 S.W.3d 639, 642-43 (Tex. 2007); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004); *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555.

4.   A plea to the jurisdiction may properly challenge the existence of jurisdictional facts. *Mission Consol. Indep. Sch. Dist. v. Garcia,* 372 S.W.3d 629, 635 (Tex. 2012). "In those cases, the court can consider evidence as necessary to resolve any dispute over those facts, even if that evidence 'implicates both the subject-matter jurisdiction of the court and the merits of the case.'" *Id.* (citing *Miranda,* 133 S.W.3d at 226). "In those situations, a trial court's review of a plea to the jurisdiction mirrors that of a traditional summary judgment motion." *Garcia,* 372 S.W.3d at 635. In order to survive a plea to the jurisdiction, the plaintiff is "required to show that a disputed material fact exists regarding the jurisdictional issue." *Id.* "[I]f the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law." *Id.*

5.   In Texas, sovereign immunity protects the State, its agencies, and its officials from lawsuits for damages. *See Tooke v. City of Mexia* 197 S.W.3d 325, 331 n. 11 (Tex. 2006); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853-54 (Tex. 2002).   The common-law doctrine of governmental immunity similarly protects political subdivisions of the State, including school districts. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n.3 (Tex. 2003); *see also Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).   Governmental immunity from suit prohibits a suit against the state or a political subdivision unless the Legislature grants consent. *Gen. Serv. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 594 (Tex.2001). In order to defeat the District's Plea, the Plaintiff must affirmatively demonstrate a valid waiver of the District's immunity by clear and unambiguous language in statute or express legislative permission. *Tex. Dep't. of Transp. v. Jones*, 8 S.W.3d, 636, 638 (Tex. 1999).   Absent consent to

suit, a trial court lacks subject matter jurisdiction. *Id.* "As a result, immunity is properly asserted in a plea to the jurisdiction." *Garcia,* 372 S.W.3d at 636.

### A. Plaintiff must state a claim for conduct that violates the TCHRA in order to establish waiver of the District's immunity from suit.

6.      Plaintiff brings a claim for discrimination on the basis of race, sex, and age against the District, pursuant to the Texas Commission on Human Rights Act ("TCHRA"), found in Chapter 21 of the Texas Labor Code. *See* Ex. A.  The Texas Supreme Court has held that the TCHRA waives immunity for suits brought against school districts under the TCHRA; however, "the Legislature has waived immunity only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *Garcia*, 372 S.W.3d 629, 636 (Tex. 2012)("*Garcia II*")(citing *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653 (Tex. 2008)("*Garcia I*")).  In other words, "Chapter 21 of the Labor Code waives immunity from suit only when the plaintiff actually states a claim for conduct that would violate the TCHRA." *Garcia II,* 372 S.W.3d at 637.

7.      The elements of a statutory cause of action are properly challenged in a plea to the jurisdiction. *State v. Lueck,* 290 S.W.3d 876, 881 (Tex. 2009); *Garcia II,* 372 S.W.3d at 636.  In *Garcia II,* the Texas Supreme Court held, in regards to the TCHRA, "a plaintiff must actually bring an action or proceeding under this chapter in order to have the right to sue otherwise immune governmental employers." *Garcia II,* 372 S.W.3d at 637 (internal citations and alterations omitted). The TCHRA prohibits an employer from discharging or "discriminating in any other manner" against an employee "because of race, color, disability, religion, sex, national origin, or age…" TEX. LABOR CODE ANN. § 21.051.

8.      While the *Garcia II* court focused on the question of whether the *prima facie* elements of a TCHRA discrimination claim for a plaintiff proceeding under the *McDonnell-Douglas* burden-

shifting framework were jurisdictional based on the facts present in that case, the Court acknowledged that "[t]here is no prima facie case requirement in the text of the TCHRA; the statute simply proscribes discrimination 'because of race, color, disability, religion, sex, national origin, or age.'" *Garcia II,* 372 S.W.3d at 638 (citing TEX. LABOR CODE ANN. § 21.051). Thus, the statute, by its plain text, requires a showing that plaintiff suffered discrimination in employment "because of….race…sex…or age." TEX. LABOR CODE ANN. §§ 21.051. If Plaintiff cannot show that she was discharged "because of….race…sex…or age," then she has failed to bring a claim under the TCHRA, and the District's immunity is not waived by the statute. *See Garcia II,* 372 S.W.3d at 637-68; *see also State v. Lueck,* 290 S.W.3d 876, 881 (Tex. 2009)(holding that the statutory elements of the Whistleblower Act must be considered as jurisdictional facts in the context of a plea to the jurisdiction in order to determine whether governmental immunity has been waived.)

### B. Plaintiff is collaterally estopped from re-litigating the reasons for her non-renewal.

9.     Plaintiff claims that the District discriminated against her when it non-renewed her employment contract. *See* Ex. A. However, the District's Board of Trustees and the Texas Commissioner of Education found that the District had legitimate, non-discriminatory reasons for its employment actions. Collateral estoppel bars Plaintiff from re-litigating the reasons that her employment contract was not renewed.

10.     Because Plaintiff had a full hearing before the Board of Trustees concerning the non-renewal of her contract and because she has been heard on this issue before the Texas Commissioner of Education, Plaintiff's claims in this case are affected by collateral estoppel. Specifically, she is barred from re-litigating the facts underlying her non-renewal. *See Nairn v. Killeen Indep. Sch. Dist.*, 366 S.W.3d 229, 243 (Tex. App. – El Paso 2012, no pet.). The

Commissioner of Education issued findings of fact and conclusions of law as to why the District non-renewed her employment, and they were legitimate, non-discriminatory reasons. *See* Ex. B.

11.     "Collateral estoppel, or issue preclusion, prevents re-litigation of particular fact issues already resolved in a prior suit in a subsequent action upon a different cause." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992); *Muckelroy v. Richardson Indep. Sch. Dist.*, 884 S.W.2d 825, 830 (Tex. App. – Dallas, 1994, writ denied); *see Vines v. University of Louisiana*, 398 F.3d 700, 705 (5th Cir. 2005), *cert. denied*, 546 U.S. 1089 (2006). Collateral estoppel applies when (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action, (2) those facts were essential to the judgment in the first action, and (3) the parties were adversaries in the first action. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984); *Muckelroy*, 884 S.W.2d at 830; *see RecoverEdge LP v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995). The policy behind collateral estoppel is to avoid vexatious litigation, avoid double recovery, foster stable decisions, and economize court time and resources. *See Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971).

12.     Collateral estoppel applies to administrative agency orders when the agency is acting "in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Nairn*, 366 S.W.3d at 243; *see Muckelroy*, 884 S.W.2d at 830; *Bryant v. L.H. Moore Canning Co.*, 509 S.W.2d 432, 434 (Tex. Civ. App. – Corpus Christi), *cert. denied*, 419 U.S. 845 (1974). An agency must have jurisdiction over the disputed issues in order for its findings to be entitled to preclusive effect. *Nairn*, 366 S.W.3d at 243; *see Puga v. Donna Fruit Co., Inc.*, 634 S.W.2d 677, 680 (Tex. 1982). The Commissioner of Education had jurisdiction over the disputed issues regarding the non-renewal of Plaintiff's contract. *See* TEX. EDUC. CODE §21.209; *Nairn*, 366 S.W.3d at 243. Section 21.209 provides that a teacher "who is

aggrieved by a decision of a board of trustees on the non-renewal of the teacher's term contract may appeal to the commissioner for a review of the decision…." Tex. Educ. Code §21.209.  The Commissioner of Education has determined that the issue of discrimination may be raised in an administrative hearing, and that the Commissioner has jurisdiction over discrimination and retaliation claims. *See* Ex. C, *Carter v. Milford Indep. Sch. Dist.,* Dkt. No. 020-R2-04-2017 (Comm'r Educ. 2017); *and* Ex. D, *Johnson v. Dallas Indep. Sch. Dist.,* Dkt. No. 029-R2-06-2017 (Comm'r Educ. 2017).  The Texas Supreme Court has held that the Commissioner may have jurisdiction over state and federal claims, which pertain to a complaint about the "board's handling of an employment contract," in which case "the entire action should be amenable to administrative appeal." *Clint Indep. Sch. Dist. v. Marquez,* 487 S.W.3d 538, 552 (Tex. 2016).

13.    Here, the Commissioner heard the evidence from both Plaintiff and the District concerning her non-renewal. *See* Ex. B.  Plaintiff was represented by an attorney at the non-renewal hearing before the Board of Trustees and before the Commissioner of Education. *See* Ex. B.  In the case before the Commissioner, the Commissioner entered findings of fact and conclusions of law. *See* Ex. B.  The Commissioner acted in a judicial capacity and resolved the disputed issues of fact concerning Plaintiff's non-renewal that were before him. *See Nairn,* 366 S.W.3d at 243; *Bryant,* 509 S.W.2d at 434.  The facts concerning the non-renewal were essential to the Commissioner's decision. *See* Ex. B.  Based on collateral estoppel, the Commissioner's fact-findings on the non-renewal of Plaintiff's contract are binding.  *Nairn,* 366 S.W.3d at 243

14.    In a case almost identical to this one, a school board voted to non-renew a teacher's term contract, following a non-renewal hearing. *Nairn,* 366 S.W.3d at 237. At the non-renewal hearing, the teacher refused to participate in the hearing, invoking a "right to remain silent." *Id.* After the board voted to non-renew her contract, the teacher appealed to the Commissioner of Education.

*Id.* The Commissioner made findings of fact regarding the District's reasons for her non-renewal. *Id.* at 237-38. The teacher then filed suit in state court, alleging *inter alia*, discrimination, whistleblower violations, and retaliation. *Id.* at 238. The trial court granted summary judgment in favor of the District, based in part on collateral estoppel, from which the teacher appealed. *Id.* at 239-40. The appellate court found that the facts underlying the teacher's discrimination and retaliation claims were the same as those concerning the basis for her non-renewal. *Id.* at 242-43. The court held that collateral estoppel applied, finding that even though Plaintiff refused to participate in the non-renewal hearing, the issues in the suit had been fully and fairly litigated before the Board and the Commissioner. *Id.* at 243. The Commissioner's findings of fact supporting the non-renewal were binding, and constituted "legitimate, non-discriminatory reasons for the adverse action." *Id.* at 243-44.

15.     *Nairn* applies to the case at bar. Here, Plaintiff clearly had the opportunity to present evidence and testimony to rebut the reasons for her proposed non-renewal, and her attorney did so on her behalf. *See* Ex. B, p. 3. The Board heard and received evidence supporting Plaintiff's non-renewal, and voted to non-renew her contract. On appeal to the Commissioner, Plaintiff, who was represented by counsel, was again afforded an opportunity to fully and fairly litigate the reasons for her non-renewal. *See* Ex. B. The Commissioner found in favor of the District and issued findings of fact, all of which constituted legitimate, non-discriminatory reasons for the non-renewal. *See* Ex. B. Specifically, the Commissioner of Education found that Plaintiff's employment was not renewed because as a Principal she was responsible for the proper administration of transactions and documentation including two signatures per check. *See* Ex. B, ¶ 2. However, "[Plaintiff] failed on numerous occasions to have proper documentation for expenditures and two signatures per check[]. Further, [Plaintiff] directed her secretary to sign

checks for her. [Plaintiff] denied that she allowed her secretary to sign checks for her. She also told her secretary to lie to district investigators about this matter." *See id.*, ¶ 3.   Plaintiff also "engaged in impermissible fund raising activities by charging students for composition books paid for by the district and for attending events such as pep rallies and performances." *See id.* ¶ 4. Plaintiff is collaterally estopped from re-litigating the evidence and findings regarding her non-renewal.

16.     As set out above, Plaintiff is collaterally estopped from re-litigating the facts underlying the reason for her non-renewal.  As in *Nairn,* discussed above, the Commissioner's findings of fact concerning the reasons supporting the non-renewal establish that the District had legitimate, non-discriminatory reasons for its actions as a matter of law.   Accordingly, Plaintiff cannot establish that the District discriminated against her "because of....race...sex...or age," the statutory elements for stating a claim under the TCHRA. TEX. LABOR CODE ANN. §§ 21.05.  As a result, Defendant's sovereign immunity from suit is not waived, and this Court lacks subject-matter jurisdiction.  Defendant now pleads with this honorable court to set this matter for hearing and upon conclusion thereof, grant Defendant's Plea to the Jurisdiction and dismiss Plaintiff's suit for lack of subject-matter jurisdiction.

Respectfully submitted,

WALSH GALLEGOS TREVIÑO
RUSSO & KYLE P.C.
100 NE Loop 410, Suite 900
San Antonio, Texas 78216
Tel No.: (210) 979-6633
Fax No.: (210) 979-7024

By:    */s/ D. Craig Wood*
        D. CRAIG WOOD
        State Bar No. 21888700
        cwood@wabsa.com
        KATIE E. PAYNE
        State Bar No. 24071347
        kpayne@wabsa.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of December 2017, a true and correct copy of the above and foregoing was electronically filed pursuant to the TEXAS RULES OF CIVIL PROCEDURE, which provides electronic service to counsel of record if the email address of the attorney to be served is on file.  Additionally, a copy of the foregoing pleading was served upon counsel of record as set out below:

Mr. Laurence "Larry" Watts
WATTS & COMPANY, LAWYERS, Ltd.
P.O. Box 2214
Missouri City, Texas 77459
wattstrial@gmail.com

**COUNSEL FOR PLAINTIFF**

        */s/ D. Craig Wood*
        D. CRAIG WOOD

FILED
5/31/2017 6:11:36 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Christopher Morrow



## CASE NO. 2017CI09876

| | | |
|---|---|---|
| CAROLINE ROSS, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | OF |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| JUDSON INDEPENDENT | § | 73ʳᵈ JUDICIAL DISTRICT |
| SCHOOL DISTRICT, | § | |
| *Defendant* | § | TRIAL BY JURY |

### PLAINTIFF'S AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

  Caroline Ross (hereafter "Plaintiff" or "Ross"), an African American female, who was born in 1961, files this Original Petition (hereafter "this Petition") complaining of Judson Independent School District (hereafter "Defendant" or "JISD") and would show the Court as follows:

### DISCOVERY CONTROL PLAN

  Plaintiff alleges that discovery in this lawsuit is intended to be conducted under level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### TRCP 46 COMPLIANCE

  Ross presents two claims against JISD. The first is a legal claim under Tx. Lab. Code, Chapter 21, and based on two Charges of Discrimination, No's. 451-2017-00505, and 451-2016-01981 whereby Ross seeks money damages.

  No claim herein is brought pursuant or ancillary to the school laws of the state of Texas.

  The damages sought herein for Ross' legal claim, are within the jurisdictional limits of the court and seek monetary relief over $200,000.00 but not more $1,000,000.00.

### THE PARTIES

  Plaintiff is an individual who resides in Bexar County, Texas.

  Defendant JISD is an independent school district, located in Live Oak, Bexar County, Texas.

### EXHIBIT "A"

## JURISDICTION AND VENUE

JISD, at all times relevant to this lawsuit levied taxes and received governmental monies to do operate a public education facility in Bexar County, Texas. Therefore, jurisdiction and venue are proper in Bexar, County, Texas. As a proximate result of said "incident," damages in excess of the minimum jurisdictional limits of this Court were incurred by Plaintiff. The damages suffered include, but are not limited to economic and non-economic losses.

## SERVICE

JISD may be served by serving the Petition, citation, service of process and discovery upon the Superintendent of Schools, at his office at 8012 Shin Oak Drive, Live Oak, Texas 78233.

## FACTS

Ross (African American) served with distinction and loyalty as a public educator with the JISD for approximately 19 years.

Ross served for approximately 8 years as the Assistant Principal of various JISD schools, and then served as a building Principal for approximately 10 years, before she was terminated for pretextual reasons in 2016.

For the last several years of her employment by JISD, Ross served as the Principal of Metzger Middle School.

The approximate racial make-up of JISD's student body is 63% +/- Hispanic, 30% +/- African American, and 7% +/- Caucasian.

For many years Anita Bera (Hispanic) served as an Associate Superintendent.

In December 2007, the JISD Board of Trustees hired Dr. Willis Mackey (African American) as Superintendent.

Superintendent Mackey disapproved of Bera's service in her position as Associate Superintendent, and demoted her to the position of Assistant Superintendent.

During Ross's 19 years in the JISD, or performance assessments were proficient and when serving as a Principal her appraisals were outstanding earning her distinctions year after year. The Associate Superintendent of JISD at the time even noted, "Ms. Ross has built a strong instructional team, she's led the school to once again grow in terms of student achievement."

Meanwhile, racial tensions amongst white patrons of the district and others began to focus on JISDs Superintendent, perceived by many onlookers as being the result of his being

African American. Under Mackey's leadership JISD passed its first bond issue in nearly 7 years and made singular improvements and academics. Significantly, not only did Mackey open new and important educational venues in the district but the district's fund balance topped $40 million realizing significant savings through the refinancing of older bonds to the tune of $11 million. Superintendent Mackey's curriculum decisions and implementation of instructional systems because JI asked E to become one of only three public school districts in the San Antonio Metro area in which all campuses, elementary-middle school-in high school, met state and federal academic standards. His leadership both past and present was generally considered to be outstanding; but he had his critics, and those critics generally formed along race lines, using Twitter and other social media to generate back channel complaints and criticisms about the Mackey administration.

On April 14, 2014, Superintendent Mackey informed the school board of JISD that he intended to retire at the end of the 2014-2015 school year.

On September 17, 2015, JISD, building a new high school, and wrestling with the task of deciding what name should be placed on the building, dealt with a social media backlash against naming the school after the former African-American Superintendent, and voted 5 to 2 in favor of naming the new school after Dr. Willis Mackey.

Media took note that the decision was met with plenty of negative comments on the districts Facebook and Twitter accounts.

Nevertheless, despite the negative feedback, the district defended its decision to name the school after Superintendent Mackey.

In December 2015, JISD was again whipped by local forces into changing the name of the under-construction Mackey high school; yet the board resisted, and the name of the building remained Willis Mackey high school… for a while longer, until the tweets and social media opposition resulted in changes on the school board. Racism disguised as some other more socially palatable excuse pressed the JISD Board to not name the new high school after the District's former African American Superintendent.

In the meantime, sometime in February 2016, false allegations were generated against Ross, falsely accusing her of misappropriation of funds. Ross received the most severe punishment available, nonrenewal and termination after 19 years of service. In Ms. Ross's situation, the hollow and fake allegations against her were never verified or supported by credible evidence.

Ross was not the only JISD professional educator accused of offenses similar to the one leveled against her or worse.

Ross was the only JISD Principal or Administrator terminated or nonrenewed by JISD in her memory.

JISD has pursued a pattern and practice of treating protected persons less favorably than non-protected persons.

## OTHERS OUTSIDE OF ROSS' PROTECTED CLASS WHO HAVE BEEN TREATED MORE FAVORABLY

For example, there were other district administrators, none of whom were African American who were treated far more favorably than Ross under similar or worse accusations of misconduct. Even in the instances of the other non-African-American administrators/educators, many of the more favorably treated employees were admittedly or substantially culpable or responsible for the charges made against them.

In 2015, **Steve Yaklin, Dir. of Maintenance, a white male**, was placed on administrative leave for failure to follow procurement law processes and board policy where he had violated vendor contract rules. JISD publicly rescinded a termination of Yaklin, reinstating him and returning him to duty.

**Marsha Bellinger, former Principal at Park Village Elementary, a white female,** was transferred to Judson Alternative School in 2015 rather than being nonrenewed for alleged leadership issues.

In 2016, Marsha Belanger was transferred again to a district office level position after being placed on administrative leave and threatened with nonrenewal, which new position was effectively a promotion carrying with it a raise in salary.

**Elaine Howard, Executive Director of Human Resources, a white female,** in 2013 failed to terminate an employee (Troy Richleau) in the district and he was awarded over $12,000.

Elaine Howard's failure to follow proper personnel and district policies and procedures cost the school district thousands of dollars and she was neither terminated nor reprimanded.

In 2014, **Evelyn Cantu (Hispanic)** was not terminated from payroll after her resignation from district employment resulted in an overpayment of over $30,000 to her; however, Marlene Glover, an African-American female, was required to pay back a retention bonus of $1200.

**Cindy Barnhart, a white female, former Principal at Franz Elementary,** allegedly failed to take an action against the teacher who was convicted of having improper sexual contact with students. Ms. Barnhart allegedly had first-hand knowledge of the incidents and was ultimately sued by the victims which resulted in a settlement, yet she was only reassigned to another campus as a Principal and not threatened with nor are nonrenewed in her employment.

**Greg Milchder, a white male, former Vice-Principal at Judson High School** was reassigned for allegedly requiring teachers to change grades of students and has since been promoted to be the current principal at Park Village Elementary School.

**Kristy Vidaurri, a white female, and former Principle of Judson High School** was reassigned to the districts main office because of her alleged failure in leadership at the campus.

**Barbara Mead, a white female was reassigned as Executive Director of Judson Educational Foundation** after having been the head counselor at Metzger who had allegedly disrupted the administration of Tracy Val-Ray, an African American female. It should be noted that the board of JISD was going to replace Ross at Metzger with Beverly Broome, a white female but was told by their consultants not to do so at this time because of Ross's pending claim that as soon the Charge of Discrimination by Ross was disposed of they could put Broome in as principal at Metzger.

**Michael Wacker, a white male, was Head Boys Basketball Coach** and was arrested by the police for Driving While Intoxicated, the arrest being widely publicized on area television news; nevertheless, Wacker was merely suspended for one week and returned to his duties.

**Don Pittman, a white male, Principal of Judson High School** was never terminated or nonrenewed even after accusations of violating Judson policies and practices, being merely reassigned to the districts office and then to become Principal of an elementary school where he served for four years before retiring to seek employment in the Northeast ISD.

**Kamara Adams, a white female, Vice Principal at Judson High School** was accused of violating district policy and procedure and transferred to the district office.

**Mr. Joe Gonzales, Hispanic male, Principle of Wagner High School** was transferred to the district office then to Executive Director Student Supply Services, after being accused of violating district policy and procedures.

**Erica Garza, Hispanic female, Principal Rolling Meadows Elementary** was demoted and reassigned to the position of Vice Principal at Kitty Hawk middle school for having allegedly violated district policies and procedures.

**René Briske, a white female was demoted and transferred from Principal Paschall Elementary to become Vice Principal at Judson Elementary College Academy** and has since been re-promoted to be Principal at Eloff Elementary after allegedly violating district policies and procedures.

### TIMELINE OF 2015-2016

June 11, 2015-    Ms. Ross received a Principal Appraisal Summary Sheet with "E" to "E+" (outstanding) evaluations and a comment by Assoc. Superintendent Nancy Robinson, to wit: " Ms. Ross has built a strong instructional team. She has led the school to once again grow in terms of student achievement.

| | |
|---|---|
| July 2015 | Superintendent forced to retire. Assoc. Sup. Nancy Robinson also retires |
| September 2015 | Notice of Texas Education Agency's 2014-2015 "Distinction" for academic improvement and progressive improvement in attendance at Metzger Middle School. (No Banner provided by JISD as for 2012-2013 year: causing Public humiliation and disrespect to students and community. |
| February 23, 2016 | Campus Police interview Secretary/Bookkeeper, Laura Hopkins, in regard to her having committed forgery. Ms. Hopkins denied signing checks, denied petty cash fund. The police state that an ongoing investigation will clear her if she says Ms. Ross okayed it. She swooped up the police offered chance to falsely blame someone else. |
| February 24, 2016 | Ross interviewed by police and for the first time sees checks. Ms. Ross denied ever giving permission to anyone to sign her name to checks and pointed out that any two out of three people were available to sign checks. Understanding seriousness of forgery charge Ross wants to check to calendar to see if she was on campus on the days the checks were signed. Ross denies ever giving permission and wanted to see original records and checks along with documentation submitted at the time the checks were requested and issued. |
| February 25, 2016 | Ross was placed on administrative leave with pay-with the Superintendent's Letter stating misappropriation of funds. Barred from campus and unable to examine records to establish proof that she did not want or need signatory authorization for anyone. Unable to secure records for PAD (Principal's activity fund) |
| March 23, 2016 | Ms. Laura Hopkins claims Ross had given permission for check writing; maintained a petty cash fund and allowed Ms. Hopkins to use password for routine forms and check requisitions. Ms. Hopkins was told that the police had established that "all funds were accounted for" and the only criminal action toward |

Ms. statement from Ms. Coggins, Ross's former secretary/ bookkeeper. Ms. Coggins vehemently denied the outrageous story that Ms. Coggins Had instructed Hopkins how to trace Ross's signature by holding it up to window light.

May 9, 2016

Ross was ambushed with a request for" an interview since investigation was over".

She attended with her Representative of choice. The attorney for the District was there and had 30 pages of questions based entirely on the interview with Ms. Laura Hopkins. Ross denied each and every allegation while pointing out that her calendar will show that she was on campus every day and there was no need for anyone except the assistant Principal, was the second in charge, to sign any checks or access reporting channels. The issue of Jean Day was raised although JISD had no Policy (A policy against Jean Days was issued on May 31,2016. The Wagner staff had put Jean Day money in a fund to sponsor alternative graduation parties and post prom "safe events".)

May 19, 2016

Board meeting held with Ms. Ross's non-renewal on the agenda. Several people spoke in support.

Board, by motion, voted 6-I to not renew and authorized formal notice be sent.

May 21, 2016

Ross requested an open hearing.

May 25,2016

Notice was provided to Ross that her hearing was scheduled for June 7, 2016.

May 30, 2016

JISD Attorney Russo filed claim of misrepresentation of items that are based solely on Ms. Hopkins statement or statements made by others to Ms. Hopkins

June 2, 2016

Ross and JISD Exchanged exhibits for the hearing.

June 6 2016

Ross objected to Russo's JISD's Exhibits 23 and 37 because they were unreliable hearsay.

June 7, 2016

The hearing was rife with unconstitutional violations of due process, all the more important because Ross' was denied a constitutionally adequate hearing, upon

which her career and job depended. The constitutionally deficient hearing was held-and the majority of the Board ignored the morally correct and legal thing, deprived Ross of fundamental fair play even though Ross objected repeatedly: to unreliable hearsay by a declarant with reputation for untruthfulness and acts of moral turpitude; because Board's wrongful act, JISD-HR director Irma Hernandez testified that the person who had altered official records and forged Ross' name, Hopkins was the only one who had made the allegation of a criminal action by Ms. Ross- JISD caused Hopkins, Ross' accuser-the declarant not to appear. Asst. Prin. Gomez was impeached as to existence of petty cash fund or a" pot". Gomez admitted she never saw Hopkins deposit money into a pot; she also admitted she only heard Ms. Ross make reference to a pot "once in 4years. She stated she did not know if a Principal Activity Fund existed.HR Irma Hernandez was also impeached as to Ms. Hopkins being made aware Ms. Ross's former secretary/ bookkeeper. Ms. Coggins, vehemently denied the outrageous story that Ms. Coggins had showed Ms. Hopkins how to trace Ms. Ross's signature by holding it up to window light. Board voted 5-1 to non-renew and **one member who voted with the majority did not appear.**

**The District's wrongdoing caused Ms. Hopkins to not be available.** The Districts HR administrator proffered legal advice to Ms. Hopkins that the District could not prevent Ross from bringing criminal charges against Hopkins. District's Exhibit 37, pages 205-206. This effectively dissuaded the witness from attending live, and being subject to cross examination, on the inconsistent and discredited stories she has given. The statements should have been denied admittance. Tex R. Evid. 801(5). Consequently, not only was one of the jurors or board members who convicted Ross was missing from the vote at the hearing, but the single and only accuser of Ross refused to appear for fear of subjecting herself to perjury charges.

Ross was subjected to discriminatory employment practices because of her race, sex, and age, when other persons outside of her protected classifications were treated more favorably than Ross.

## CAUSE OF ACTION AGAINST DEFENDANT:
## DISCRIMINATION IN VIOLATION OF THE
## TEXAS COMMISSION ON HUMAN RIGHTS ACT

Pursuant to Texas state law, Ross pleads a cause of action against JISD for sex, race and age discrimination in violation of the Texas Commission on Human Rights Act. Tex. Lab. Code § 21.051 ("TCHRA"). The allegations contained in all of the paragraphs of this Petition are hereby reaverred and realleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

JISD terminated/non-renewed Ross from her supervisory position because of her sex (female) in violation of the TCHRA. JISD effectuated this discriminatory act by and through fluid pretextual and non-specific charges of at first misappropriation of funds, and when there were no accusers who would falsely swear, JISD nimbly shifted to "performance" reasons which were unconstitutionally vague.

Ross has met all procedural prerequisites to bringing this TCHRA claim. Plaintiff filed TCHRA charges relating to these violations on June 9, 2016, and an amendment and/or second Charge on November 16, 2016. Ross has received Right to Sue letters relating to these charges. Further, Plaintiff is within all applicable statutes of limitations for bringing this civil action.

## NOTICE OF REQUEST FOR DISCLOSURE

Please note that Ross hereby serves her Request for Disclosure to JISD, pursuant to Rule 194, Texas Rules of Civil Procedure, you are requested to disclose, within thirty (30) days of service of this request, the information and material described in Rule 194.2 (a) through (j).

## JURY DEMAND

Ross demands that this Court empanel a lawful jury to hear this case.

## RESERVATION OF RIGHTS

Ross specifically reserves the right to bring additional causes of action against JISD and to amend this Petition as necessary.

## DAMAGES FOR MENTAL ANGUISH

As a consequence of the foregoing facts and the willful and malicious nature of the wrongs committed against Ross, Ross has suffered and will suffer past, present and future severe mental anguish, for which she pleads to recover at trial.  The damages for said mental anguish exceed the minimum jurisdictional limits of this court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Ross prays that JISD be cited to appear and to answer herein and that upon final hearing, the Court enter judgment in favor of Ross against JISD, jointly and severally, in an amount in excess of the minimum jurisdictional limits of this Court, for compensatory damages, punitive damages, reasonable attorneys' fees, reasonable paralegal fees, costs of court, and pre-and post-judgment interest at the highest rate allowed by law, and also enter an order revoking any certificate enabling JISD's Superintendent to function as a certified public school admin in Texas and revoking any certificate authorizing Defendant to do business in Texas if any judgment rendered in this case has not been satisfied within three (3) months from the date of filing said final judgment, and for such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

WATTS & COMPANY, LAWYERS, Ltd.

**/s/ Laurence "Larry" Watts**
Laurence "Larry" Watts
T.B.N. 20981000
P.O. Box 2214
Missouri City, Texas 77459
Tel: (281) 431-1500
Fax: (877) 797-4055
E-mail: wattstrial@gmail.com

*Attorney for Plaintiff*

DOCKET NO. 052-R1-06-2016

| | | |
|---|---|---|
| CAROLINE D. ROSS | § | BEFORE THE |
| | § | |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| | § | |
| JUDSON INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner, Caroline D. Ross, complains of the decision of Respondent, Judson Independent School District, to nonrenew her term contract. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education to hear this cause. Petitioner is represented by Donald G. Henslee, Attorney at Law, Austin, Texas. Respondent is represented by Robert Russo, Attorney at Law, San Antonio, Texas.

The central issue in this case is whether there is substantial evidence that Petitioner violated Respondent's pre-established reasons for nonrenewal. A significant subsidiary issue is what effect Petitioner's failure to cite to the local record and authority has on this case.

A teacher might, although it probably is not a wise course of action, simply state in her brief that there is not substantial evidence of any of the allegations that the teacher violated a district's reasons for nonrenewal, without any citations to the record or authority. If there truly is no evidence, or at least not substantial evidence, there might be no need to cite to evidence. Hence, the teacher would not violate the briefing rule that requires appropriate citations. However, once the district cites evidence that appears to be substantial, one would expect the teacher to come forward with the reasons why such

**EXHIBIT B**

052-R1-06-2016

evidence is not substantial and perhaps citations to the record that show how the district's assertions as to the facts of the case are not supported by the record as a whole.

In the present case, Petitioner's failure to cite to the record and authority in her initial brief and her failure to file a reply brief after Respondent made a prima facia case that its decision was supported by substantial evidence, results in Respondent prevailing.

<u>Findings of Fact</u>

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are otherwise valid.

1.    Petitioner was employed by Respondent under a term contract as a principal.

2.    Respondent's principals are responsible for the proper administration of activity fund transactions in accordance with district policy.  Respondent requires documentation for expenditures and two signatures per check.

3.    Petitioner failed on numerous occasions to have proper documentation for expenditures and two signatures per checks.  Further, Petitioner directed her secretary to sign checks for her.  Petitioner denied that she allowed her secretary to sign checks for her.  She also told her secretary to lie to district investigators about this matter.

4.    Petitioner engaged in impermissible fund raising activities by charging students for composition books paid for by the district and for attending events such as pep rallies and performances.  Petitioner also charged faculty and staff for the right to wear jeans.

5.    Petitioner in violation of district policy had alcohol on school property and appeared inebriated at a school ceremony.

6.    Petitioner improperly shared passwords and directed others to perform her duties.

7.    Petitioner worked on an outside film project during her work hours and was not truthful with district officials about this.

8.    Petitioner in violation of district policy allowed an outside individual to conduct a noncurriculum related student group.  The students in this group were often late to class because of participation in this group.

9.    Petitioner had her secretary run personal errands for her during the work day.

Discussion

Petitioner contends Respondent improperly nonrenewed her contract because the decision is arbitrary and capricious, unlawful, and not supported by substantial evidence. Respondent denies this and contends that virtually all of Petitioner's factual allegations should be disregarded because Petitioner has failed to properly brief her claims.

<u>Arbitrary, Capricious, and Unlawful?</u>

To the extent that Petitioner contends Respondent's decision is arbitrary capricious and unlawful, Petitioner has failed to exhaust administrative remedies as to these claims by failing to cite to the local record and authority as to these claims.  The argument portion of a brief is required to have appropriate citations to the record and authority.  19 TEX. ADMIN. CODE § 157.1058(a)(4).  In the only brief Petitioner filed, there is not a reference to the local record or to any authority.  Petitioner's brief fails to properly raise the issues of whether Respondent's decision was arbitrary, capricious, or unlawful because it fails to point out where in the record such a failing occurred and by what authority is such an alleged failing fatal to Respondent's decision to nonrenew Petitioner's contract.  It is not the role of the Commissioner to review the local record and legal authority to determine if at any point an improper decision was made.  Nor is it the job of opposing counsel to guess what argument Petitioner is making.  It is the job of the petitioner to demonstrate that a school district's decision is incorrect by showing where in the record an error occurred and by citing authority to show such error requires reversal

of the board's decision. Because Petitioner has failed to properly brief her claims that the board's decision is arbitrary, capricious or unlawful, the Commissioner lacks jurisdiction over these claims due to the failure to exhaust administrative remedies.

<u>Hearsay and Due Process</u>

In addition to failing to exhaust administrative remedies as to claims that Respondent's decision is unlawful, Petitioner has made claims that cannot apply when a school board holds a hearing on the proposed nonrenewal of a teacher's contract. Numerous courts have determined that due process rights are not at stake when a term contract is nonrenewed. Because there is no property interest in a term contract beyond the contract's term, there is no entitlement to due process protections when a contract is nonrenewed. *See Los Fresnos ISD and Commissioner v. Vasquez*, 481 S.W.3d 742, 746, 2015 Tex. App. LEXIS 13006, (Tex. App.-Austin 2015, pet. denied), *Peters v. Nelson*, 2002 Tex. App. LEXIS 2539, 10 (Tex. App.-Dallas 2002, no pet.); *Nairn v. Killeen Indep. Sch. Dist.*, 366 S.W.3d 229, 245 (Tex. App.-El Paso 2012, no pet.); *Ray v. Houston Indep. Sch. Dist.*, 438 Fed. Appx. 332, 335 (5th Cir. 2011). *Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 29 (Tex. App.--Austin 1999, no pet.), *Whitaker v. Marshall Indep. Sch. Dist.*, 40 S.W.3d 176 (Tex. App.-Texarkana 2001, no pet.).

When a proposed nonrenewal is heard by an independent hearing examiner, the Texas Rules of Evidence, which include the hearsay rule, apply to the case. TEX. EDUC. CODE § 21.256(d). However, the present case was heard by the school board, not by an independent hearing examiner. When a school board hears a proposed nonrenewal, the hearsay rules do not apply unless the board by its own policy provides that the hearsay rules apply. *Los Fresnos ISD and Commissioner v. Vasquez*, 481 S.W.3d 742, 745, 2015 Tex. App. LEXIS 13006, (Tex. App.-Austin 2015, pet. denied). Respondent has not so provided. But even if it had, unobjected-to hearsay is probative evidence. *Texas National Bank v. New*, 3 S.W.3d 515, 517 (Tex. 1999). Petitioner failed to object to the evidence she now asserts is hearsay.

Substantial Evidence

To claim that a decision is not supported by substantial evidence is to claim that no reasonable finder of fact could have made the factual findings that support the decision. *City of Alvin v. Pub. Util. Comm'n of Tex.*, 876 S.W.2d 346, 355 (Tex.App.--Austin 1993, judgment set aside in accordance with settlement agreement, 893 S.W.2d 450). To raise a substantial evidence issue, one may only need to contend that a particular fact finding is not supported by substantial evidence. Petitioner has done this bare minimum in her brief. Petitioner has exhausted administrative remedies as to the claims certain findings of fact are not supported by substantial evidence.

Respondent, however, in its brief, which both cites to the local record and appropriate authority, makes a prima facia showing that the fact findings at issue are supported by substantial evidence. Petitioner never responded to Respondent's brief. It is not the Commissioner's job to make Petitioner's arguments for her. It is concluded that substantial evidence supports the reasons Petitioner's contract was proposed for nonrenewal.

Conclusion

Because Petitioner failed to exhaust administrative remedies, the Commissioner lacks jurisdiction over Petitioner's claims that Respondent's decision to nonrenew her contract was arbitrary, capricious, or unlawful. Respondent's decision is supported by substantial evidence.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as the Commissioner of Education, I make the following Conclusions of Law:

1.      The Commissioner has jurisdiction over this case under Texas Education Code section 21.301, except for the claims that Respondent's decision is arbitrary, capricious, or unlawful.

2.     The argument portion of a brief is required to have appropriate citations to the record and authority.  19 Tex. Admin. Code § 157.1058(a)(4).

3.     As the argument portion of Petitioner's brief lacks appropriate citations to the record and authority, Petitioner has failed to exhaust administrative remedies as to her claims that Respondent's decision to nonrenew her contract is arbitrary, capricious, or unlawful. 19 Tex. Admin. Code § 157.1058(a)(4).

4.     There is no entitlement to due process protections when a term contract is nonrenewed.  Tex. Educ. Code § 21.204(e).

5.     The hearsay rule does not apply when a school board conducts an evidentiary hearing concerning the nonrenewal of a term contract unless the school board's policy specifies that the hearsay rule applies.  As Respondent has no such policy, the hearsay rule does not apply to this case.  Tex. Educ. Code § 21.207(b).

6.     Respondent's decision to nonrenew Petitioner's contract is supported by substantial evidence.

7.     The Petition for Review should be denied in part and dismissed in part.

<u>ORDER</u>

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as the Commissioner of Education, it is hereby

ORDERED that the Petitioner's appeal, be, and is hereby denied in part and dismissed in part.

SIGNED AND ISSUED this _15th_ day of August, 2016.

MIKE MORATH
COMMISSIONER OF EDUCATION

Case 5:18-cv-00269-FB-HJB    Document 1-2    Filed 03/22/18    Page 63 of 178

OTIS E. CARTER v. MILFORD INDEPENDENT SCHOOL..., 2017 WL 3923942...

2017 WL 3923942 (TEXEDAG)

Texas Education Agency

The Commissioner of Education

The State of Texas

OTIS E. CARTER

V.

MILFORD INDEPENDENT SCHOOL DISTRICT

DOCKET NO.

**020**
-
**R2**
-
**04**
-
**2017**

May 23, 2017

**DECISION OF THE COMMISSIONER**

Statement of the Case

**\*1** Petitioner, Otis E. Carter, complains of the decision of Respondent, Milford Independent School District, to terminate his term contract. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education to hear this cause. Petitioner is represented by Vonciel Jones Hill, Attorney at Law, Dallas, Texas. Respondent is represented by Robert E. Luna, Attorney at Law, Dallas, Texas.

The primary issues in this case are whether Petitioner exhausted administrative remedies, whether there is substantial evidence to support Respondent's decision, and whether Petitioner created a hostile work environment.

Only a school board can terminate a teaching contract. While the independent hearing examiner has a key role in a Texas Education Code chapter 21, subchapter F case, the independent hearing examiner's primary role is to conduct a hearing and to make a recommendation. The school board determines whether to adopt the recommendation after hearing from the teacher and the administration. If there is some error in a recommendation, the parties need to bring that error to the attention of the school board or administrative remedies have not been exhausted. One cannot lie behind the proverbial log before the primary decision maker, the school board, and then make one's arguments to an appellate decision maker, the Commissioner.

Because Petitioner only presented his substantial evidence arguments and the argument that Respondent's policy about hostile work environment must be interpreted in accordance with federal law, these are the only arguments for which Petitioner has exhausted administrative remedies.

While there is conflicting evidence in this case, substantial evidence supports the findings of fact that Petitioner made highly inappropriate comments to fellow teachers.

# EXHIBIT C

Case 5:18-cv-00269-FB-HJB   Document 1-2   Filed 03/22/18   Page 64 of 178

OTIS E. CARTER v. MILFORD INDEPENDENT SCHOOL..., 2017 WL 3923942...

Respondent's policy which addresses a hostile work environment should not be interpreted as only forbidding the creation of a hostile work environment, as that term is defined under federal law. A school board gets to authoritatively interpret its policies. Respondent's board reasonably determined that Petitioner's actions created a hostile work environment for the three teachers who were subjected to his comments.

## Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are valid.

1. The Findings of Fact drafted by the Independent Hearing Examiner and adopted by Respondent's Board of Trustees are adopted and incorporated as if set out in full.

2. Petitioner only made the following arguments before the school board: Petitioner contended that Findings of Fact Numbers 45, 47, 48, 49, 50, 51, 52, 55, 56, 57, 60, 62, 63, 64, 65, 66, 69, 70, 75, 76, 77, 78, 79, and 81 are not supported by substantial evidence and that there was not a hostile work environment according to Fifth Circuit and Supreme Court standards.

## Discussion

**\*2** Petitioner contends that Respondent's decision to terminate his term contract should be overturned because of procedural irregularities, because certain findings of fact are not supported by substantial evidence, and because the standard for a hostile work environment was not met. Respondent denies these claims and asserts that Petitioner failed to exhaust administrative remedies.

## Exhaustion of Remedies

Originally exhaustion of administrative remedies was a court created doctrine. *Walls Regional Hospital v. Altaras*, 903 S.W.2d 36 (Tex. App.--Waco 1994, no writ). The doctrine of exhaustion of administrative remedies ensures the Legislature's decision to grant decision making authority to the appropriate body is honored. As the Supreme Court of Texas has recently held:

The requirement that parties exhaust administrative remedies does not deprive parties of their legal rights. *Rhule*, 417 S.W.3d at 442; *see* TEX. EDUC. CODE § 7.057(b) (stating that an administrative appeal to the Commissioner of Education "does not deprive any party of any legal remedy"). Instead, it honors the Legislature's intent that "the appropriate body adjudicates the dispute" first, *Essenburg*, 988 S.W.2d at 189, and thereby "ensure[s] an orderly procedure to enforce those rights." *Rhule*, 417 S.W.3d at 442. By requiring the agency to address the complaints first, the law permits the agency to apply its expertise and exercise its discretion to resolve the issue and to develop a complete factual record if the courts later get involved. *See McKart v. United States*, 395 U.S. 185, 194, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969); *see also* Kenneth Culp Davis, *Administrative Law Doctrines of Exhaustion of Remedies, Ripeness for Review, and Primary Jurisdiction: 1*, 28 TEX. L. REV. 168, 169 (1949) ( "Premature judicial intervention may defeat the basic legislative intent that full use should be made of the agency's specialized understanding within the particular field."). A party who obtains relief through the administrative process avoids the expense and delay of litigation. *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006); *McKart*, 395 U.S. at 195. And if the outcome of the administrative process leaves the party dissatisfied, it may file suit and have the courts review the agency's decision. *Tex.* [\*545] Water Comm'n v. Dellana, 849 S.W.2d 808, 810 (Tex. 1993); *see* RONALD L. BEAL, TEXAS ADMINISTRATIVE PRACTICE AND PROCEDURE, § 5.5.5,

at 5-34 (2015) ("The purpose of the [primary-jurisdiction] doctrine is to assure that the agency will not be bypassed on what is specifically committed to it; the district court will remain open after the agency has acted."). In this appeal, we cannot grant or deny the parents the relief they are seeking; instead, we decide only whether the law requires them to first seek that relief through an administrative process before they can seek redress from the courts.

**\*3** *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 544-545, 2016 Tex. LEXIS 238, \*6-8, 59 Tex. Sup. J. 546, 2016 WL 1268000 (Tex. 2016). The doctrine of exhaustion of administrative remedies ensures that administrative bodies are not bypassed, that they have the first opportunity to address issues.

The Commissioner held in *Canutillo Educators Association v. Canutillo Independent School District*, 042-R10-203 (Comm'r Educ. 2006, On Remand) that:
A long line of Texas cases finds exhaustion of remedies before school authorities to be jurisdictional. In 1929, it was held that:
It has been uniformly held that the resort to the school authorities must first be made before the courts will be authorized to hear any complaint as to a matter properly belonging to the administration of the school laws. It is a condition precedent to the exercise of jurisdiction of the civil courts. (citations omitted)

*Warren v. Sanger Indep. Sch. Dist.*, 116 Tex. 183, 185, 288 S.W.2d 159, 160 (Tex. 1926). If there was any question that "resort to the school authorities" meant following the procedures in place, this was dispelled in *Mission Indep. Sch. Dist. v. Diserens,* 144 Tex. 107, 111, 188 S.W.2d 568, 570 (Tex. 1945) when the Supreme Court adopted the analysis in *State ex rel Nevills v. Sanderson*, 88 S.W.2d 1069, 1070 (Tex. Civ. App.-Waco 1935, no writ):

> It is a well-established rule that in all matters pertaining to the administration of school laws involving questions of fact as distinguished from pure questions of law resort must first be had to the school authorities and the method of appeal there provided for exhausted before the courts will entertain jurisdiction of a complaint with reference to such matters.

This analysis was reaffirmed by the Supreme Court when it designated as writ refused the case of *McIntyre v. Hoblinski*, 333 S.W.2d 697, 698 (Tex. Civ. App.-Waco 1960, writ refused). This language was further affirmed in *Cook v. Neill*, 163 Tex. 49, 58-60, 352 S.W.2d 258, 264-265 (Tex. 1961) with qualifications that are not applicable to the present case. The Court in *Cook* further held:

> It is well settled that once a matter in controversy is submitted to school authorities for decision on appeal the course of appeal must be exhausted and completed before resort can be had to the courts for relief.

Id. at 62, 267. In the case of *Texas Education Agency v. Cypress-Fairbanks Indep. Sch. Dist.*, 830 S.W.2d 88, 90 (Tex. 1992), the Supreme Court held:

As a rule, a party to an administrative proceeding is not entitled to judicial review until the party has pursued correction through the prescribed administrative process.

Case 5:18-cv-00269-FB-HJB   Document 1-2   Filed 03/22/18   Page 66 of 178

OTIS E. CARTER v. MILFORD INDEPENDENT SCHOOL..., 2017 WL 3923942...

A failure to exhaust administrative remedies before a school board is fatal to the claims of one who brings an appeal to the Commissioner.

Board Hearing

The decision maker in a contract case heard under Texas Education Code chapter 21, subchapter F is the school board. An independent hearing examiner conducts the evidentiary hearing and drafts a recommendation. TEX. EDUC. CODE § 21.257. But it is the school board, or board subcommittee, that makes the decision in the case. TEX. EDUC. CODE § 21.259. An independent hearing examiner cannot terminate a teaching contract. Only a school board can terminate a teaching contract. The role of the school board is key. The Commissioner has held:

**\*4** The Supreme Court of Texas *in O'Neal v. Ector County Independent School District*, 251 S.W.3d 50, 51-52 (Tex. 2008) sets out the standards for when exhaustion is required:

If an agency has exclusive jurisdiction to resolve a dispute, a party must first exhaust administrative remedies before a trial court has subject matter jurisdiction. In *re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 624-25 (Tex.2007). O'Neal does not dispute that the Board and Commissioner have exclusive jurisdiction of this dispute, and concedes she must exhaust her administrative remedies. See TEX. EDUC.CODE §§ 21.251-.260, 21.301-\*52 .307 (providing for hearings and appeal to Commissioner if term contract is terminated). Until exhaustion occurs, a trial court generally must dismiss related litigation without prejudice. *Subaru of Am., Inc. v. David McDavid Nissan*, Inc., 84 S.W.3d 212, 227 (Tex.2002); *Tex. Educ. Agency v. Cypress-Fairbanks I.S.D.*, 830 S.W.2d 88, 90 (Tex. 1992).

A school board has exclusive jurisdiction over a proposed termination of a term contract as it is the only body that can decide the case in the first instance. TEX. EDUC. CODE § 21.211(a). Because a school board has exclusive jurisdiction over cases involving the proposed termination of a term contract, and oral argument is an administrative remedy afforded to a teacher in such a case, a teacher is required to exhaust administrative remedies by making the legal arguments that a teacher wishes to rely upon during oral argument before the school board.

*Gonzalez v. Brownsville Independent School District,* Docket No. 007-R2-1009 (Comm'r Educ. 2009). In a case with marked similarities to the present case, it has been held that one cannot fail to make arguments before a school board and then makes such arguments before the Commissioner:

> To allow a teacher to lie behind the log and not present her case until the matter reaches the state agency, without good cause, would make a mockery of the local board hearing and would transfer the real decision-making to the Commissioner at the state level. This runs afoul of the statute's delegation of teacher employment decisions to local school boards. Former section 21.203 explicitly provides that the board of trustees of each school district may choose not to renew any teacher's contract, shall establish policies which establish reasons for nonrenewal, and shall establish procedures for receiving recommendations from its school administrators regarding the nonrenewal of teaching contracts. *See* 1981 Tex. Gen. Laws 2847 (Tex. Educ. Code Ann. § 21.203, since repealed).

*Gilder v. Meno*, 926 S.W.2d 357, 362, 1996 Tex. App. LEXIS 2574, \*17 (Tex. App.--Austin 1996, writ denied). The doctrine of exhaustion of administrative remedies protects local control of education matters.

If a teacher fails to make a legal argument before the school board, such argument has been waived for failing to exhaust administrative remedies.

Board Argument

**\*5** In the present case, Petitioner only made the following arguments before the school board: Petitioner contended that Findings of Fact Numbers 45, 47, 48, 49, 50, 51, 52, 55, 56, 57, 60, 62, 63, 64, 65, 66, 69, 70, 75, 76, 77, 78, 79, and 81 are not supported by substantial evidence and that there was not a hostile work environment according to Fifth Circuit and Supreme Court Standards. These are the only arguments Petitioner has preserved by exhausting administrative remedies. Petitioner presented no argument to the school board concerning procedural irregularities.

Good Cause

Petitioner contends before the Commissioner that a board member should have been recused, that subpoenas for the depositions of all board members should have been ordered so that information could be obtained concerning possible disparate treatment of other teachers, that an explanation of how a violation of policy was evaluated should have been included, and that contract action was taken against Petitioner because of his race. Petitioner lacked good cause to fail to make these arguments before the school board. Nothing prevented Petitioner from making the arguments before the school board that he is now making before the Commissioner. Petitioner could have made these arguments before the school board. By not making these arguments before the school board, Petitioner was lying behind the log and attempting to transfer the real decision making power in this case to the Commissioner.

Assuming Exhaustion

Even if Petitioner had exhausted administrative remedies as to the allegations of procedural irregularities, he still would not prevail.

Recusal

Petitioner made a motion to the Independent Hearing Examiner to recuse a board member. Petitioner contended that a board member should have been recused because the board member, who also serves as the Chief of Police of the city where the events took place, took part in the investigation of the claims against Petitioner. The motion was denied and Petitioner contends that this is a procedural irregularity. However, nowhere is an independent hearing examiner given the authority to determine whether an elected official can participate in a chapter 21, subchapter F hearing. Even if Petitioner had exhausted administrative remedies by informing the school board of the Independent Hearing Examiner's failure to grant the motion to recuse the board member, there is no error in the Independent Hearing Examiner's denial of the motion.

Depositions

Petitioner made a motion to take the depositions of all of the board members to determine if the superintendent had informed them that an administrator had received a reprimand from the State Board of Education concerning an inappropriate relationship with a student while the administrator was employed at another school district. Such depositions would be apex depositions. *Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 1995 Tex. LEXIS 119, 38 Tex. Sup. J. 986 (Tex. 1995). Petitioner has not made the showing required for an apex deposition. Further, Petitioner is seeking discovery of administrative decision makers. Such discovery is not permitted under the Morgan Doctrine without a preliminary showing of bad acts

Case 5:18-cv-00269-FB-HJB   Document 1-2   Filed 03/22/18   Page 68 of 178

OTIS E. CARTER v. MILFORD INDEPENDENT SCHOOL..., 2017 WL 3923942...

by the administrators in question. Discovery and Administrative Decisionmakers: The Morgan Doctrine Under Federal and Texas Law, 3 Tex. Tech J. Tex. Admin. L. 61. Petitioner has not made such a showing. Further, if school board members testified in the case, they likely would have to recuse themselves. Even if only a few board members had to testify and, hence, recuse themselves, this would create a due process issue:

> *6 Voluntary non-participation of the two members who appeared as witnesses did not cure the unfairness, but contributed to it because the number of members remaining to deliberate on the decision was reduced.

*Rogers v. Texas Optometry Board*, 609 S.W.2d 248, 250, 1980 Tex. App. LEXIS 3847, *7 (Tex. Civ. App.-- Dallas 1980, no writ). Even if Petitioner had exhausted administrative remedies as to the denial of the depositions, no error is shown.

Explanation

Petitioner points out that the three teachers who accused him of making inappropriate comments violated Respondent's policy that directs employees to immediately report such actions. Petitioner contends that Respondent was required to specify how it weighed this violation of its policy. However, there is no such requirement. The failure to timely report along with a whole host of factors is relevant to issue of the credibility of the teachers in question. A board of trustees is not required to specify how all the factors or one of the factors influenced their credibility determination. Even if Petitioner had exhausted administrative remedies as to the claim about a missing explanation, no error is shown.

Race

Petitioner contends that two white individuals were not terminated when accusations of improper relationships were brought against them. However, the two instances are not very similar to allegations that Petitioner's contract was terminated for. There is just a bare bones description of the other allegations. Even if Petitioner had exhausted administrative remedies as to the race claim, no error is shown.

However, a statement by the Independent Hearing Examiner in the case is concerning. The Independent Hearing Examiner sustained an objection to testimony about race and indicated that he lacked jurisdiction over such issues and that such issues can be raised in another forum. While it is true that an independent hearing examiner who conducts a hearing under Texas Education Code chapter 21, subchapter F, is not hearing a case under 42 USC § 1983 or the Texas Human Rights Act and that such claims can be brought in another forum, the issue of racial discrimination can be properly raised in a Texas Education Code chapter 21, subchapter F case. The same action done by both a black man and a white man cannot constitute good cause to terminate the contract of the black man and not constitute good cause to terminate the contract of the white man.

Hostile Work Environment

Petitioner contends that the record does not show that his actions created a hostile work environment as that term has been construed in the context of civil rights law. Whether, Petitioner's actions created a hostile work environment as that term is used in federal law need not be considered today. Respondent alleges that Petitioner created a hostile work environment in violation of its own policy, not in violation of federal law. A school board authoritatively interprets its own policy. *Davis v. Montgomery Indep. Sch. Dist.*, 34 S.W. 3d 559, 565 (Tex. 2000). It is not unreasonable to interpret Respondent's policy so as to find that Petitioner's conduct created a hostile work environment.

Case 5:18-cv-00269-FB-HJB   Document 1-2   Filed 03/22/18   Page 69 of 178

OTIS E. CARTER v. MILFORD INDEPENDENT SCHOOL..., 2017 WL 3923942...

Substantial Evidence

**\*7** Petitioner does a good job of pointing out the weaknesses in Respondent's case. There is conflicting evidence in this case. However, good cause is not a high standard. The substantial evidence standard has been described as:

> In *City of League City v. Texas Water Commission,* 111 S.W.2d 802 (Tex. App.--Austin 1989, no writ), we summarized the substantial evidence test: (1) the findings, inferences, conclusions, and decisions of an agency are presumed to be supported by substantial evidence, and the burden is on the party contesting the order to prove otherwise; (2) in applying the test, the reviewing court is prohibited from substituting its judgment for that of the agency as to the weight of the evidence of questions committed to agency discretion; (3) substantial evidence is more than a scintilla, but the evidence in the record may preponderate against the decision of the agency and nonetheless amount to substantial evidence; (4) the tree test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency; and (5) the agency's action will be sustained if the evidence is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action. *Id.* at 805 (citing *Texas Health Facilities Comm'n v. Charter Medical-Dallas Inc.*, 665 S.W.2d 446. 452-53 (Tex. 1984)).

*City of Alvin v. Public Utility Comm'n of Texas,* 876 S.W.2d 346. 355 (Tex. App.--Austin 1993, judgment set aside in accordance with settlement agreement, 893 S.W.2d 450). The substantial evidence standard is ultimately a reasonableness standard. A reasonable finder of fact could have determined that Petitioner did say those things the three teachers accused him of saying.

Conclusion

The Petition for Review should be denied in part and dismissed in part.

### Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner has jurisdiction over this case under Texas Education Code section 21.301 only as to the claims that certain findings of fact are not supported by substantial evidence and the claim that Respondent's policy prohibition on creating a hostile work environment must be interpreted in accordance with federal civil rights law.

2. If a party fails to point out an error in the recommendation of an independent hearing examiner at the hearing held under Texas Education Code section 21.258, the party has failed to exhaust administrative remedies and the Commissioner lacks jurisdiction over such a claim under Texas Education Code chapter 21, subchapter G.

3. Because Petitioner did not raise any claims of procedural irregularities or claims of racial discrimination before the school board during the hearing held under Texas Education Code section 21.258, the Commissioner lacks jurisdiction over those claims.

Case 5:18-cv-00269-FB-HJB    Document 1-2    Filed 03/22/18    Page 70 of 178

OTIS E. CARTER v. MILFORD INDEPENDENT SCHOOL..., 2017 WL 3923942...

**\*8**  4. The findings of fact drafted by the Independent Hearing Examiner and adopted by the Board of Trustees are supported by substantial evidence.

5. A school board authoritatively interprets its own policy.

6. Respondent did not have to interpret the phrase "hostile work environment," which is found in its policy in the same way as the phrase is interpreted in federal civil rights law.

7. An independent hearing examiner lacks the authority to order a school board member to recuse himself from a teacher contract case. Tex. Educ. Code chapter 21, subchapter F.

8. The Petition for Review should be denied in part and dismissed in part.

<u>ORDER</u>

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as the Commissioner of Education, it is hereby

ORDERED that the Petitioner's appeal, be, and is hereby dismissed in part and denied in part.

SIGNED AND ISSUED this _____ day of May, 2017.

_____

MIKE MORATH
COMMISSIONER OF EDUCATION

*Signed and issued on May 23, 2017 by Mike Morath, Commissioner of Education*

2017 WL 3923942 (TEXEDAG)

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 4631893 (TEXEDAG)

Texas Education Agency

The Commissioner of Education

The State of Texas

RONDERRICK JOHNSON

v.

DALLAS INDEPENDENT SCHOOL DISTRICT

DOCKET NO.

**029**
-
**R2**
-
**06**
-
**2017**

August 10, 2017

**<u>DECISION OF THE COMMISSIONER</u>**

**<u>Statement of the Case</u>**

**\*1**  Petitioner, RonDerrick Johnson, complains of actions and decisions of Respondent, Dallas Independent School District, to terminate his term contract. Merle Dover is the Administrative Law Judge appointed by the Commissioner of Education to preside over this cause. Petitioner is *pro se*. Respondent is represented by Carlos Lopez and Van Pham, Attorneys at Law, Dallas, Texas.

The primary issues in this case are whether Respondent had reasonable suspicion sufficient to direct Petitioner to submit to an alcohol/drug test and whether Petitioner's refusal to submit to the test constitutes good cause for his termination. The Independent Hearing Examiner's Recommendation concluded that Respondent proved by a preponderance of the evidence that Petitioner's refusal to submit to the test was a violation of district policy DHE (Local) and violation of this policy provides good cause for Petitioner's termination. Despite the undisputed evidence that Petitioner was an exemplary Assistant Principal in all other respects, the Commissioner finds substantial evidence to support termination.

**<u>Findings of Fact</u>**

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence:

1. The Findings of Fact drafted by the independent hearing examiner and adopted by the Board of Trustees are adopted as if set out in full.

2. Petitioner filed his appeal with the Commissioner on June 21, 2017, but failed to serve Respondent at the same time.

# EXHIBIT D

3. Respondent timely filed its Plea to the Jurisdiction, Motion to Dismiss, and Original Answer on July 19, 2017.

4. Petitioner contends that his termination was not justified because the directive to submit to an alcohol/drug test was not based on reasonable suspicion and was an unconstitutional, unreasonable search.

Discussion

Reasonable Suspicion

Petitioner contends that his principal lacked reasonable suspicion to direct him to take an alcohol/drug test. Respondent's policy DHE (Local) allows principals to require that an employee submit to an alcohol/drug test based upon "reasonable suspicion." DHE (Local) states that reasonable suspicion includes "articulable observations of appearance, behavior, speech, or body odors."

On November 29, 2016, Petitioner arrived late to work at Skyline High School and reported to the Principal that he was experiencing difficulties with his peripheral vision. The undisputed testimony at hearing established that Petitioner exhibited uncharacteristic behavior including slurred speech, disorientation, and glassy eyes. The Principal received reports from staff about Petitioner's uncharacteristic behavior and concerns about his health. The Principal directed Petitioner to report to the nurse. The nurse reported to the Principal that Petitioner had elevated blood pressure and that he denied having taken any medication. After consultation with her supervisor and Human Capital Management, the Principal determined that there was reasonable suspicion to direct Petitioner to take an alcohol/drug test. Petitioner initially agreed to the test, but when the technician arrived to administer the test, he changed his mind and refused. The Principal and her supervisor explained that the consequence for refusing to take the test was automatic termination, but Petitioner persisted in his refusal.

Good cause for termination

*2  Good cause for termination is defined as "the employee's failure to perform duties within the scope of employment that a person of ordinary prudence would have done under the same or similar circumstances. An employee's act constitutes good cause for discharge if it is inconsistent with the continued existence of the employer-employee relationship." [1]

District Policy DHE (Local) requires, without exception, that an employee who refuses to submit to an alcohol/drug test shall be recommended for termination. This policy is substantially similar to a Houston ISD alcohol testing policy. The Commissioner has found that the Houston policy is not unconstitutional on its face or as applied in that case. [2] Accordingly, Respondent's policy requiring an employee to submit to an alcohol/drug test based on reasonable suspicion was not an unreasonable search or invasion of privacy. Based on Petitioner's refusal to submit to the test, Dallas ISD had good cause to terminate Petitioner.

Claims of discrimination, disability discrimination, and retaliation

Respondent contends that the Commissioner lacks jurisdiction over any claims of discrimination, disability discrimination, and retaliation asserted by Petitioner. In fact, Respondent moved to exclude, and the Independent Hearing Examiner granted, [3] presentation of evidence at the hearing of "[a]ny and all references to alleged disability discrimination, harassment, and/or retaliation against Mr. Johnson, as the

Commissioner lacks jurisdiction over such claims."[4] However, this is not correct. A chapter 21 appeal does not limit the Commissioner's jurisdiction to "violations of the school laws of this state." That limiting language applies to appeals brought pursuant to Texas Education Code section 7.057. But even in a section 7.057 case, the Texas Supreme Court has held that the Commissioner may have jurisdiction over state and federal claims, "if the constitutional claims are ancillary to and supportive of a complaint about the board's handling of an employment contract or application of school law, then the entire action should be amenable to administrative appeal."[5]

In a recent case, the Commissioner found that "[w]hile it is true that an independent hearing examiner who conducts a hearing under Texas Education Code chapter 21, subchapter F, is not hearing a case under 42 USC § 1983 or the Texas Human Rights Act and that such claims can be brought in another forum, the issue of racial discrimination can be properly raised in a Texas Education Code chapter 21, subchapter F case."[6] For example, this would be true in a case where the petitioner alleged that a person of another race engaged in the identical misconduct and was not terminated.

<u>**Conclusions of Law**</u>

**\*3** After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as the Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner has jurisdiction over this case under Texas Education Code section 21.301.

2. Petitioner's failure to properly serve Respondent with his Petition for Review was harmless error.

3. While the Commissioner could have jurisdiction over discrimination, disability discrimination, and retaliation claims, Petitioner did not plead these claims with sufficient detail (or brief these claims) to establish jurisdiction in this case.[7]

4. In all other respects, Respondent's Plea to the Jurisdiction and Motion to Dismiss are denied.

5. The Conclusions of Law drafted by the independent hearing examiner and adopted by the Board of Trustees are adopted as if set out in full.

6. Respondent's policy DHE (Local) is neither unconstitutional on its face or as applied to Petitioner.

7. Respondent had reasonable suspicion to direct Petitioner to take an alcohol/drug test.

8. Petitioner's appeal should be denied.

<u>**ORDER**</u>

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be and is hereby DENIED.

SIGNED AND ISSUED this _____ day of _____ 2017.

_____

MIKE MORATH
COMMISSIONER OF EDUCATION

*Signed and issued on August 10, 2017 by Mike Morath, Commissioner of Education*


Footnotes

| | |
|---|---|
| 1 | *Lee-Wright, Inc. v. Hall,* 890 S.W.2d 572, 580 (Tex. App.--Houston [1st Dist.] 1992, no writ). |
| 2 | *Hughes v. Houston Ind. Sch. Dist.,* Docket No. 066-R2-302 (Comm'r Educ. 2002). |
| 3 | Petitioner did not object on the record. LR 18, Hearing Transcript at 9. |
| 4 | Respondent's Brief on the Merits at 6. The Independent Hearing Examiner also granted Respondent's motion to exclude evidence related to allegations of medical malpractice or violation of HIPAA for lack of jurisdiction. *Id.* |
| 5 | *Clint Indep. Sch. Dist. v. Marquez,* 487 S.W.3d 538, 552 (Tex. 2016). |
| 6 | *Carter v. Milford Indep. Sch. Dist.,* Docket No. 020-R2-04-2017 (Comm'r Educ. 2017). |
| 7 | Pursuant to 19 Tex. Admin. Code § 157.1051, the petitioner need not plead all evidence relied on. However, the issues need to be fleshed out in a brief and supported by record references. Although the Petition for Review was 17 pages, it did not contain specific cites to the record, and Petitioner failed to file an Initial Brief. |

2017 WL 4631893 (TEXEDAG)

**End of Document**                                          © 2017 Thomson Reuters. No claim to original U.S. Government Works.

CAUSE NO. 2017-CI-09876

| | | |
|---|---|---|
| **CAROLINE ROSS,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | **OF** |
| | § | |
| **v.** | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| **JUDSON INDEPENDENT** | § | **73rd JUDICIAL DISTRICT** |
| **SCHOOL DISTRICT,** | § | |
| *Defendant* | § | **TRIAL BY JURY** |

### ORDER GRANTING DEFENDANT
### JUDSON ISD'S PLEA TO THE JURISDICTION

On this day came to be heard DEFENDANT JUDSON INDEPENDENT SCHOOL DISTRICT's (hereinafter, "JISD") Plea to the Jurisdiction in the above-styled and numbered cause. The Court, having reviewed and considered the Plea to the Jurisdiction, the arguments of counsel, and having reviewed the items on file herein, is of the opinion that said Plea should be **GRANTED**. Therefore, it is hereby

ORDERED that JISD's Plea to the Jurisdiction be and the same is hereby **GRANTED**. It is further

ORDERED, ADJUDGED and DECREED that Plaintiff take nothing against Defendant JISD, and that Plaintiff's claims be and the same are hereby **DISMISSED WITH PREJUDICE** against Defendant JISD and that all relief requested by Plaintiff be and the same are hereby **DENIED**.

IT IS SO ORDERED on this the _____ day of January 2018.

_____

JUDGE PRESIDING

FILED
12/28/2017 11:11 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Stephanie Holman

CAUSE NO. 2017-CI-09876

| | | |
|---|---|---|
| **CAROLINE ROSS,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff* | § | **OF** |
| | § | |
| **v.** | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| **JUDSON INDEPENDENT** | § | **73rd JUDICIAL DISTRICT** |
| **SCHOOL DISTRICT,** | § | |
| *Defendant* | § | **TRIAL BY JURY** |

## ORDER SETTING HEARING

It is hereby ORDERED that this Honorable Court has set Defendant, **JUDSON**

**INDEPENDENT SCHOOL DISTRICT'S PLEA TO THE JURISDICTION** for hearing on

PRESIDING

the 19th day of January 2018, beginning at 8:30 a.m. in the ~~73rd~~ Judicial District Court of

Bexar County, Texas RM 109

SIGNED on this _____ day of **12/28/2017** , 2018.

KAREN H. POZZA

JUDGE, 407TH DISTRICT COURT

JUDGE PRESIDING


cc:    Court's file

D. Craig Wood, Walsh Gallegos Treviño Russo & Kyle P.C., 100 NE Loop 410, Suite 900, San Antonio, Texas 78216, fax: (210) 979-7024 or e-mail: cwood@wabsa.com

Laurence "Larry" Watts, Watts & Company, Lawyers, Ltd., P.O. Box 2214, Missouri City, Texas 77459, fax: (877) 797-4055 or e-mail: wattstrial@gmail.com

FILED
1/9/2018 9:47 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Anthony Barrow

CASE NO. 2017-CI-09876

| | | |
|---|---|---|
| CAROLINE ROSS, | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | OF |
| | § | |
| v. | § | |
| | § | BEXAR COUNTY, TEXAS |
| JUDSON INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| *Defendant.* | § | 73rd JUDICIAL DISTRICT |

---

**PLAINTIFF CAROLINE ROSS' MOTION FOR CONTINUANCE OF DEFENDANT JUDSON INDEPENDENT SCHOOL DISTRICT'S PLEA TO THE JURISDICTION HEARING**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PLAINTIFF CAROLINE ROSS, ("Ross" or "Plaintiff") and files this Motion for Continuance, asking for a continuance of the January 19, 2018 hearing on Defendant Judson Independent School District's ("JISD or "Defendant") Plea to the Jurisdiction, and would respectfully show the court as follows:

## INTRODUCTION AND BACKGROUND

1. Ross sued JISD under Chapter 21 of the Texas Labor Code, alleging violations of race, age and gender discrimination.

2. JISD filed an answer on July 28, 2017.

3. Ross served discovery on JISD on August 8, 2017, and JISD timely responded.

4. On December 28, 2017, JISD filed its Plea to the Jurisdiction, and unilaterally set the motion for hearing on January 19, 2017.

5. Counsel for Ross immediately informed Defendant that the hearing conflicted with a scheduled deposition and due to scheduled matters on the calendar, as well as the possibility of

1

coronary surgery[1] in January, Ross's counsel would not be available until February.  *See* Exhibit A – Email from Larry Watts; *see also* Exhibit B – Email discussing hearing dates.

6.      Though initially open to moving the hearing date, Defendant's counsel informed Plaintiff on January 5, 2018 that due to statutory appellate deadlines, Defendant could not agree to move the hearing date to an available time in February.[2]  *Id.*


## ARGUMENT

7.      A trial court has broad discretion to deny or grant a motion for continuance when a party's attorney is unavailable for a hearing or trial if the motion shows proof of good cause. Tex. R. Civ. P. 253; *see also Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986).

8.      Good cause is established if the party shows 1) the reasons for the attorney's unavailability, 2) show that the absence of the attorney is not the result of the party's own fault or negligence, and 3) if another attorney is available, explain why that attorney cannot handle that matter.  *Id.*

9.      The trial court abuses its discretion in granting or denying a motion for continuance if it acts in an arbitrary and unreasonable manner without reference to any guiding rules or principles.  *Landers v. State Farm Lloyds*, 257 S.W.3d 740, 747 (Tex.App.-Houston [1st Dist.] 2008, no pet.).

10.      In a motion for continuance, a movant is required to state the *specific facts* that support a motion for continuance. *See Blake v. Lewis*, 886 S.W.2d 404, 409 (Tex. App.—Houston [1st Dist.] 1994, no writ) [emphasis added].

11.      Due to the potential of the plea to the jurisdiction to dismiss Ross' claims, and the current

---

[1] Because Plaintiff's counsel has responded favorably to a medication change and is no longer in severe atrial fibrillation, Plaintiff's counsel is no longer required to schedule coronary surgery.

[2] Defendant's counsel represented to Plaintiff's counsel that the reason for the inability to agree to move the hearing date to a date in February is due to Tex. Civ. Prac. Rem. Code §51.014(c) which does not allow an automatic stay in an interlocutory appeal if the plea to the jurisdiction is not file and requested for submission or hearing before the 180th day after Defendant has filed an answer.

personal and professional obligations of counsel, Plaintiff is seeking a continuance to have time to adequately research and respond to the issues raised and appear at the hearing

12.     Further, a continuance is requested due to Plaintiff's Counsel's extensive scheduling obligations, to wit:

    a.  Federal trial in *Covington v. Covington*, Cause No. 4:13-cv-03300, in the U.S. District Court for the Southern District of Texas, Honorable Melinda Harmon, presiding; currently set for two-week docket beginning January 22, 2018;

    b.  Trial in *State v. Castille*, Cause No. 311675, in Jefferson County Court of Law No. 3, currently set for two-week docket beginning January 29, 2018;

    c.  Trial in *Polk v. Jefferson County*, Cause No. 1:15-cv- 00153-MAC, in the U.S. District Court for the Eastern District, Honorable Marcia Crone, presiding, currently set for February 2, 2018.[3]

13.     In addition, Plaintiff's counsel is out of the office from February 10-15, 2018 for a previously scheduled family matter.

14.     Due to the fact Plaintiff's counsel is unavailable for the hearing, and there is no other attorney available, Plaintiff seeks this continuance.[4]

15.     Requesting a continuance, is not for undue delay, but to ensure that justice in this matter is in fact done, and that Plaintiff's counsel can appear to properly represent his client and adequately and effectively respond to all of the issues raised in JISD's Plea to the Jurisdiction.

16.     Counsel conferred with opposing counsel, by email on January 8, 2018, and counsel stated

---

[3] This trial is likely to be continued due to the *Castille* trial, however, as of the filing date of this motion a continuance has not been granted.

[4] Plaintiff's counsel was asked by Defendant whether the associate attorney was available to appear at the hearing instead of the Attorney Larry Watts.  However, due to the associate attorney's previously scheduled vacation from January 18-21, 2018, the associate counsel is also unavailable to appear at the noticed hearing.

3

JISD was opposed to this motion.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Caroline Ross prays that the Court grant this Motion for Continuance of Defendant's Plea to the Jurisdiction hearing until a date no earlier than February 19, 2018.

Respectfully submitted,

WATTS & COMPANY, LAWYERS, Ltd.

/s/ Larry Watts
Laurence "Larry" Watts
Texas Bar No. 20981000
P.O. Box 2214
Missouri City, Texas 77459
Telephone: (281) 431-1500
Facsimile: (877) 797-4055
E-mail: wattstrial@gmail.com

*Attorney for Plaintiff*

<u>**VERIFICATION**</u>

**STATE OF TEXAS**                    §
                                     §
**COUNTY OF FORT BEND**              §

I, Larry Watts, hereby verify that the attachments to Plaintiff Caroline Ross' Motion for

Continuance are true and correct copies of the documents they purport to be; specifically, the emails

are true and correct copies of the emails that were sent and received from my firm's email account,

attached hereto as Exhibit A and Exhibit B.

I verify all facts stated in the foregoing motion that are not contained in the record are true

and correct based on my personal knowledge.

I declare under penalty of perjury that the forgoing is true and correct.


January 9, 2018
**Date**                                   Laurence ("Larry") Watts


5

## **CERTIFICATE OF SERVICE**

I, Larry Watts certify that a true and correct copy of this document has been served on

opposing counsel by electronic filing with the clerk of the court, on this the 9th day of January, 2018.

D. Craig Wood
cwood@wabsa.com
Katie E. Payne
kpayne@wabsa.com
Walsh Gallegos Trevino Russo & Kyle, P.C.
100 NE Loop 410, Suite 900
San Antonio, TX 78216
Telephone: (210) 979-6633
Facsimile: (210) 979-7024


/s/ Larry Watts
Laurence "Larry" Watts

 Gmail

**Larry Watts <wattstrial@gmail.com>**

---

## Re: Judson ISD/Ross, Caroline
1 message

---

**Larry Watts <wattstrial@gmail.com>**                              Thu, Dec 28, 2017 at 3:36 PM
To: Darlene Carlin <dcarlin@wabsa.com>

You didn't consult on the hearing date, Lawyers Creed seems to deal with that issue. Otherwise, I am unavailable in January. Please withdraw the ssetting notice and suggesst thrre dates in February when you propose the hearing. I am anticipating coronary surgery in January.

On Thu, Dec 28, 2017 at 12:06 PM, Darlene Carlin <dcarlin@wabsa.com> wrote:

> Hello, Mr. Watts,
>
> Attached, and e-filed with the Court today are the following documents:
>
> 1.   Defendant, Judson ISD's Plea to the Jurisdiction;
>
> 2.   Proposed Order granting Defendant's Plea to the Jurisdiction; and
>
> 3.   Order Setting Hearing for Plea to the Jurisdiction **for January 19, 2018 @ 8:30 a.m.**
>
> Should you have any questions, please feel free to contact our office.
>
> Sincerely,
>
>  WG | WALSH GALLEGOS
>          TREVIÑO RUSSO & KYLE P.C.
>
> **DARLENE CARLIN**
>
> LEGAL SECRETARY
> 100 N.E. Loop 410 #900, San Antonio, Texas 78216
>
> T: 210.979.6633 | F: 210.979.7024 | www.WalshGallegos.com

# Exhibit A

CONFIDENTIALITY NOTICE: This email & attached documents may contain confidential information. All information is intended only for the use of the named recipient. If you are not the named recipient, you are not authorized to read, disclose, copy, distribute or take any action in reliance on the information and any action other than immediate delivery to the named recipient is strictly prohibited. If you have received this email in error, do not read the information and

please immediately notify sender by telephone to arrange for a return of the original documents. If you are the named recipient you are not authorized to reveal any of this information to any other unauthorized person. If you did not receive all pages listed or if pages are not legible, please immediately notify sender by phone.

--
Larry Watts

Watts & Company Lawyers, Ltd.
Civil Rights Lawyers
P.O. Box 2214
Missouri City, Texas  77459
Telephone:   346-816-7951 or 281-431-1500 (mobile)
Fax: 877-797-4055
Privileged, Confidential or Attorney Work Product Information may be contained in, or attached to this message.  If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy, forward, disclose, deliver or otherwise use this message or any part of it in any form whatsoever.  If you receive the message in error, you should destroy this message after notifying Larry Watts immediately by replying to this message or contacting me at 346-816-7951 or 281-431-1500 (mobile).

Gmail - RE: Judson ISD/Ross, Caroline

 Gmail

**Larry Watts <wattstrial@gmail.com>**

## RE: Judson ISD/Ross, Caroline
2 messages

**Katie Payne** <kpayne@wabsa.com>                                                 Fri, Jan 5, 2018 at 4:28 PM
To: Larry Watts <wattstrial@gmail.com>, Darlene Carlin <dcarlin@wabsa.com>
Cc: Craig Wood <cwood@wabsa.com>, Andree Macias <amacias@wabsa.com>

Nastasha,

Unfortunately, due to statutory appellate deadlines we will not be able to agree to move the hearing into February. We could agree to move it to an earlier date in January, but I understand that does not work for you all. Due to the conflicts your office has throughout the month of January and most of February, it seems likely that the Court would grant a motion to continue the hearing, should you choose to request it.

Thanks,

Katie

**From:** Larry Watts [mailto:wattstrial@gmail.com]
**Sent:** Thursday, January 4, 2018 12:17 PM
**To:** Darlene Carlin <dcarlin@wabsa.com>
**Cc:** Craig Wood <cwood@wabsa.com>; Katie Payne <kpayne@wabsa.com>; Andree Macias <amacias@wabsa.com>
**Subject:** Re: Judson ISD/Ross, Caroline

Darline,

As I mentioned yesterday on our call, the only dates I presently have available begin Feb 19th - Feb 23rd; and Feb 26th - Mar 2nd.

We are scheduled for trial docket starting Jan 22nd in a federal matter, and then Jan 29th in a state matter which has taken up dates for the latter part of January and beginning of February.  At this time neither of those trial dates have been continued and there is no indication that they will be.  If that changes within the next few days, I will of course let you know.

I may also have some dates the week of Feb. 12th available **\*however\***, there is another federal matter set for a two-week trial docket that week that I anticipate will be moved.  I have contacted the court clerk and opposing counsel this morning and have yet to hear back.  As soon as I do I will notify you promptly.  I appreciate your understanding and professional courtesies.

Regards,

# Exhibit B

~Nastasha


Nastasha Anderson

Associate Attorney




On Wed, Jan 3, 2018 at 11:17 AM, Darlene Carlin <dcarlin@wabsa.com> wrote:

Nastasha,


We have been trying to reach you to obtain dates to re-schedule our Plea to the Jurisdiction hearing from Jan. 19th.  We've been told that Mr. Watts will be out the month of January due to having coronary surgery the month of January.


We look forward to hearing from you soon.


Thank you!




**From:** Katie Payne
**Sent:** Friday, December 29, 2017 10:43 AM
**To:** 'Larry Watts' <wattstrial@gmail.com>; Darlene Carlin <dcarlin@wabsa.com>
**Cc:** Craig Wood <cwood@wabsa.com>; Andree Macias <amacias@wabsa.com>; Valerie Durocher <vdurocher@wabsa.com>
**Subject:** RE: Judson ISD/Ross, Caroline


Natasha,

We will get back to you early next week with some potential dates to re-set the hearing.

Happy New Year,

Katie


**From:** Larry Watts [mailto:wattstrial@gmail.com]
**Sent:** Thursday, December 28, 2017 3:30 PM
**To:** Darlene Carlin <dcarlin@wabsa.com>
**Cc:** Craig Wood <cwood@wabsa.com>; Katie Payne <kpayne@wabsa.com>; Andree Macias

<amacias@wabsa.com>; Valerie Durocher <vdurocher@wabsa.com>
**Subject:** Re: Judson ISD/Ross, Caroline

Unfortunately the date for the hearing does not work.  There is already a deposition scheduled for January 19th, as well as a docket call  later that afternoon.

Will you agree to move this hearing date?  Please let us know.  Thanks.

~Nastasha

Nastasha Anderson

Associate Attorney

On Thu, Dec 28, 2017 at 12:06 PM, Darlene Carlin <dcarlin@wabsa.com> wrote:

Hello, Mr. Watts,

Attached, and e-filed with the Court today are the following documents:

1.    Defendant, Judson ISD's Plea to the Jurisdiction;

2.    Proposed Order granting Defendant's Plea to the Jurisdiction; and

3.    Order Setting Hearing for Plea to the Jurisdiction **for January 19, 2018 @ 8:30 a.m.**

Should you have any questions, please feel free to contact our office.

Sincerely,

**WG** | WALSH GALLEGOS
TREVIÑO RUSSO & KYLE P.C.

DARLENE CARLIN

LEGAL SECRETARY
100 N.E. Loop 410 #900, San Antonio, Texas 78216

T: 210.979.6633 | F: 210.979.7024 | www.WalshGallegos.com

CONFIDENTIALITY NOTICE: This email & attached documents may contain confidential information. All information is intended only for the use of the named recipient. If you are not the named recipient, you are not authorized to read, disclose, copy, distribute or take any action in reliance on the information and any action other than immediate delivery to the named recipient is strictly prohibited. If you have received this email in error, do not read the information and please immediately notify sender by telephone to arrange for a return of the original documents. If you are the named recipient you are not authorized to reveal any of this information to any other unauthorized person. If you did not receive all pages listed or if pages are not legible, please immediately notify sender by phone.

--

Larry Watts

Watts & Company Lawyers, Ltd.
Civil Rights Lawyers
P.O. Box 2214
Missouri City, Texas 77459
Telephone: 346-816-7951 or 281-431-1500 (mobile)
Fax: 877-797-4055
Privileged, Confidential or Attorney Work Product Information may be contained in, or attached to this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy, forward, disclose, deliver or otherwise use this message or any part of it in any form whatsoever. If you receive the message in error, you should destroy this message after notifying Larry Watts immediately by replying to this message or contacting me at 346-816-7951 or 281-431-1500 (mobile).

--

Larry Watts

Watts & Company Lawyers, Ltd.
Civil Rights Lawyers
P.O. Box 2214
Missouri City, Texas 77459
Telephone: 346-816-7951 or 281-431-1500 (mobile)
Fax: 877-797-4055
Privileged, Confidential or Attorney Work Product Information may be contained in, or attached to this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy, forward, disclose, deliver or otherwise use this message or any part of it in any form whatsoever. If you receive the message in error, you should destroy this message after notifying Larry Watts immediately by replying to this message or contacting me at 346-816-7951 or 281-431-1500 (mobile).

---

Larry Watts <wattstrial@gmail.com>                             Mon, Jan 8, 2018 at 11:14 AM
Draft To: Katie Payne <kpayne@wabsa.com>

Katie,

I will proceed with filing a motion for continuance. Please let me know if it is opposed. Thanks.

~Nastasha
[Quoted text hidden]

**CASE NO. 2017-CI-09876**

| | | |
|---|---|---|
| CAROLINE ROSS, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | OF |
| | § | |
| v. | § | |
| | § | BEXAR COUNTY, TEXAS |
| JUDSON INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| *Defendant.* | § | 73rd JUDICIAL DISTRICT |

---

## <u>ORDER</u>

---

TO THE HONORABLE JUDGE OF SAID COURT:

On this _____ day of _____, 2018, Plaintiff Caroline Ross' Motion for Continuance of Defendant's Plea to the Jurisdiction Hearing came to be heard.  After consideration of the motion, response, and arguments of counsel, the Court is of the opinion that Plaintiff Caroline Ross' Motion for Continuance of Defendant's Plea to the Jurisdiction Hearing should be GRANTED.

It is therefore ORDERED that Caroline Ross' Motion for Continuance of Defendant's Plea to the Jurisdiction Hearing is hereby GRANTED.

SIGNED this _____ day of _____, 2018.


_____
JUDGE PRESIDING

FILED
1/12/2018 7:48 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Lisa Morales

CASE NO. 2017-CI-09876

| | | |
|---|---|---|
| CAROLINE ROSS, | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | OF |
| | § | |
| v. | § | |
| | § | BEXAR COUNTY, TEXAS |
| JUDSON INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| *Defendant.* | § | 73rd JUDICIAL DISTRICT |

---

**PLAINTIFF CAROLINE ROSS' UNOPPOSED MOTION FOR TELEPHONIC HEARING OF PLAINTIFF'S MOTION FOR CONTINUANCE OF DEFENDANT JUDSON INDEPENDENT SCHOOL DISTRICT'S PLEA TO THE JURISDICTION HEARING**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PLAINTIFF CAROLINE ROSS, ("Ross" or "Plaintiff") and files this Motion for Telephonic Hearing of the hearing on her Motion for Continuance of the January 19, 2018 hearing on Defendant Judson Independent School District's ("JISD or "Defendant") Plea to the Jurisdiction, and would respectfully show the court as follows:

1.      On December 28, 2017, JISD filed its Plea to the Jurisdiction, and unilaterally set the motion for hearing on January 19, 2018.

2.      Plaintiff's counsel informed JISD's counsel of scheduling conflicts and attempts were made to adjust the hearing date.

3.      However, due to concerns over statutory appellate deadlines, counsel for JISD informed Plaintiff's counsel that JISD could not agree to change the hearing date.

4.      Ross subsequently filed a motion for continuance, detailing the reasons that Plaintiff's counsel is unavailable for the January 19, 2018 hearing.

1

5.      Plaintiff asks that the Court allow the hearing on Plaintiff's motion for continuance be a telephonic hearing, due to the scheduling constraints of Plaintiff's counsel, whose main office is in Houston, TX.

6.      On January 12, 2018, Plaintiff contacted counsel for JISD.   Counsel stated that JISD is unopposed to this motion.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff Caroline Ross prays that the Court grant this Unopposed Motion for Telephonic Hearing of the hearing on Plaintiff's Motion for Continuance of Defendant's Plea to the Jurisdiction hearing.

Respectfully submitted,

WATTS & COMPANY, LAWYERS, Ltd.

/s/ Larry Watts
Laurence "Larry" Watts
Texas Bar No. 20981000
P.O. Box 2214
Missouri City, Texas 77459
Telephone: (281) 431-1500
Facsimile: (877) 797-4055
E-mail: wattstrial@gmail.com

*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, Larry Watts certify that a true and correct copy of this document has been served on

opposing counsel by electronic filing with the clerk of the court, on this 12ᵗʰ day of January, 2018.

D. Craig Wood
cwood@wabsa.com
Katie E. Payne
kpayne@wabsa.com
Walsh Gallegos Trevino Russo & Kyle, P.C.
100 NE Loop 410, Suite 900
San Antonio, TX 78216
Telephone: (210) 979-6633
Facsimile: (210) 979-7024

/s/ Larry Watts
Laurence "Larry" Watts

3

**CASE NO. 2017-CI-09876**

| | | |
|---|---|---|
| CAROLINE ROSS, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | OF |
| | § | |
| v. | § | |
| | § | |
| | § | BEXAR COUNTY, TEXAS |
| JUDSON INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| *Defendant.* | § | 73rd JUDICIAL DISTRICT |

---

## ORDER

---

TO THE HONORABLE JUDGE OF SAID COURT:

On this _____ day of _____, 2018, Plaintiff Caroline Ross' Motion for Telephonic Hearing of the hearing on her Motion for Continuance of the January 19, 2018 hearing on Defendant Judson Independent School District's Plea to the Jurisdiction came to be heard.  After consideration of the motion, response, and arguments of counsel, the Court is of the opinion that Plaintiff Caroline Ross' Motion for Telephonic Hearing of the hearing on her Motion for Continuance of the January 19, 2018 hearing on Defendant Judson Independent School District's Plea to the Jurisdiction should be GRANTED.

It is therefore ORDERED that Caroline Ross' Motion for Telephonic Hearing of the hearing on her Motion for Continuance of the January 19, 2018 hearing on Defendant Judson Independent School District's Plea to the Jurisdiction is hereby GRANTED.

SIGNED this _____ day of _____, 2018.

_____
JUDGE PRESIDING

FILED
1/16/2018 12:00 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Marissa Ugarte

CASE NO. 2017-CI-09876

| | | |
|---|---|---|
| CAROLINE ROSS, | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | OF |
| | § | |
| v. | § | |
| | § | BEXAR COUNTY, TEXAS |
| JUDSON INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| *Defendant.* | § | 73rd JUDICIAL DISTRICT |

---

## AMENDED NOTICE OF HEARING

---

TO THE HONORABLE JUDGE OF SAID COURT:

Please that notice that Plaintiff Caroline Ross' Motion for Continuance of the January 19, 2018

hearing on Defendant Judson Independent School District's Plea to the Jurisdiction, has been set for

January 18, 2018 at 8:30 a.m., before the Presiding Judge, Bexar County. **RM 1.09**

**Angelica I. Jimenez
Presiding Judge
408th Judicial District
Bexar County, Texas
01/16/2018**

Respectfully submitted,

WATTS & COMPANY, LAWYERS, Ltd.

/s/ Larry Watts
Laurence "Larry" Watts
Texas Bar No. 20981000
P.O. Box 2214
Missouri City, Texas 77459
Telephone: (281) 431-1500
Facsimile: (877) 797-4055
E-mail: wattstrial@gmail.com

*Attorney for Plaintiff*

1

## **CERTIFICATE OF SERVICE**

I, Larry Watts certify that a true and correct copy of this document has been served on

opposing counsel by electronic filing with the clerk of the court, on this 12ᵗʰ day of January, 2018.

D. Craig Wood
cwood@wabsa.com
Katie E. Payne
kpayne@wabsa.com
Walsh Gallegos Trevino Russo & Kyle, P.C.
100 NE Loop 410, Suite 900
San Antonio, TX 78216
Telephone: (210) 979-6633
Facsimile: (210) 979-7024


/s/ Larry Watts
Laurence "Larry" Watts

FILED
1/16/2018 12:00 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Marissa Ugarte

CASE NO. 2017-CI-09876

| | | |
|---|---|---|
| CAROLINE ROSS, | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | OF |
| | § | |
| v. | § | |
| | § | BEXAR COUNTY, TEXAS |
| JUDSON INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| *Defendant.* | § | 73rd JUDICIAL DISTRICT |

## AMENDED NOTICE OF HEARING

TO THE HONORABLE JUDGE OF SAID COURT:

Please that notice that Plaintiff Caroline Ross' Motion for Telephonic Hearing of the hearing on her Motion for Continuance of the January 19, 2018 hearing on Defendant Judson Independent School District's Plea to the Jurisdiction, has been set for January 18, 2018 at 8:30 a.m., before the Presiding Judge, Bexar County. **RM 1.09**

**Angelica I. Jimenez**
**Presiding Judge**
**408th Judicial District**
**Bexar County, Texas**
**01/16/2018**

Respectfully submitted,

WATTS & COMPANY, LAWYERS, Ltd.

/s/ Larry Watts
Laurence "Larry" Watts
Texas Bar No. 20981000
P.O. Box 2214
Missouri City, Texas 77459
Telephone: (281) 431-1500
Facsimile: (877) 797-4055
E-mail: wattstrial@gmail.com

*Attorney for Plaintiff*

1

## **CERTIFICATE OF SERVICE**

I, Larry Watts certify that a true and correct copy of this document has been served on

opposing counsel by electronic filing with the clerk of the court, on this 15th day of January, 2018.

D. Craig Wood
cwood@wabsa.com
Katie E. Payne
kpayne@wabsa.com
Walsh Gallegos Trevino Russo & Kyle, P.C.
100 NE Loop 410, Suite 900
San Antonio, TX 78216
Telephone: (210) 979-6633
Facsimile: (210) 979-7024

/s/ Larry Watts
Laurence "Larry" Watts

Canales 2nd Fl

CAROLINE ROSS vs. JUDSON i

# JUDGE'S NOTES

2017CI09876 -P00017

5 mins

Case No: 14-CI-09876   Court: 73

All future Judge's notations must be done on this form

Mtn. for Telephonic Hearing / Mtn. for Continuance

| Date of Note(s) | NOTE | Judge's Initials |
|---|---|---|
| JAN 18 2018 | Mtn. for Continuance — granted; March 9, 2018 @ 8:30 a.m. in Civil Presiding Court — Plea to the Jurisdiction | OR |
| | (OTC) | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Record: | Levi Denny, Jr.; 20-325-2578 | |
| Attys: | Laurence "Larry" Watts — telephonically | |
| | Katie Payne — in person | |

FILED
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY
2018 JAN 18 AM 1:34
DEPUTY
by Anthony...

DOCUMENT SCANNED AS FILED

FILED
3/2/2018 2:42 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Roxanne Araiza



**WG** | WALSH GALLEGOS
TREVIÑO RUSSO & KYLE P.C.

March 2, 2018

Ms. Donna Kay McKinney                    *Via Electronic Filing*
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas 78205-3411

     Re:    Cause No. 2017-CI-09876, *Caroline Ross v. Judson Independent School District*; In the
            District Court, 73rd Judicial District, Bexar County, Texas

Dear Ms. McKinney:

    This letter serves as a request for Judge David Canales' notes on Plaintiff's Motion for
Continuance hearing dated January 18, 2018. Please e-mail the information to kpayne@wabsa.com. If
there is a charge for the information, please contact our office and we will arrange for payment.

    If you have any questions please contact our office.

                        Sincerely,

                        D. Craig Wood
                        Katie E. Payne

KEP/arm
Enclosures
cc:    Mr. Jose Elizondo, Chief Financial Officer, w/o enclosures, *By E-Mail*
       Mr. Marco Garcia, Chief Human Resources Officer, w/o enclosures, *By E-Mail*
       Ms. Monica Rodriguez, Director of Employee Relations, w/o enclosures, *By E-Mail*

**Certificate of Service**

    I hereby certify that on March 2, 2018, a true and correct copy of the above and foregoing was
electronically filed pursuant to the TEXAS RULES OF CIVIL PROCEDURE, which provides electronic service
to counsel of record if the email address of the attorney to be served is on file. Additionally, a copy of the
foregoing pleading was served upon counsel of record as set out below:

Mr. Laurence "Larry" Watts
WATTS & COMPANY, LAWYERS, Ltd.
P.O. Box 2214
Missouri City, Texas 77459
wattstrial@gmail.com

                    */s/ D. Craig Wood*
                    D. CRAIG WOOD

FILED
3/8/2018 6:58 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Daniela Ramos

## CAUSE NO. 2017-C109876

| | | |
|---|---|---|
| CAROLINE ROSS, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| v. | § | |
| | § | BEXAR COUNTY, TEXAS |
| | § | |
| JUDSON INDEPENDENT | § | |
| SCHOOL DISTRICT . | § | |
| | § | 73rd JUDICIAL DISTRICT |
| *Defendant.* | | |

## PLAINTIFF CAROLINE ROSS'SS MOTION TO COMPEL AND MOTION FOR SANCTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff CAROLINE ROSS ("Plaintiff" or "Ross") and file this Motion to Compel and Motion for Sanctions.   In support thereof, Ross respectfully shows the Court as follows:

## BACKGROUND

1.     Plaintiff Caroline Ross filed suit against Judson Independent School District ("JISD") on May 30, 2017 for issues arising out of her employment. The petition included a request for disclosures.

2.     Defendant, after being properly served, filed an answer on July 28, 2017.

3.     On August 8th, 2017, Ross propounded discovery on Defendant, that included interrogatory requests and requests for production.   *See* Exhibit A – Plaintiff's

1

Discovery Requests.

4.      Defendant served objections and responses to the discovery requests on or about September 7, 2017.   *See* Exhibit B – Defendant's Objections and Responses to Plaintiffs Requests For Production

5.      Defendant made seven general objections to the Plaintiff's request for discovery. *See* Exhibit B

6.  Defendant goes on to object to all twenty requests for production.

## MOTION TO COMPEL

7.      The scope of discovery includes any relevant, unprivileged information – even if inadmissible at trial – that appears reasonably calculated to lead to the discovery of relevant admissible evidence.   TEX. R. CIv. P. 192.3(a); In *re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003). The ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed.   *See In re Colonial Pipeline* Co., 968 S.W.2d 938, 941 (Tex. 1998); *Axelson v. McIlhaney*, 789 S.W.2d 550, 555 (Tex.1990).

8.      Further, the purpose of the discovery rules are to encourage full discovery of the issues and facts before trial so that parties can make realistic assessments of their respective positions in order to facilitate settlements and prevent trial by ambush. *See Oscar Luis Lopez v. La Madeleine of Tex. Inc.,* 200 S.W.3d 854, 860 (Tex. App.

- Dallas 2006, no pet.).

9.      A trial court may compel a party to respond to a discovery request. TEX. R. CIV. P. 215. "[A] party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action." *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009), citing TEX. R. CIV. P. 192.3. Further, "a party is not required to demonstrate a viability of defenses before it is entitled to conduct discovery." *Castillo*, 279 S.W.3d at 664.

10.     The phrase "relevant to the subject matter" is to be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *Castillo*, 279 S.W.3d at 664, quoting *Axelson, Inc. v. McIlhaney*, 798 S.W.2d 550, 553 (Tex. 1990). A trial court's denial of discovery is proper only if there existed no possible relevant, discoverable testimony, facts, or materials to support or lead to evidence that would support and/or refute a claim or defense. *Castillo*, 279 S.W.3d at 664.

11.     Defendant's responses to discovery are inadequate because:

> a) JISD's document production was inadequate as Production Requests No. 1,2,3,4,6,7,8,9,12,13,14,15,18,19,and 20 were objected to based on a claim of attorney client privilege and/or attorney work product. The alleged protected documents were never listed as required.

b) Requests No. 3,4,6,8,9,10,11,12,13,14,15,16,17,18, and 19, were objected to as being overly broad and unduly burdensome. However, "any party who seeks to exclude matters from discovery on grounds that the requested information is unduly burdensome, costly or harassing to produce, has the affirmative duty to plead and prove the work necessary to comply with discovery. *Ford v. Ross*, 888 S.W.2d 879 (Tex. App. – Tyler 1994 no pet.). However, Defendant has failed to meet this burden.

c) Requests No. 3,4,6,8,9,10,11,12,13,14,15,16,17,18, and 19, were not answered based on relevance, yet each of the requests cited above request information that serves as either a basis for Mrs. Ross' claims or serve as an alleged basis for her termination by JISD.

12.     As such, Ross has incurred expenses in preparing and filing this motion obtain relief. Under Texas Rule of Civil Procedure 215.1(d), Ross is entitled to reasonable expenses incurred in obtaining the order, *including* attorney's fees. Because of the conduct of JISD, to ignore all efforts to address these issues without resorting to Court interference, attorney's fees are more than warranted.

## **CONCLUSION**

13.     Wherefore premises considered, Plaintiff Caroline Ross respectfully prays that her Motion to Compel Defendant JISD. to adequately answer discovery requests be granted, and that Defendant be ordered to amend the responses as

4

indicated, and for such other and further relief to which Plaintiff has shown itself to be justly entitled. Plaintiff requests that JISD and their attorneys be sanctioned, and Ross be awarded attorney's fees for preparation of the Motion and obtaining an Order to Compel.

Respectfully submitted,

WATTS & COMPANY, LAWYERS, Ltd.

**/s/ Laurence "Larry" Watts**
Laurence "Larry" Watts
T.B.N. 20981000
P.O. Box 2214
Missouri City, Texas 77459
Tel: (281) 431-1500
Fax: (877) 797-4055
E-mail: wattstrial@gmail.com

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 8th day of March 2018, a true and correct copy Plaintiff Caroline Ross's Motion to Compel was served to opposing counsel via electronically filing same with the ECF system, in accordance with the Rules, to:


D. CRAIG WOOD
State Bar No. 21888700
cwood@wabsa.com
KATIE E. PAYNE
State Bar No. 24071347
kpayne@wabsa.co
WALSH GALLEGOSTREVIÑO
RUSSO & KYLE P.C.
100 NE Loop 410, Suite 900
San Antonio, Texas 78216
Tel No.: (210) 979 6633
Fax No.: (210) 979 7024


**/s/ Laurence "Larry" Watts**
Laurence "Larry" Watts

**EXIBIT A**

**CASE NO. 2017-CI-09876**

| | | |
|---|---|---|
| CAROLINE ROSS, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | OF |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| JUDSON INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| *Defendant.* | § | 73rd JUDICIAL DISTRICT |

## PLAINTIFF CAROLINE ROSS'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT JUDSON INDEPENDENT SCHOOL DISTRICT

**TO:   Defendant Judson Independent School District, by and through its attorneys of record, D. Craig Wood and Katie E. Payne, Walsh Gallegos Trevino Russo & Kyle, P.C., 100 NE Loop 410, Suite 900, San Antonio, TX  78216, Telephone: (210) 979-6633, Facsimile: (210) 979-7024.**

COMES NOW, CAROLINE ROSS, Plaintiff, under Rule 194, Texas Rules of Civil Procedure, by and through her undersigned attorney, and serves the following Plaintiff's First Set of Interrogatories and Request for Production to Defendant Judson Independent School District. Answers must be served and the documents and tangible items in response to the Request for Production produced for inspection, photographing, and copying at the office of the undersigned counsel for Plaintiff, Watts & Company Lawyers Ltd., P. O. Box 2214, 5002 Sienna Parkway, Missouri City, Texas 77459, within thirty (30) days of services, in accordance with the Texas Rules of Civil Procedure.

Respectfully submitted,

WATTS & COMPANY LAWYERS, LTD.

/s/ *Larry Watts*
Larry Watts
T.B.N. 20981000
P.O. Box 2214
Missouri City, Texas 77459
(281) 431-1500
Fax: (877) 797 4055

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on the **8th day of August, 2017** a true and correct copy of Plaintiff's First Request for Production to Defendant Judson Independent School District was served pursuant to the Texas Rules of Civil Procedure to:

D. Craig Wood
cwood@wabsa.com

Katie E. Payne
kpayne@wabsa.com

Walsh Gallegos Trevino Russo & Kyle, P.C.
100 NE Loop 410, Suite 900
San Antonio, TX  78216
Telephone: (210) 979-6633
Facsimile: (210) 979-7024
*Attorneys for Defendant*

/s/ Laurence "Larry" Watts
Laurence "Larry" Watts

## INSTRUCTIONS AND DEFINITIONS

<u>**Interrogatories**</u>

a.     These interrogatories shall be deemed continuing, so as to require supplemental answers if further information is obtained between the time the answers are served and the time of trial. If no one defendant or individual is competent to answer all the interrogatories, the responses should be separately answered under oath by as many agents of the defendant as are necessary.

b.     As used herein, the term "document" means the original as well as any copy regardless of origin or location of any typewritten, handwritten, printed or recorded material including, but not limited to, any book, pamphlet, periodical, letter, memorandum, telegram, report, record, study, handwritten note, working paper, chart, paper, graph, index, tape, disc, data sheet, data processing card, diary, calendar, business records, address and telephone records, or any other written, recorded, transcribed, punched, taped, filmed or graphic matter however produced or reproduced to which you have or have had access or control.

c.     As used herein, the term "identify" or "identification" with reference to a document means to state the date, author (and, if different, the signer or signers), the addressee, document (e.g., letter, memorandum, etc.) and its present or last known location and the name and address of the person having custody or control of such document. If any such document was, but is no longer in your possession or subject to your control, state the disposition made of it, the reason for such disposition and the date thereof, its present location and the name and address of the person having custody or control of such document, with sufficient particularity to request its production under the Texas Rules of Civil Procedure.

d.     As used herein, the term "you" means you, yourself, the person to whom these interrogatories are addressed or any of your agents, deputies, assignees, partners, associates or any employees, employers or organizations of which you are a member or an employee, or any person acting on your behalf.

e.     Without limitation, a document is deemed to be in your "control" if you have the right to secure the document or a copy thereof from another person or public or private entity having actual possession thereof.

f.     "Communicate" or "communication" means every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

g.     Use of the term "identify" with reference to an individual person means to state his full name, present home address, present position and business affiliation or employment. "Identify" as to a communication means to state the date of the communication, the type of communication, the place where such communication was made, the identities or the maker(s) and the receiver(s) of the communication and of each person present when it was made, and the subject matter discussed.

h.     The masculine shall include the neuter or feminine gender, unless the context expressly

indicates otherwise; the singular includes the plural and vice versa; the present tense includes the past tense and vice versa; and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these interrogatories any information which might otherwise be construed to be outside their scope.

i.      If any of the information requested in answer to the interrogatories propounded herein is available in machine-readable form (such as punch cards, paper or magnetic tapes, drums, disks, or core storage) state the form in which it is available and describe the type of computer or other machine required to read the records. If the information requested is stored in a computer, indicate whether there is an existing program that will print the records in the form desired, or if no program exists, whether one could be written.

j.      If you do not answer any interrogatories because of a claim of privilege, set forth the privilege claimed, the facts upon which you rely to support the claim of privilege, and identify all documents for which such privilege is claimed.

## Production Request(s)

a.      You are reminded that your written response to this Request for Production shall state, with respect to each category of items, that inspection and other requested action will be permitted as requested, except to the extent that you object in writing to particular items or categories. Your written responses and/or objections shall be served on opposing attorney within the time prescribed by the Texas Rules of Civil Procedure.

b.      If you contend that you may partially or entirely withhold a requested document or category of documents because of a rule, privilege, immunity, or other reason, for each document partially or entirely withheld, identify the document and state the factual basis on which you claim the privilege or immunity.

c.      The request for production does not seek correspondence between you and your attorneys that concerns this lawsuit.

## Additional Instructions

1.      If any or all documents identified or requested herein are no longer in existence or no longer in your possession, custody, or control because of destruction, transfer, loss, or any other reason, then identify each and every such document.

2.      The definitions listed below are to be construed as broadly as possible to include the most information or documents responsive to the discovery requests propounded herein.

## Instructions Regarding any Alleged Ambiguity

1.      To avoid ambiguity, significant effort has been spent to define a number of terms used in the following discovery requests. If you or your attorney claim you do not understand the meaning of a term, please refer to the list of definitions, or contact the opposing attorney for clarification.

**Request for Supplementation**

1. This discovery request is continuing.  In the event that any information or material responsive to any interrogatory or request for production comes to your attention, possession, custody, or control, or the attention, possession, custody or control of your agents, employees, affiliates, subsidiaries, accountants, partners, officers, family members, directors, or attorneys subsequent to the filing of your response, you are required to furnish the additional information, answers, or material to the opposing attorney as soon as possible.

**Definitions**

1. "Identify" or "name" means to provide the complete identity, to the extent known or ascertainable by you or your attorneys, agents, directors, officers, employees, partners, subsidiaries and affiliates, and includes, without limitation, a request for the following information:

  a. Where the term to be identified is a person, the person's full name, present or last known address and telephone number, and present or last known employer;

  b. Where the term to be identified is a document, its character or title, the date it was created, and the author or signatory;

  c. Where the item to be identified is a statement, the exact language or nature of the statement and the person who made the statement; and

  d. Where the information to be identified is a lawsuit, the name of the lawsuit and the court where it was filed.

2. The term "document(s)" is used in the broadest sense of that term and includes the original and all non-identical copies, whether different from the original by reason of notations made on such copies or otherwise, and all drafts of: letters, telegrams, memoranda, reports of telephone conversations, ledgers, journals, invoices, bills, sales orders, call reports, financial and business records, receipts, contracts, reports, studies, calendar entries, diary entries, maps, pamphlets, notes, charts, forms, tabulations, analyses, statistical or informational accumulations, summaries or abstracts, any kind of records of meetings or conversations, firm impressions, sound or mechanical reproductions, rules, regulations, opinions, orders, interpretations, exceptions, position papers, guidelines, publications, instructions, transparencies, handbooks, manuals, operating procedures, appointment calendars, call slips, file jackets, course materials, training materials, minutes, testimony, photographs, videotapes, films, press releases, speeches, surveys, graphs, statistics, tables, printed or typewritten forms, indices, agreements, canceled checks, correspondence, memos, data on computer storage, data on computer disks, data stored on computer backup, telephone message slips, sketches, notes of conversations, and all other written, printed, typed or other reported matter (including electronic or magnetic recordings), photographs, or other data compilations in which information can be obtained, which are in the possession, custody, or control of you, your attorneys, agents, physicians, directors, officers, partners, affiliates, subsidiaries, servants, or employees.

3.     "Or" and "and" mean and/or.

4.     The singular shall include the plural, and the plural the singular, whenever the effect of doing so is to increase the information responsive to the request for information.

5.     The "Rules of Civil Procedure" means the Texas Rules of Civil Procedure.

6.     "Plaintiff" means Caroline Ross.

7.     "Defendant JISD" means Defendant Judson Indepenedent School District

8.     "This lawsuit" or "action" means the lawsuit filed in the District Court of Bexar County, Texas, 73rd Judicial District, Cause No. 2017-CI-09876.

9.     "Petition" refers to the most recent, live petition filed by the Plaintiff.

10.     The "incidents" or "subject matter" means all the facts and circumstances concerning the basis for this suit.

11.     "Propounding Party" means Plaintiff.

12.     "Through the time of trial" shall mean from the number of years specified prior to the date this discovery was propounded through the time the parties in this lawsuit begin conducting voir dire.

13.     "Photographs," "photos," "videos," and "videotapes" mean all films, negatives, slides, photos, digital images, visual images stored on computers, Polaroid, movie pictures, videotapes, movies, and pictures, whether developed or not.

14.     "Income" shall mean any type of remuneration including, but not limited to, wages, pay, and commissions, income listed on a W-2, bonuses, emoluments, and remittances.

15.     "Your attorneys" means the attorneys hired to represent you in or consult with you about this lawsuit or any lawsuit on concerning similar matters.

16.     "Your employees" means any person employed by you who completed a W-2, whether employed full-time, part-time or temporarily. The term "your employees" shall also include anyone who worked for you that was a borrowed employee or provided by a temporary employment agency or company. The term "your employee" shall also include any person, agent, representative, who assisted you or your employees in any official activities, duties, police business or investigations, including confidential informants, citizens, prisoners, and friends.

17.     "Governmental entity" means any governmental organization including, but not limited to, any international, federal, state, regional, county, parish, city (whether incorporated, unincorporated, or home rule) elective body, appointed body, legislative body, board, commission, agency, department, division, subdivision, and any other department or division of any of the previously listed entities.

18.     "Communicate" or "communication" means every manner or means of disclosure, transfer, or exchange, and every disclosure, transfer or exchange of information whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise; including every oral or written or electronic utterance, notation, or statement of any nature whatsoever, by and to whomsoever made including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons.

19.     "Person" or "persons" means not only natural persons, but also corporations, partnerships, organizations, associations, industry groups, entities, joint venturers, or any government or governmental entity, commission, or agency and any divisions or departments or other units of any of the entities defined herein.

20.     The term "computer data" means any documents, information or data ever placed into or stored on any of your computers, including, but not limited to, the hard drive, lap tops, disks, storage systems, retrieval systems and similar systems, E-mails, Internet transmissions,

electronic bulletin boards, websites, diary systems, calendar systems, tickler systems and any other programs.

21. As used herein, the term "document" means the original as well as any copy regardless of origin or location of any typewritten, handwritten, printed or recorded material including, but not limited to, any book, pamphlet, periodical, letter, memorandum, telegram, report, record, study, handwritten note, working paper, chart, paper, graph, index, tape, disc, data sheet, data processing card, diary, calendar, business records, address and telephone records, or any other written, recorded, transcribed, punched, taped, filmed or graphic matter however produced or reproduced to which you have or have had access or control.

22. As used herein, the term "you" means you, yourself, the person to whom these interrogatories are addressed or any of your agents, deputies, assignees, partners, associates or any employees, employers or organizations of which you are a member or an employee, or any person acting on your behalf.

23. Without limitation, a document is deemed to be in your "control" if you have the right to secure the document or a copy thereof from another person or public or private entity having actual possession thereof.

24. The masculine shall include the neuter or feminine gender, unless the context expressly indicates otherwise; the singular includes the plural and vice versa; the present tense includes the past tense and vice versa; and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these interrogatories any information which might otherwise be construed to be outside their scope.

25. If any of the information requested in answer to the requests for production or interrogatories propounded herein is available in machine-readable form (such as punch cards, paper or magnetic tapes, drums, disks, or core storage) state the form in which it is available and describe the type of computer or other machine required to read the records. If the information requested is stored in a computer, indicate whether there is an existing program which will print the records in the form desired, or if no program exists, whether one could be written.

## INTERROGATORIES

**INTERROGATORY NO. 1:**        Identify the person or persons answering these Interrogatories or who contributed information used in answering these Interrogatories.  If more than one person provided the answers or information, identify the specific Interrogatories answered by each person.

**RESPONSE:**

**INTERROGATORY NO. 2:**        If any documents relevant to any aspect of or issues in this lawsuit have been lost, misplaced, or destroyed, identify fully each document and describe how it was lost, misplaced, or destroyed.

**RESPONSE:**

**INTERROGATORY NO. 3:**        Describe any negative entries in Plaintiff's personnel file, including but not limited to all reprimands, warnings, disciplinary actions, probation, complaints, or any type of disciplinary action taken against Plaintiff during the course of her employment with JISD.

**RESPONSE:**

**INTERROGATORY NO. 4:**        If you have any knowledge, either directly or indirectly, of any admission against interest or any statement or admission of any kind made by Plaintiff or anyone acting by or on the Plaintiff's behalf regarding any claim made by Plaintiff herein, or any fact that might be relevant to this lawsuit, describe the statement and/or admission, identify who made the statement and/or admission and the date such admission and/or statement was made.

**RESPONSE:**

**INTERROGATORY NO. 5:**        Identify the ultimate decision maker as to Plaintiff's termination, as well as every person who participated in any way in assisting the ultimate decision maker in reaching the decision to terminate the Plaintiff, and with regard to each person so identified, indicate their name, current address, job title at the time they participated in the termination decision, the specific role they played in making the decision to terminate Plaintiff.

**RESPONSE:**

**INTERROGATORY NO. 6:**        State the name(s) of the person(s) that took over Plaintiff's duties and the salary they currently receive, each raise given to such individual(s) from the date the

individual(s) replaced Plaintiff to the present; also state the individual(s) job title, race, color, sex, religion, national origin, age and whether the individual(s) is/are disabled.

**RESPONSE:**

**INTERROGATORY NO. 7:**        State each and every fact upon which you base JISD's affirmative defenses in JISD's "Answer" to Plaintiff's Original Petition.

**RESPONSE:**

**INTERROGATORY NO. 8:**        Identify each and every document which supports the affirmative defenses asserted in JISD's "Answer."

**RESPONSE:**

**INTERROGATORY NO. 9:**        State each and every fact and reason that supports your decision to terminate Plaintiff's employment.

**RESPONSE:**

**INTERROGATORY NO. 10:**        Identify all oral or written statements (including, but not limited to, affidavits, narrative statements, reports, or other documents) whether or not made by any agents or employees of Defendant, that you believe support any aspect of your defenses in this action. For each such statement, separately identify by name, address and telephone number: the author of each such statement, report, memorandum or recording: the person or persons to whom the statement, report, memorandum or recording was issued, distributed, or otherwise provided; the present location and custodian of each such statement, report, memorandum or recording; and state the date such statement, report, memorandum or recording was prepared.

**RESPONSE:**

**INTERROGATORY NO. 11:**        Are there any facts that would support the Plaintiff's termination, that were first discovered after the Plaintiff's termination? If so:
    (a) state the specific facts;
    (b) state when and how JISD first learned of each specific fact;
    (c) state the name, address, and telephone number of each person who has knowledge of the specific facts; and
    (d) identify all documents that evidence these specific facts.

**RESPONSE:**

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1.**          Produce the originals for inspection and copies of any and all witness statements, including any drafts, revisions, amendments to witness statements relating to, or prepared in anticipation of litigation related to Plaintiff's termination.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2.**          Produce all audio/video recordings, notes, documents and minutes of any grievance  or administrative hearings related to Plaintiff's termination.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**          All documents provided by Plaintiff or Defendant to any of Defendant's managers, supervisors, human resources personnel, agents, or employees regarding the cessation of Plaintiff's employment with Defendant.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**          All documents in your custody, control, or possession that regulated Plaintiff's employment with Defendant, including, but not limited to, company policies and procedures, personnel records, regulations, handbooks, benefit plans or records, wage information, contracts, memoranda and or correspondence.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**          All documents you sent to, or received from, all federal, state, or administrative agencies (EEOC, TWC, SBEC, etc. ) related to Plaintiff's employment and/or the cessation of Plaintiff's employment with JISD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**          All documents which relate or refer to any of the allegations or affirmative defenses contained in your pleadings, including, but not limited to, those documents you intend to rely upon in this action, introduce into evidence, or use in any other matter during the course of this litigation, including trial.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**          All    documents    contained    in    Plaintiff's

personnel file(s) in the possession of Defendant JISD, including but not limited to all grievances, human resources investigations, and charges or complaints of discrimination filed by or against Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:**    Produce all records, including emails and internal memoranda relating to the termination of Plaintiff's employment by JISD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:**    Produce all documents and communications relating to any and all changes to the terms of Plaintiff's employment by Defendant.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:**    Produce all documents or instruments signed by Plaintiff that relate to or refer to any terms or conditions of Plaintiff's employment with JISD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:**    Produce all documents and communications relating to any discussions between Plaintiff and Defendant regarding the terms or conditions of Plaintiff's employment with Defendant.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:**    Produce all documents and communications relating to your decision to terminate Plaintiff.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:**    Produce all documents and communications relating to, reflecting the facts and circumstances of any discipline of Plaintiff, or concerning any alleged misconduct engaged in by Plaintiff during Plaintiff's employment by JISD.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:**        Produce all records of investigations and documents reviewed or considered by Defendant in connection with any investigation conducted by Defendant relating to Plaintiff's employment and termination.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:**        All notes, memoranda, statements and/or affidavits taken by any person who investigated any complaint filed by Plaintiff against Defendant.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:**        Produce all communications between Plaintiff and Defendant or any employee of Defendant, between January 1, 2015 to December 31, 2016.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**        Produce all documents and communications concerning any awards, achievements or commendations from any Defendant employee to Plaintiff and any written compliments or communications received by any Defendant employee concerning Plaintiff's work.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:**        Produce all reports, letters of recommendation, reviews, or other similar documents relating to Plaintiff's job performance not contained in Plaintiff's personnel file.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:**        Produce any and all emails on any server maintained by JISD mentioning Plaintiff whether by name or not sent between January 1, 2015 through December 31, 2016.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:**        Produce all reports, letters of recommendation, reviews, or other similar documents relating to Plaintiff's job performance not contained in Plaintiff's personnel file.

**RESPONSE:**

**EXIBIT B**

CASE NO. 2017-CI-09876

| | | |
|---|---|---|
| CAROLINE ROSS,<br>*Plaintiff* | §<br>§<br>§ | IN THE DISTRICT COURT<br>OF |
| v. | §<br>§<br>§ | BEXAR COUNTY, TEXAS |
| JUDSON INDEPENDENT<br>SCHOOL DISTRICT,<br>*Defendant.* | §<br>§<br>§<br>§ | 73rd JUDICIAL DISTRICT |

**DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S**
**REQUESTS FOR PRODUCTION TO DEFENDANT JUDSON ISD**

TO:    Plaintiff, Caroline Ross, by and through her attorney of record:

Mr. Larry Watts
WATTS & COMPANY LAWYERS, LTD.
P.O. Box 2214
Missouri, Texas 77459

**COMES NOW**, Judson Independent School District (hereinafter, "the District," "Judson ISD") Defendant, by and through its attorneys of record, and, submits the following Objections and Responses to Plaintiff's Requests for Production.

Respectfully submitted,

WALSH GALLEGOS TREVIÑO
RUSSO & KYLE P.C.
100 N.E. Loop 410, Suite 900
San Antonio, Texas 78216
Telephone: (210) 979-6633
Facsimile:  (210) 979-7024
Email: cwood@wabsa.com
Email: kpayne@wabsa.com

By:

D. CRAIG WOOD
State Bar No. 21888700
KATIE  PAYNE
State Bar No.  24071347

**ATTORNEYS FOR DEFENDANT**
**JUDSON ISD**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of *Defendant's Objections and Responses to Plaintiff's Requests for Production to Judson ISD* have been forwarded to all known Counsel of record in the manner indicated below on this the 7th day of September, 2017.

Mr. Larry Watts                                  *E-mail: wattstrial@gmail.com*
WATTS & COMPANY LAWYERS, LTD.   *Certified Mail No. 70163010000006629746*
P.O. Box 2214                                     *Return Receipt Requested*
Missouri, Texas 77459

_____
D. CRAIG WOOD

**GENERAL OBJECTIONS TO PLAINTIFF'S REQUESTS FOR PRODUCTION**

1. The Defendant objects to Plaintiff's Requests to the extent they require the Defendant to act beyond the scope of permitted discovery and to the extent they require the Defendant to marshal its evidence.

2. The following objections and responses are based on information and documents presently available to and located by Defendant and are given to Plaintiff without prejudice to Defendant's right to produce additional information at a later date should this information become available or located as a result of subsequent review of records or as a result of additional investigation or discovery.

3. By producing or failing to produce some or all of the information requested, the Defendants does not concede the relevance or materiality of any request or the subject to which it relates.

4. Defendant objects to all discovery requests to the extent these requests seek information protected by the attorney-client privilege, attorney work product doctrine or any other applicable privilege.

5. To the extent Plaintiff's discovery requests call for social security information other than that of Plaintiff, Defendant objects to the release of this information; however, the District will be amenable to release the same pursuant to an Agreed Motion for Protective Order submitted by the parties and entered by the Court.

6. Inadvertent production of privileged information by Defendant shall not constitute waiver of any applicable privilege or doctrine, including, but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, privilege and/or admissibility as evidence as such objections may apply at trial or otherwise in this action.

7. The District further objects to each and every request to the extent they call for information protected by the United States Constitution and any applicable statutes, including, but not limited to, the right of privacy; however, the District will be amenable to release the same pursuant to an Agreed Motion for Protective Order submitted by the parties and entered by the Court.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1.**   Produce the originals for inspection and copies of any and all witness statements, including any drafts, revisions, amendments to witness statements relating to, or prepared in anticipation of litigation related to Plaintiff's termination.

**RESPONSE:**
The District objects that the Request asks for a type of discovery not required by the rules of discovery. Tex. R. Civ. P. 196.3(b). Specifically, the Request purports to ask for the production of originals for inspection and copies of the same material. Under Texas Rule of Civil Procedure 196.3(b), the District may produce copies in lieu of originals, or if originals are produced, the District is entitled to retain the originals while the requesting party inspects and copies them. The District further asserts attorney-client privilege and/or attorney work product privilege.

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 2.**   Produce   all   audio/video   recordings,   notes, documents and minutes of any grievance or administrative hearings related to Plaintiff's termination.

**RESPONSE:**
The District asserts attorney-client privilege and/or attorney work product privilege.

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 3:**   All documents provided by Plaintiff or Defendant to any of Defendant's managers, supervisors, human resources personnel, agents, or employees regarding the cessation of Plaintiff's employment with Defendant.

**RESPONSE:**
The District objects that the Request is overly broad and unduly burdensome. Specifically, the Request would require the District to cumulatively and unnecessarily search through thousands of "managers, supervisors, agents, or employee" records. Further, the District objects that the Request would require the District to marshal all its proof or the proof the District intends to offer at trial, which is not required under the Texas rules.  TEX. R. CIV. P. 197.1 & cmt. 1. The District further asserts attorney-client privilege and/or attorney work product privilege.

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 4:**   All documents in your custody, control, or possession that regulated Plaintiff's employment with Defendant, including, but not limited to, company policies and procedures, personnel records, regulations, handbooks, benefit plans or records, wage information, contracts, memoranda and or correspondence.

**RESPONSE:**
The District objects that the Request and its corresponding Interrogatory is overly broad and unduly burdensome as it is not limited in time or scope. The District further asserts attorney-client privilege and/or attorney work product privilege.

Subject to, and without waiving the foregoing objections, the District responds: *See* Judson ISD Board Policy, available to the public online at http://pol.tasb.org/Policy/Section/185?filter=D.

The District will supplement.

**REQUEST FOR PRODUCTION NO. 5:**  All documents you sent to, or received from, all federal, state, or administrative agencies (EEOC, TWC, SBEC, etc.) related to Plaintiff's employment and/or the cessation of Plaintiff's employment with JISD.

**RESPONSE:**
The District objects as the information requested is available from public records and the burden of ascertaining the answer is substantially the same for Plaintiff and the District. Tex. R. Civ. P. 197.2(c).

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 6:**  All documents which relate or refer to any of the allegations or affirmative defenses contained in your pleadings, including, but not limited to, those documents you intend to rely upon in this action, introduce into evidence, or use in any other matter during the course of this litigation, including trial.

**RESPONSE:**
The District objects that the Request is overly broad and unduly burdensome. Further, the District objects that the Request would require the District to marshal all its proof or the proof the District intends to offer at trial, which is not required under the Texas rules. Tex. R. Civ. P. 197.1 & cmt. 1. The District further asserts attorney-client privilege and/or attorney work product privilege.

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 7:**  All documents contained in Plaintiff's personnel file(s) in the possession of Defendant JISD, including but not limited to all grievances, human resources investigations, and charges or complaints of discrimination filed by or against Plaintiff.

**RESPONSE:**
The District asserts attorney-client privilege and/or attorney work product privilege.

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 8:**  Produce all records, including emails and internal memoranda relating to the termination of Plaintiff's employment by JISD.

**RESPONSE:**
The District objects that the Request and its corresponding Interrogatory is overly broad and unduly burdensome.  Specifically, the Request would require the District to cumulatively and unnecessarily search through thousands of employees' records. The District further asserts attorney-client privilege and/or attorney work product privilege.

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 9:**  Produce all documents and communications relating to any and all changes to the terms of Plaintiff's employment by Defendant.

**RESPONSE:**
The District objects that the Request is overly broad and unduly burdensome.  Plaintiff's request for all documents and communications relating to "any and all changes" to the terms of Plaintiff's employment is vague and undefined, and not reasonably calculated to lead to the discovery of admissible evidence. Tex. R. Civ. P. 192.3(a). The District further asserts attorney-client privilege and/or attorney work product privilege.

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 10:**  Produce all documents or instruments signed by Plaintiff that relate to or refer to any terms or conditions of Plaintiff's employment with JISD.

**RESPONSE:**
The District objects that the Request is overly broad and unduly burdensome as it is not properly limited in time or scope.

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 11:**  Produce all documents and communications relating to any discussions between Plaintiff and Defendant regarding the terms or conditions of Plaintiff's employment with Defendant.

**RESPONSE:**
The District objects that the Request is overly broad and unduly burdensome as it is not limited in time or scope.

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 12:** Produce all documents and communications relating to your decision to terminate Plaintiff.

**RESPONSE:**
The District objects to this Request as overly broad and unduly burdensome. The District also objects to this Request to the extent it seeks information or documents protected by the attorney-client privilege and attorney work product doctrine.

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 13:** Produce all documents and communications relating to, reflecting the facts and circumstances of any discipline of Plaintiff, or concerning any alleged misconduct engaged in by Plaintiff during Plaintiff's employment by JISD.

**RESPONSE:**
The District objects to this Request as overly broad and unduly burdensome and without proper limitation of time. The District also objects to this Request to the extent it seeks information or documents protected by the attorney-client privilege and attorney work product doctrine.

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 14:** Produce all records of investigations and documents reviewed or considered by Defendant in connection with any investigation conducted by Defendant relating to Plaintiff's employment and termination.

**RESPONSE:**
The District objects to this Request as overly broad and unduly burdensome. The District also objects to this Request to the extent it seeks information or documents protected by the attorney-client privilege and attorney work product doctrine.

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 15:** All notes, memoranda, statements and/or affidavits taken by any person who investigated any complaint filed by Plaintiff against Defendant.

**RESPONSE:**
The District objects to this Request as overly broad and unduly burdensome. The District also objects to this Request to the extent it seeks information or documents protected by the attorney-client privilege and attorney work product doctrine.

Subject to, and without waiving the foregoing objections, the District responds:

The District will supplement.

**REQUEST FOR PRODUCTION NO. 16:** Produce all communications between Plaintiff and Defendant or any employee of Defendant, between January 1, 2015 to December 31, 2016.

**RESPONSE:**
The District objects to this Request as overly broad and unduly burdensome as the District has thousands of employees and this Request is not properly limited in scope, is not reasonably calculated to lead to the discovery of admissible evidence, and is vague and lacking in the requisite specificity. Tex. R. Civ. P. 192.3(a).

**REQUEST FOR PRODUCTION NO. 17:** Produce all documents and communications concerning any awards, achievements or commendations from any Defendant employee to Plaintiff and any written compliments or communications received by any Defendant employee concerning Plaintiff's work.

**RESPONSE:**
The District objects that the Request is overly broad and unduly burdensome in both time and scope, is not reasonably calculated to lead to the discovery of admissible evidence, and is vague and lacking in the requisite specificity. Tex. R. Civ. P. 192.3(a).

**REQUEST FOR PRODUCTION NO. 18:** Produce all reports, letters of recommendation, reviews, or other similar documents relating to Plaintiff's job performance not contained in Plaintiff's personnel file.

**RESPONSE:**
The District objects that the Request is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence and is vague and lacking in the requisite specificity. Tex. R. Civ. P. 192.3(a). The District further asserts attorney-client privilege and/or attorney work product privilege.

Subject to, and without waiving the foregoing objections, the District responds

The District will supplement.

**REQUEST FOR PRODUCTION NO. 19:** Produce any and all emails on any server maintained by JISD mentioning Plaintiff whether by name or not sent between January 1, 2015 through December 31, 2016.

**RESPONSE:**
The District objects that the Request is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence and is vague and lacking in the requisite specificity. Tex. R. Civ. P. 192.3(a). The District further asserts attorney-client privilege and/or attorney work product privilege.

**REQUEST FOR PRODUCTION NO. 20:** Produce all reports, letters of recommendation, reviews, or other similar documents relating to Plaintiff's job performance not contained in Plaintiff's personnel file.

**RESPONSE:**
The District objects that the Request is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence and is vague and lacking in the requisite specificity. Tex. R. Civ. P. 192.3(a). The District further asserts attorney-client privilege and/or attorney work product privilege. This Request is duplicative of Request 18.

FILED
3/8/2018 8:23 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Nidia Benavides

## CASE NO. 2017CI09876

| | | |
|---|---|---|
| CAROLINE ROSS, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | OF |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| JUDSON INDEPENDENT | § | 73rd JUDICIAL DISTRICT |
| SCHOOL DISTRICT, | § | |
| *Defendant* | § | TRIAL BY JURY |

### PLAINTIFF'S SECOND AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Caroline Ross (hereafter "Plaintiff" or "Ross"), an African American female, who was born in 1961, files this Original Petition (hereafter "this Petition") complaining of Judson Independent School District (hereafter "Defendant" or "JISD") and would show the Court as follows:

### DISCOVERY CONTROL PLAN

Plaintiff alleges that discovery in this lawsuit is intended to be conducted under level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### TRCP 46 COMPLIANCE

Ross presents two claims against JISD. The first is a legal claim under Tx. Lab. Code, Chapter 21, and based on two Charges of Discrimination, No's. 451-2017-00505, and 451-2016-01981 whereby Ross seeks money damages.

No claim herein is brought pursuant or ancillary to the school laws of the state of Texas.

The damages sought herein for Ross' legal claim, are within the jurisdictional limits of the court and seek monetary relief over $200,000.00 but not more $1,000,000.00.

### THE PARTIES

Plaintiff is an individual who resides in Bexar County, Texas.

Defendant JISD is an independent school district, located in Live Oak, Bexar County, Texas.

Defendant Carl A. Montoya, is an individual.

Defendant Elida Vera, is an individual.

And four to five, as of yet, unnamed JISD Board members who voted against Ross and in favor of her receiving, the most severe punishment available, nonrenewal and termination after 19 years of service.

## JURISDICTION AND VENUE

JISD, at all times relevant to this lawsuit levied taxes and received governmental monies to do operate a public education facility in Bexar County, Texas. Therefore, jurisdiction and venue are proper in Bexar, County, Texas.  As a proximate result of said "incident," damages in excess of the minimum jurisdictional limits of this Court were incurred by Plaintiff. The damages suffered include, but are not limited to economic and non-economic losses.

## SERVICE

JISD may be served by serving the Petition, citation, service of process and discovery upon the Superintendent of Schools, at his office at 8012 Shin Oak Drive, Live Oak, Texas 78233.

## FACTS

Ross (African American) served with distinction and loyalty as a public educator with the JISD for approximately 19 years.

Ross served for approximately 8 years as the Assistant Principal of various JISD schools, and then served as a building Principal for approximately 10 years, before she was terminated for pretextual reasons in 2016.

For the last several years of her employment by JISD, Ross served as the Principal of Metzger Middle School.

The approximate racial make-up of JISD's student body is 63% +/- Hispanic, 30% +/- African American, and 7% +/- Caucasian.

For many years Anita Bera (Hispanic) served as an Associate Superintendent.

In December 2007, the JISD Board of Trustees hired Dr. Willis Mackey (African American) as Superintendent.

Superintendent Mackey disapproved of Bera's service in her position as Associate Superintendent, and demoted her to the position of Assistant Superintendent.

During Ross's 19 years in the JISD, or performance assessments were proficient and when serving as a Principal her appraisals were outstanding earning her distinctions year after year. The Associate Superintendent of JISD at the time even noted, "Ms. Ross has built a strong instructional team, she's led the school to once again grow in terms of student achievement."

Meanwhile, racial tensions amongst white patrons of the district and others began to focus on JISDs Superintendent, perceived by many onlookers as being the result of his being African American. Under Mackey's leadership JISD passed its first bond issue in nearly 7 years and made singular improvements and academics. Significantly, not only did Mackey open new and important educational venues in the district but the district's fund balance topped $40 million realizing significant savings through the refinancing of older bonds to the tune of $11 million. Superintendent Mackey's curriculum decisions and implementation of instructional systems because JI asked E to become one of only three public school districts in the San Antonio Metro area in which all campuses, elementary-middle school-in high school, met state and federal academic standards. His leadership both past and present was generally considered to be outstanding; but he had his critics, and those critics generally formed along race lines, using Twitter and other social media to generate back channel complaints and criticisms about the Mackey administration.

On April 14, 2014, Superintendent Mackey informed the school board of JISD that he intended to retire at the end of the 2014-2015 school year.

On September 17, 2015, JISD, building a new high school, and wrestling with the task of deciding what name should be placed on the building, dealt with a social media backlash against naming the school after the former African-American Superintendent, and voted 5 to 2 in favor of naming the new school after Dr. Willis Mackey.

Media took note that the decision was met with plenty of negative comments on the districts Facebook and Twitter accounts.

Nevertheless, despite the negative feedback, the district defended its decision to name the school after Superintendent Mackey.

In December 2015, JISD was again whipped by local forces into changing the name of the under-construction Mackey high school; yet the board resisted, and the name of the building remained Willis Mackey high school… for a while longer, until the tweets and social media opposition resulted in changes on the school board. Racism disguised as some other more socially palatable excuse pressed the JISD Board to not name the new high school after the District's former African American Superintendent.

In the meantime, sometime in February 2016, false allegations were generated against Ross, falsely accusing her of misappropriation of funds. Ross received the most severe punishment available, nonrenewal and termination after 19 years of service. In Ms. Ross's situation, the hollow and fake allegations against her were never verified or supported by credible evidence.

Ross was not the only JISD professional educator accused of offenses similar to the one leveled against her or worse.

Ross was the only JISD Principal or Administrator terminated or nonrenewed by JISD in her memory.

JISD has pursued a pattern and practice of treating protected persons less favorably than non-protected persons.

Caroline Ross did not fail to have proper documentation for expenditures and two signatures per check. Ross did not direct her secretary to sign checks for her. Ross did not lie to district investigators about this matter. Ross did not engage in impermissible fundraising activities by charging students for composition books paid for by the district and for attending events such as pep rallies and performances.

Ross has not exhausted her legal remedies and is within her rights to state a claim for violation of the TCHRA.

## OTHERS OUTSIDE OF ROSS' PROTECTED CLASS WHO HAVE BEEN TREATED MORE FAVORABLY

For example, there were other district administrators, none of whom were African American who were treated far more favorably than Ross under similar or worse accusations of misconduct. Even in the instances of the other non-African-American administrators/educators, many of the more favorably treated employees were admittedly or substantially culpable or responsible for the charges made against them.

In 2015, **Steve Yaklin, Dir. of Maintenance, a white male**, was placed on administrative leave for failure to follow procurement law processes and board policy where he had violated vendor contract rules. JISD publicly rescinded a termination of Yaklin, reinstating him and returning him to duty.

**Marsha Bellinger, former Principal at Park Village Elementary, a white female**, was transferred to Judson Alternative School in 2015 rather than being nonrenewed for alleged leadership issues.

In 2016, Marsha Belanger was transferred again to a district office level position after being placed on administrative leave and threatened with nonrenewal, which new position was effectively a promotion carrying with it a raise in salary.

**Elaine Howard, Executive Director of Human Resources, a white female**, in 2013 failed to terminate an employee (Troy Richleau) in the district and he was awarded over $12,000.

Elaine Howard's failure to follow proper personnel and district policies and procedures cost the school district thousands of dollars and she was neither terminated nor reprimanded.

In 2014, **Evelyn Cantu (Hispanic)** was not terminated from payroll after her resignation from district employment resulted in an overpayment of over $30,000 to her; however, Marlene Glover, an African-American female, was required to pay back a retention bonus of $1200.

**Cindy Barnhart, a white female, former Principal at Franz Elementary**, allegedly failed to take an action against the teacher who was convicted of having improper sexual contact with students. Ms. Barnhart allegedly had first-hand knowledge of the incidents and was ultimately sued by the victims which resulted in a settlement, yet she was only reassigned to another campus as a Principal and not threatened with nor are nonrenewed in her employment.

**Greg Milchder, a white male, former Vice-Principal at Judson High School** was reassigned for allegedly requiring teachers to change grades of students and has since been promoted to be the current principal at Park Village Elementary School.

**Kristy Vidaurri, a white female, and former Principle of Judson High School** was reassigned to the districts main office because of her alleged failure in leadership at the campus.

**Barbara Mead, a white female was reassigned as Executive Director of Judson Educational Foundation** after having been the head counselor at Metzger who had allegedly disrupted the administration of Tracy Val-Ray, an African American female. It should be noted that the board of JISD was going to replace Ross at Metzger with Beverly Broome, a white female but was told by their consultants not to do so at this time because of Ross's pending claim that as soon as the Charge of Discrimination by Ross was disposed of they could put Broome in as principal at Metzger.

**Michael Wacker, a white male, was Head Boys Basketball Coach** and was arrested by the police for Driving While Intoxicated, the arrest being widely publicized on area television news; nevertheless, Wacker was merely suspended for one week and returned to his duties.

**Don Pittman, a white male, Principal of Judson High School** was never terminated or nonrenewed even after accusations of violating Judson policies and practices, being merely reassigned to the districts office and then to become Principal of an elementary school where he served for four years before retiring to seek employment in the Northeast ISD.

**Kamara Adams, a white female, Vice Principal at Judson High School** was accused of violating district policy and procedure and transferred to the district office.

**Mr. Joe Gonzales, Hispanic male, Principle of Wagner High School** was transferred to the district office then to Executive Director Student Supply Services, after being accused of violating district policy and procedures.

**Erica Garza, Hispanic female, Principal Rolling Meadows Elementary** was demoted and reassigned to the position of Vice Principal at Kitty Hawk middle school for having allegedly violated district policies and procedures.

**René Briske, a white female was demoted and transferred from Principal Paschall Elementary to become Vice Principal at Judson Elementary College Academy** and has since been re-promoted to be Principal at Eloff Elementary after allegedly violating district policies and procedures.

### TIMELINE OF 2015-2016

| | |
|---|---|
| June 11, 2015- | Ms. Ross received a Principal Appraisal Summary Sheet with "E" to" E+" (outstanding) evaluations and a comment by Assoc. Superintendent Nancy Robinson, to wit: " Ms. Ross has built a strong instructional team. She has led the school to once again grow in terms of student achievement. |
| July 2015 | Superintendent forced to retire. Assoc. Sup. Nancy Robinson also retires |
| September 2015 | Notice of Texas Education Agency's 2014-2015 "Distinction" for academic improvement and progressive improvement in attendance at Metzger Middle School. (No Banner provided by JISD as for 2012-2013 year: causing Public humiliation and disrespect to students and community. |
| February 23, 2016 | Campus Police interview Secretary/Bookkeeper, Laura Hopkins, in regard to her having committed forgery. Ms. Hopkins denied signing checks, denied petty cash fund. The police state that an ongoing investigation will clear her if she says Ms. Ross okayed it. She swooped up the police offered chance to falsely blame someone else. |
| February 24, 2016 | Ross interviewed by police and for the first time sees checks. Ms. Ross denied ever giving permission to anyone to sign her name to checks and pointed out that any two out of three people were available to sign checks. Understanding seriousness of forgery charge Ross wants to check to calendar to see if she was on campus on the days the checks were signed. Ross denies ever giving permission and wanted to see |

|  | original records and checks along with documentation submitted at the time the checks were requested and issued. |
|---|---|
| February 25, 2016 | Ross was placed on administrative leave with pay-with the Superintendent's Letter stating misappropriation of funds. Barred from campus and unable to examine records to establish proof that she did not want or need signatory authorization for anyone. Unable to secure records for PAD (Principal's activity fund) |
| March 23, 2016 | Ms. Laura Hopkins claims Ross had given permission for check writing; maintained a petty cash fund and allowed Ms. Hopkins to use password for routine forms and check requisitions. Ms. Hopkins was told that the police had established that "all funds were accounted for" and the only criminal action toward Ms. statement from Ms. Coggins, Ross's former secretary/ bookkeeper. Ms. Coggins vehemently denied the outrageous story that Ms. Coggins Had instructed Hopkins how to trace Ross's signature by holding it up to window light. |
| May 9, 2016 | Ross was ambushed with a request for" an interview since investigation was over". |
|  | She attended with her Representative of choice. The attorney for the District was there and had 30 pages of questions based entirely on the interview with Ms. Laura Hopkins. Ross denied each and every allegation while pointing out that her calendar will show that she was on campus every day and there was no need for anyone except the assistant Principal, was the second in charge, to sign any checks or access reporting channels. The issue of Jean Day was raised although JISD had no Policy (A policy against Jean Days was issued on May 31,2016. The Wagner staff had put Jean Day money in a fund to sponsor alternative graduation parties and post prom "safe events".) |
| May 19, 2016 | Board meeting held with Ms. Ross's non-renewal on the agenda. Several people spoke in support. |
|  | Board, by motion, voted 6-1 to not renew and authorized formal notice be sent. |

| | |
|---|---|
| May 21, 2016 | Ross requested an open hearing. |
| May 25,2016 | Notice was provided to Ross that her hearing was scheduled for June 7, 2016. |
| May 30, 2016 | JISD Attorney Russo filed claim of misrepresentation of items that are based solely on Ms. Hopkins statement or statements made by others to Ms. Hopkins |
| June 2, 2016 | Ross and JISD Exchanged exhibits for the hearing. |
| June 6 2016 | Ross objected to Russo's JISD's Exhibits 23 and 37 because they were unreliable hearsay. |
| June 7, 2016 | The hearing was rife with unconstitutional violations of due process, all the more important because Ross' was denied a constitutionally adequate hearing, upon which her career and job depended. The constitutionally deficient hearing was held-and the majority of the Board ignored the morally correct and legal thing, deprived Ross of fundamental fair play even though Ross objected repeatedly: to unreliable hearsay by a declarant with reputation for untruthfulness and acts of moral turpitude; because Board's wrongful act, JISD-HR director Irma Hernandez testified that the person who had altered official records and forged Ross' name, Hopkins was the only one who had made the allegation of a criminal action by Ms. Ross- JISD caused Hopkins, Ross' accuser-the declarant not to appear. Asst. Prin. Gomez was impeached as to existence of petty cash fund or a" pot". Gomez admitted she never saw Hopkins deposit money into a pot; she also admitted she only heard Ms. Ross make reference to a pot "once in 4years. She stated she did not know if a Principal Activity Fund existed.HR Irma Hernandez was also impeached as to Ms. Hopkins being made aware Ms. Ross's former secretary/ bookkeeper. Ms. Coggins, vehemently denied the outrageous story that Ms. Coggins had showed Ms. Hopkins how to trace Ms. Ross's signature by holding it up to window light. Board voted 5-1 to non-renew and **one member who voted with the majority did not appear**. |

**The District's wrongdoing caused Ms. Hopkins to not be available.** The Districts HR administrator proffered legal advice to Ms. Hopkins that the District could not prevent Ross from bringing criminal charges against Hopkins. District's Exhibit 37, pages 205-206. This effectively dissuaded the witness from attending live, and being subject to cross examination, on the inconsistent and discredited stories she has given. The statements should have been denied admittance. Tex R. Evid. 801(5). Consequently, not only was one of the jurors or board members who convicted Ross was missing from the vote at the hearing, but the single and only accuser of Ross refused to appear for fear of subjecting herself to perjury charges.

**Ross was subjected to discriminatory employment practices because of her race, sex, and age, when other persons outside of her protected classifications were treated more favorably than Ross.**

## CAUSE OF ACTION AGAINST DEFENDANT: DISCRIMINATION IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

Pursuant to Texas state law, Ross pleads a cause of action against JISD for sex, race and age discrimination in violation of the Texas Commission on Human Rights Act. Tex. Lab. Code § 21.051 ("TCHRA"). The allegations contained in all of the paragraphs of this Petition are hereby reaverred and realleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

JISD terminated/non-renewed Ross from her supervisory position because of her sex (female) in violation of the TCHRA. JISD effectuated this discriminatory act by and through fluid pretextual and non-specific charges of at first misappropriation of funds, and when there were no accusers who would falsely swear, JISD nimbly shifted to "performance" reasons which were unconstitutionally vague.

Ross has met all procedural prerequisites to bringing this TCHRA claim. Plaintiff filed TCHRA charges relating to these violations on June 9, 2016, and an amendment and/or second Charge on November 16, 2016. Ross has received Right to Sue letters relating to these charges. Further, Plaintiff is within all applicable statutes of limitations for bringing this civil action.

## CAUSE OF ACTION AGAINST DEFENDANT: TITLE 42 U.S.C.S. § 1983

Pursuant to Title 42 U.S.C.S. § 1983, Plaintiff Caroline Ross asserts that Defendants have violated her right to protected speech and that Defenants have retaliated against her based on her protected speech and right to association.

Ross alleges that she was deprived of her protected Constitutional interests secured by Fourteenth Amendment, specifically, Liberty and Property.

All violative acts were committed by Defendants under color of state law, and with conscious indifference to Ross' protected speech and her right to association.

## NOTICE OF REQUEST FOR DISCLOSURE

Please note that Ross hereby serves her Request for Disclosure to JISD, pursuant to Rule 194, Texas Rules of Civil Procedure, you are requested to disclose, within thirty (30) days of service of this request, the information and material described in Rule 194.2 (a) through (j).

## JURY DEMAND

Ross demands that this Court empanel a lawful jury to hear this case.

## RESERVATION OF RIGHTS

Ross specifically reserves the right to bring additional causes of action against JISD and to amend this Petition as necessary.

## DAMAGES FOR MENTAL ANGUISH

As a consequence of the foregoing facts and the willful and malicious nature of the wrongs committed against Ross, Ross has suffered and will suffer past, present and future severe mental anguish, for which she pleads to recover at trial. The damages for said mental anguish exceed the minimum jurisdictional limits of this court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Ross prays that JISD be cited to appear and to answer herein and that upon final hearing, the Court enter judgment in favor of Ross against JISD, jointly and severally, in an amount in excess of the minimum jurisdictional limits of this Court, for compensatory damages, punitive damages, reasonable attorneys' fees, reasonable paralegal fees, costs of court, and pre-and post-judgment interest at the highest rate allowed by

law, and also enter an order revoking any certificate enabling JISD's Superintendent to function as a certified public school admin in Texas and revoking any certificate authorizing Defendant to do business in Texas if any judgment rendered in this case has not been satisfied within three (3) months from the date of filing said final judgment, and for such other and further relief, general or special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

WATTS & COMPANY, LAWYERS, Ltd.

**/s/ Laurence "Larry" Watts**
Laurence "Larry" Watts
T.B.N. 20981000
P.O. Box 2214
Missouri City, Texas 77459
Tel: (281) 431-1500
Fax: (877) 797-4055
E-mail: wattstrial@gmail.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, Larry Watts certify that a true and correct copy of this document has been served on opposing counsel by electronic filing with the clerk of the court, on this the 8th day of March, 2018.

**/s/ Laurence "Larry" Watts**
Laurence "Larry" Watts

FILED
3/8/2018 9:55 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Daniela Ramos

## CAUSE NO. <u>2017-CI-09876</u>

| | | |
|---|---|---|
| **CAROLINE ROSS** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | OF |
| | § | |
| **v.** | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| **JUDSON INDEPENDENT** | § | **73ᴿᴰ JUDICIAL DISTRICT** |
| **SCHOOL DISTRICT,** | § | |
| *Defendant.* | § | **TRIAL BY JURY** |

---

### PLAINTIFF'S RESPONSE TO DEFENDANT'S PLEA TO THE JURISDICTION

---

TO THE HONORABLE DISTRICT COURT JUDGE

     NOW COMES Plaintiff, Caroline Ross, and files this, her Response to Defendant's Plea

to the Jurisdiction, and respectfully shows the following:

1. TIMELINE OF EVENTS

| | |
|---|---|
| May 19, 2016 | Board voted to non-renew Ms. Ross, subject to her challenge. |
| May 21, 2016 | Ross challenged Board's non-renewal and requested an open hearing. |
| June 7, 2016 | Hearing held. Board voted 5-1 to non-renew and one member who voted with the majority did not appear. |
| March 16, 2017 | Ms. Ross, having timely filed her Charges of Discrimination (within 180 days of the respective discriminatory acts), which charges were verified, requested a Notice of Right to file Civil Action(s) from the Texas Workforce Commission Civil Rights Division for the following charges of discrimination: EEOC CD. 451-2016-01981; EEOC CD 451-2017-00505 |

Page **1** of 24

| March 27, 2017 | Ms. Ross received a Notice of Complainant's Right to File Civil Action for EEOC Complaint 451-2016-01981 |
| May 15, 2017 | Ms. Ross receives Notice of Complainant's Right to File Civil Action for EEOC Complaint 451-2017-00505 |
| May 30, 2017 | Ms. Ross timely filed her Original petition with this Court and commenced suit within two years of the discriminatory acts. |

## 2.  SUMMARY OF ARGUMENT

Caroline Ross (Ms. Ross) is an African American woman who has devoted her entire life to education. She was employed by Defendants, Judson Independent School District, "JISD," for over 20 years, and up until her contract was terminated she received stellar praise from her students, parents, staff, administration, and community. Defendants are terrified that this case will be heard in Court because of the facts that may be brought to light. Defendants have used every tactic at their disposal including threats, intimidation, and misrepresentations to absolve themselves of responsibility and liability for their actions. The Hispanic Superintendent, Carl Montoya , Assistant Elida Bera, and members of the Board of Trustees targeted Ross because she was an outspoken supporter of former African American superintendent Willis Mackey and his programs, because she had been vigorously supported by Willis Mackey, because she opposed illegal employment practices in JISD, because of her race, for those reasons claimed by Ms. Ross in her Charge of Discrimination to the EEOC and Texas Workforce Commission. The JISD Board in conspiracy with the administration had arbitrarily manipulated the investigation of false charges against Ms. Ross, gerrymandered the facts to construct false charges against her, and sat as a partial and unfair arbiter of its own decision to non-renew her contract and defame her, in a fundamentally unfair process. When Ms. Ross asked the Commissioner of Education to review the JISD's Board's decision to non-renew her contract, **the Commissioner denied that he had jurisdiction over Ms. Ross's claims that JISD had  acted illegally, arbitrarily, and unconstitutionally against her.**

**Per the substantial evidence rule, the Commissioner accepted other of the JISD Board of Trustees's acts false claims against Ms. Ross. The JISD Board was not performing a judicial function, nor was the Commissioner of Education. Neither had jurisdiction over the issues that are relegated by the statutory scheme of Chapter 21et seq., Tex. Labor Code ("CHRA").**

Ms. Ross established jurisdiction under the CHRA by filing her (verified) Charges of Discrimination within 180 days of the identified discriminatory acts, filing her suit within 2 years of the date of those discriminatory acts, and has met her burden of establishing a *prima facie* case of discrimination by direct discrimination . The JISD's decision to non-renew her was based on reasons set out by thee Tex. Education Code, and JISD policy. JISD was not empowered to judicially determine-were it able-to determine constitutional issues, or CHRA issues. The CHRA statutory scheme is clearly the exclusive basis for determining illegal discrimination in the workplace on the basis of CHRA retaliation, race, age, color, disability and gender. The only administrative remedy which must be exhausted is that of the CHRA, and the only determinant for whether jurisdiction of this court exists over CHRA claims are filing a charge of discrimination within 180 days of the discriminatory act, receiving a right to sue or file a civil action, fling that action within 60 days of the date the right to sue was received, and that within two years of the date of the illegal, discriminatory act. The issue of whether the *McDonald Douglas* burden shift or mixed motive test for motive, is not jurisdictional. But were the existence of justificatory reasons for an adverse action to be found to exist, the motive is still not decided against the victim of discrimination, if she can demonstrate to the fact finder that others outside of the clss were treated less harshly. Ms. Ross claims that Defendant's reason(s) for termination/non-renewal of Ms. Ross's contract was a pretext for discrimination and a motivating factor in their decision.

An unfair hearing was conducted before the board regarding the non-renewal/termination of Ms. Ross's employment contract. Zealous objections were made by Ms. Ross regarding testimony that was unreliable hearsay. Defendants proffered their own exhibit where the witness admitted that she previously did not tell the truth. (How do we know she is telling the truth now?) When questioned about the veracity of the witness's statement, Defendant offered no legitimate excuse.

In fact, Defendants urged their key witness, Lauren Hopkins to not appear at the June 7, 2016 "hearing" so that she could escape cross-examination. With a faulty witness statement from a witness the Defendant's knew would not attend the hearing and a routine internal audit finding with only minor errors, Defendant's based their decision to terminate and non-renew Ms. Ross's employment contract.

Without having the ability to cross-examine the Defendant's "key" witness, Ms. Ross was not only unfairly prejudiced by the testimony, but she was effectively denied the opportunity to have key facts heard that would shed major light on the true intentions, motives, and bias behaviors that were all directed toward Ms. Ross. The collusion between several scorned employees still upset about "one of their own," Assistant Superintendent Anita Bera's demotion and a board with a shocking disregard and clear prejudice against African Americans is shameful. Each of them using their powers and positions to effect discrimination and ultimately the termination and non-renewal of Ms. Ross's contract.

Now, Defendants insist on a plea to the jurisdiction of this Court and allege that because of the hearing conducted on their turf and on their terms, Ms. Ross should be collaterally estopped from presenting her argument before the Court. Ms. Ross did not fail to exhaust her administrative remedies; instead, she followed every procedure required and is here before this Court because justice requires maintenance of this suit.

On **February 24, 2016** Superintendent Montoya of JISD wrote to Ms. Caroline Ross and stated, inter alia: "This letter is written to advise you that you will be suspended effective immediately; *pending the outcome of an investigation regarding allegations of inappropriate use and/or management of campus funds* ." (Emphasis added) Judson ISD/Ross-00705.

On **May 13, 2016** Superintendent Montoya wrote a letter to Ms. Ross and her nonlegal or nonlawyer representative stating inter alia, the following:

"This letter is written as a professional courtesy to notify you in advance of my recommendation to the Board of Trustees that your term employment contract with the District be proposed for nonrenewal at the end of the current school year, pursuant to the Texas Education Code and Board Policies. DFBB (Legal) and (Local).

"The Board of Trustees will consider the proposed nonrenewal of your term employment contract at its meeting which is scheduled for May 19, 2016. I will post the public agenda for that meeting on or about May 16., 2016. Enclosed you will find a copy of the Judson Independent School District Board policies identified above.

If you wish to consider resignation as an alternative, please contact the District's Chief Human Resources Officer, Irma Hernandez, at either (sic) 210-945-5621. Judson ISD/Ross-00993

Lauren Hopkins, JISD's key accuser against Ms. Ross, was not present at Ms. Ross' non-renewal hearing before the JISD Board on June 7, 2016. Hopkins refused to attend. Having refused to attend any meetings without her attorney and her attorney being unavailable because of the hearing being scheduled on a holiday weekend, she refused to appear and testify.

Superintendent Montoya delivered a letter to Caroline Ross on **May 19, 2016** which

stated inter alia, the following:

"Pursuant to the provisions of Section 21.206 of the Texas Education Code, JISD Board policy DFBB (Legal), JISD Board policy DFBB (Local), and Paragraph 9 of your employment contract with the Judson Independent school district, please be advised that the Board of Trustees, at the Board meeting held on May 19, 2016, voted to approve my recommendation to consider a proposed nonrenewal of your employment contract with the District. Pursuant to the instructions of the Board, **this document constitutes the Board's notification to you that your employment contract is being proposed for nonrenewal. The reasons for the proposed non-renewal found in policy DFBB are as follows: 2. Failure to fulfill duties or responsibilities. 3. Incompetency or inefficiency in the performance of duties. 6. Failure to comply with Board policies are administrative regulations. 15. Failure to meet the District standards of professional conduct. 29. Misrepresentation of facts to supervisor or other district official in the conduct of district business.** (Emphasis added) As you are probably already aware, under Section 21.207 of the Texas Education Code, policy DF BB (legal), and policy DF BB (local), you are entitled to request a hearing concerning the proposed action to non-renew your employment contract with the district. The Board has determined that any hearing on this proposed non-renewal will be conducted by the Board. As result, if you desire a hearing, you must notify the Board, in writing, not later than the fifteenth (15th) day after receiving this notice of Proposed Non-Renewal… Enclosed for your information, are copies of the following items, some of which contain information in support of the recommendation for proposed non-renewal of your employment contract with the District: Exhibit A: Copy of the written statement of Ms. Lauren Hopkins dated

February 24, 2016, a copy of which was marked as exhibit 8 and provided to you at your interview on May 9, 2016; Exhibit B: Copy of your employment contract with the district which expires at the end of the 2015-2016 school year; Exhibit C, Copy of Policy DFBB (LEGAL); Exhibit D: Copy of DFBB (LOCAL); Exhibit E: Copy of board policy DH (LEGAL); Exhibit F: Copy of board policy DH (LOCAL); Exhibit G: Copy of Board policy DH (EXHIBIT); and Exhibit H: Copy of written statement of Ms. Chanell Gomez dated April 5, 2016, a copy of which has previously been provided to your former attorney and to your current non-attorney representative. Judson ISD/Ross-00963 through 00965, Exhibit A- Exhibit H Judson ISD/Ross-00967 through 00992.

Judson ISD/Ross-01007 through 01008.

On **May 26 2016**, Lauren Hopkins was notified of the hearing before the Board of Trustees regarding the nonrenewal of Ms. Ross's contract. On May 27. 2016 Ms. Hopkins refused to participate in the hearing. Judson ISD/Ross-01007 through 01008. The denial of the opportunity for Ms. Ross to confront her accuser Hopkins, after the JISD had ostensibly worked privately with Hopkins for extended periods of time, constitutes a violation of due process. The Board of Trustees has no legal authority to issue subpoenas and Hopkins' appearance could ostensibly not be compelled. It is believed that JISD colluded with Ms. Hopkins to facilitate her from being available to give testimony or being cross-examined by Ms. Ross. Judson ISD/Ross-01007 through 008

As for JISD's witnesses for the prosecution, JISD had an obligation to disclose the names of witnesses against Ms. Ross, what though witnesses were reasonably likely to know, or have the ability to reveal in testimony, and to make those witnesses available at the hearing to satisfy Ms. Ross' rights of confrontation. JISD did not timely disclose witnesses JISD intended to call,

and would not present witnesses requested by Ross, who were subject to JISD's control.

On **June 9, 2016** JISD Superintendent Montoya notified Ms. Caroline Ross by letter of the same date as follows: "at a properly convened Board meeting held on June 7, 2016 the Judson Independent School District Board of Trustees voted to non-renew your term contract with the District…This correspondence constitutes the board's notification to you that your 2015-2016 contract with the district has been non-renewed. As a result, your employment with the district will end at the expiration of your current contract on June 21, 2016. By way of background, pursuant to the provisions of Section 21.206 of the Texas Education Code, Policy DFBB (Legal), Policy DFBB (Local) and your employment contract with the Judson Independent School District, the Board of Trustees voted to propose nonrenewal of your contract at a board meeting held on May 19, 2016, pursuant to the provisions of Section 21.207 of the Texas Education Code. **On May 20, 2016** through Irma Hernandez, as my designee, you were provided with written notice of the proposed nonrenewal. Subsequently, you requested to have a hearing before the Board, and that hearing laws (as noted above) conducted on June 7, 2016. After considering the testimony of the witnesses, the exhibits admitted before the Board and all relevant laws and district policies, a motion was made in open session to non-renew your contract with the District. The motion was seconded and passed to the vote of 5 to 1. The motion approved by the board was founded upon your performance as was provided in the notice of the proposed nonrenewal and follow-up communications. Judson ISD/Ross-00702 through 703.

On **June 21, 2016** Superintendent Montoya of JISD wrote to Doug Phillips, Director of Investigations for the Texas Education Agency regarding Carolyn Diane Ross a.k.a. Caroline Ross stating, inter alia, the following: "it is required under 19 Texas Administrative Code Section 249.14, and Texas Education Code, Section 21.006, this letter serves as a report

that the Board of Trustees for the Judson Independent School District took action to non-renew Ms. Ross's 2015-2016 term contract on June 7, 2016, *based on evidence that included the possibility of supporting a claim of abuse of official capacity under section 39.02 of the Texas Penal Code.* Ms. Ross's employment with the district will end at the expiration of her current term contract, on June 21, 2016. The Board of Trustees for Judson Independent School District has been notified that this report is being sent to the State Board for Educator Certification, as is Ms. Ross (sic)." Judson ISD/Ross-00709

In his letter of **July 7, 2016**, the Texas Commissioner of Education stated, "Please be advised that this case has been docketed as an R. 1 teacher nonrenewal under the provisions of Texas Education Code Section 21.301 et seq. (the new code). Section 21.301 of the Texas Education Code calls for Respondent [JISD] to file a Response to [Ross']Petition for Review along with the record of the local hearing within 20 days after the date the Petition for Review.." was filed with the  Commissioner." Judson ISD/Ross-00695-696.

On **July 7, 2016**, the Texas Education Agency notified Superintendent Montoya of the Judson Independent School District ("JISD") that the Commissioner of Education had docketed Ms. Ross' requested review of her contract non-renewal by JISD's Board of Education "..as docket number 052 – R1 – 06 – 2016", and the substantial evidence review or appeal to the Commissioner had been "assigned by the Commissioner of Education as a Chapter 21, Subchapter G appeal regarding the above referenced matter." s

Ross' substantial evidence review by the Texas Commissioner of Education, was unsuccessful.

The **Decision of the Commissioner of Education**, Exhibit Two to Defendant's Plea to the Jurisdiction, states, *inter alia,* the following: 1. "The central issue in this case is whether there

is substantial evidence that Petitioner [Ross] violated Respondents [JISD] pre-established reasons for nonrenewal."; 2. "A significant subsidiary issue is what effect Petitioner's failure to cite the local record and authority has on this case."; 3. "..once the district cites evidence that appears to be substantial, one would expect the teacher to come forward with the reasons why such evidence is not substantial and perhaps citations to the record that show how the district's assertions as to the facts of the case are not supported by the record as a whole."; 4. "In the present case, Petitioner's failure to cite to the record and authority in her initial brief and her failure to file a reply brief after Respondent made a prima facia case that its decision was supported by substantial evidence, results in Respondent prevailing."; 5." To the extent that Petitioner contends Respondent's decision is arbitrary capricious and unlawful, **Petitioner has failed to exhaust administrative remedies as to these claims by failing to cite to the local record and authority as to these claims.**"; 6. "**Because Petitioner has failed to properly brief her claims that the board's decision is arbitrary, capricious or unlawful, the Commissioner lacks jurisdiction over these claims due to the failure to exhaust administrative remedies.**" ; 7. "Petitioner has made claims that cannot apply when a school board holds a hearing on the proposed nonrenewal of the teacher's contract. **Numerous courts have determined that due process rights are not at stake when a term contract is nonrenewed.**"; 8. "When a school board hears a proposed nonrenewal, the hearsay rules do not apply unless the board by its own policy provides that the hearsay rules apply."; 9. " Respondent [JISD] has not so provided.";  10. " Conclusion  [.] Because petitioner failed to exhaust administrative remedies, the Commissioner lacks jurisdiction over petitioner's claims that respondent's decision to nonrenew her contract was arbitrary, capricious, or unlawful. Respondent's decision is supported by substantial evidence."; 11. " Conclusions of Law. 1. the Commissioner has jurisdiction over this case under Texas

Education Code 21.301, **except for the claims that respondent's decision is arbitrary, capricious, or unlawful.**" (Emphasis added); 12. " 2. The argument portion of a brief is required to have appropriate citations to the record and authority. 19 Tex. Admin. Code § 157. 1058 (a) (4)."; 13. " As the argument portion of Petitioner's brief lacks appropriate citations to the record and authority, **Petitioner has failed to exhaust administrative remedies as to her claims that respondent's decision to nonrenew her contract is arbitrary, capricious, or unlawful.** 19 Tex. Admin. Code § 157. 1058 (a) (4)."; 14. "4. There is no entitlement to due process protections when a term contract is nonrenewed. Tex. Educ. Code § 21.204 (e)"; and 15. " The hearsay rule does not apply when the school board conducts an evidentiary hearing concerning the nonrenewal of the term contract unless the school board's policy specifies that the hearing per se rule applies. As respondent has no such policy, the hearsay rule does not apply in the to this case. Tex. Educ. Code section 21.207 (b)."

Ross timely filed her Charge of Discrimination within 180 days of the last act of employment discrimination, and since Texas is a dual filing state, her filing was with both the EEOC and the Texas Workforce Commission/Civil Rights Division ("TWC/CRD") pursuant to the Texas Commission for Human Rights Act ("TCHRA") or Texas Labor Code, Chapter 21. Ross requested a right to sue, and filed suit within two years of her having been terminated or non-renewed by the JISD Board of Trustees, filing same within 60 days from her receipt of the right to sue, and timely serving same on Defendant.

Defendant, having been less than forthcoming and responsive to written discovery propounded by Ross, provoking a motion to compel, has filed a Plea to the Jurisdiction claiming that because Ross challenged her non-renewal, and receiving an "ostensible" evidentiary hearing-at the election of the JISD Board before the JISD Board of Trustees instead of before an

Independent Hearing Examiner appointed by the Texas Education Agency. The basis of JISD's Plea to the Jurisdiction is the claim that Ross is barred by collateral estoppel from invoking her administrative and judicial remedies under the **Texas Labor Code Chapter 21 et seq**, because she challenged the non-renewal of her term contract according to Chapter 21, §§ 21.207 and 21.208 of the Texas Education Code. JISD's Board which had decided on May 19, 2016, to non-renew Ross and accept the Superintendent's decision to non-renew her contract subject to Ross' challenge of the Board's vote to accept the Superintendent's decision to non-renew.

## 3.  STATEMENT OF FACTS

Ms. Ross relies on various of the 2006 pages of documents which have been disclosed in this case thus far, as well as on her own affidavit, verifying the facts of her Second Amended Petition. Ross is an African American woman who has served with distinction and honor as a public educator with Judson Independent School District ("JISD") for approximately 19 years. During her employment she served as Assistant Principal of several JISD schools for approximately 8 years before she was promoted to Principal and remained a Principal with JISD before she was terminated for pretextual reasons.

Race relations became an increasing problem at Judson Independent School District starting in December 2007, when the JISD Board of Directors hired Dr. Willis Mackey, an African American, as Superintendent. Not long after accepting the position, Dr. Mackey made an extremely unpopular decision within the school community by demoting long time Associate Superintendent, Elida Bera, to the position of Assistant Superintendent.

Although the decision to demote Ms. Bera by Dr. Mackey was a legitimate business decision based on lack of performance and adequate results, the community was in an uproar and racial tensions against African Americans were stirred. Quite simply, many Hispanics were

outraged because they believed Ms. Bera to be a central figure in JISD's administration who had been racially targeted by Dr. Mackey.

While demoting Ms. Bera, Dr. Mackey recognized Ms. Ross for her excellence in meeting performance goals and managing her schools. Ms. Ross received high ratings in her performance evaluations and even was praised on one of her recent evaluations for "*building a strong instructional team…. leading the school to grow once again in terms of student achievement.*"

As a recognized strong proponent of student achievement Dr. Mackey selected Ms. Ross to become the principal of a failing middle school at JISD telling her she was exactly the right candidate to facelift the school and bring the school into high-achieving status. Dr. Mackey was right, and Ms. Ross was recognized as having turned around Metzger Middle School.

Unfortunately, Ms. Ross' accomplishments were not widely accepted by members of the Hispanic staff and parents, and instead they openly chose to continue to blame Dr. Mackey for a variety of claimed wrongs and sought to tarnish Ms. Ross because she had been approved by Dr. Mackey.

Being unfairly judged and ostracized because of her approval from Dr. Mackey, many of the staff and members in the community began to make negative remarks about Ms. Ross, however her performance and Dr. Mackey's performance and results were never hindered. In fact, remarkable success was obtained for the district.

Under Dr. Mackey's leadership, JISD passed its first bond issue in nearly 7 years and increased the district's fund balance to over $40 million dollars by realizing significant savings through the refinancing of older bonds; This strategy brought in over $11 million dollars to the district.

Dr. Mackey's curriculum decisions and implementation of instructional systems was among the best in San Antonio metro area; JISD was 1 out of only 3 public school districts in the San Antonio metro area in which all campuses (elementary, middle, and high) met state and federal academic standards. Dr. Mackey's leadership, both past and present, was generally considered to be outstanding but his critics attacked him and his supporters aggressively on social media which caused increased and widespread racial divide concerning the district.

Ultimately, in April of 2014, Dr. Mackey informed the school board of JISD that he intended to retire at the end of the 2014-2015 school year. After his retirement, there was a new high school named after him in the district, but naming honor was met with extreme pushback by some in the community. Local media took note of the event and racial and negative remarks appeared on the district's Facebook and twitter account protesting Dr. Mackey and those he supported. Things came so intense that by the end of 2015, the Board for JISD decided to renege on naming the high school after the once esteemed Dr. Mackey. The train of racial tension and discrimination was picking up speed, fast.  With Dr. Mackey no longer in the way, those who were believed to be affiliated with him were now being targeted. Ms. Ross spoke out in support of dr. Mackey's programs and the educational successes his leadership had generated. But the racial hostilities being generated against President Obama nationally by small pockets of racial partisans seemed to be reflected in the campaign started in JISD against Mackey and after his departure against Ms. Ross. Clearly, there was a motivating racial hostility which ignored Mackey's educational successes, and seemed determined  to root out any memory of his administration or vestige of his good work.

Sometime in February of 2016, clearly false allegations were generated against Ms. Ross, falsely accusing her of misappropriation of funds.  Ross received the most severe punishment

available: false claims of stealing from the school; non-renewal; and termination, After 19 years of service! In Ms. Ross's situation, the hollow and fake allegations against her were never verified or supported by credible evidence.

Ms. Ross was admittedly the only JISD principal educator accused of criminal offenses. Ms. Ross was the only JISD principal or administrator terminated or nonrenewed by JISD with stigmatizing and false allegations; and JISD has pursued a pattern and practice of treating protected persons less favorably.

On or about February 23, 2016, Campus Police interviewed Ms. Ross' Secretary/bookkeeper, Laura Hopkins, regarding possible forgery. Ms. Hopkins denied knowledge of any illegal activity. On the next day, February 24, 2016, Ms. Ross was interviewed by campus police and Ms. Ross denied any wrongdoing on her part. On February 25, 2016, Ms. Ross was placed on administrative leave with pay and misappropriation of funds was named as the reason. Ms. Ross was unable to examine any records to establish proof that she did not misappropriate funds or engage in illegal activity.

On March 23, 2016, Laura Hopkins, Ms. Ross' secretary/bookkeeper, changed her tune and is now aware of the facts surrounding the campus investigation of Ms. Ross. Ms. Hopkins now asserts that she was given permission by Ms. Ross for check writing, maintained a petty cash fund, and she could use Ms. Ross's password for routine forms and check requisitions. Many of these allegations were refuted by Ms. Coggins, Ms. Ross's former secretary.

Ms. Hopkins was told by campus police that all funds were accounted for and the only criminal action toward Ms. Hopkins would come from Ms. Ross. On May 19, 2016, a board

meeting was held with Ms. Ross's non-renewal on the agenda. Several people spoke and the board voted 5-1 to "not renew" and authorized formal notice to be sent to her.

Ms. Ross appealed to the JISD Board of Trustees and requested an open hearing and the hearing was held on June 7, 2016 with several objections being timely made by Ms. Ross's counsel. The board voted 5-1 to non-renew Ms. Ross's contract.

Ms. Ross timely filed a charge of Discrimination against JISD within 180 days of her termination. Ms. Ross timely requested a right to sue from the TWC/CRD in Charge no. 451-2016-01981 and EEOC Charge no. 451-2017-00505. On May 15, 2017, Ms. Ross received her right to sue letter from the Texas Workforce Commission and suit was timely commenced with service of process in this Court within the 60-day timeframe.

In Defendant's Plea to the Jurisdiction, Defendants allege that Ms. Ross has not plead jurisdictional facts and Ms. Ross is collaterally estopped from bringing her claim.

## 4.   STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that challenges a trial court's authority to decide a case on the merits. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). To have authority to resolve a case, a court must have subject matter jurisdiction. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). A plea to the jurisdiction urges that the court lacks the power to determine the subject matter of the suit. *City of Cleburne v. Trussell*, 10 S.W.3d 407, 410 (Tex.App.-Waco 2000, no pet.). The plaintiff must plead facts which affirmatively show that the trial court has jurisdiction. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993).

Sovereign and governmental immunity from suit deprive a trial court of subject matter jurisdiction. *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). In a suit against a governmental entity, the plaintiff must prove a valid waiver of immunity from suit and must plead sufficient facts to affirmatively demonstrate the court's jurisdiction to invoke the court's subject matter jurisdiction over the claim. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Absent an allegation that the plaintiff's jurisdictional pleadings are fraudulent, the court must take the allegations in the petition as true and must construe them liberally in favor of the plaintiff when ruling on the plea. *Id.*  However, a trial court is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.  *Bland Independent School Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000).

## 5.   ARGUMENTS AND AUTHORITIES

### A.  MS. ROSS HAS EXHAUSTED ALL ADMINISTRATIVE REMEDIES REQUIRED AND HAS RECEIVED HER "RIGHT TO SUE" LETTER

Chapter 21 of the Labor Code deals with employment discrimination. Tex.Lab. Code Ann. §§ 21.001-.306 (Vernon 1996 & Supp.2002). The general purposes of the Commission on Human Rights Act (CHRA) are set forth in section 21.001. Id.§21.001. One purpose of the CHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments (42 U.S.C. Section 2000e et seq.)." Id. §21.001(1). A second purpose of the CHRA is to "secure for persons in this state, including persons with disabilities, freedom from discrimination in certain employment transactions, to protect their personal dignity." Id. §21.001(4). The types of employment discrimination the CHRA is designed to suppress are defined in section 21.051 of the Labor Code. That section provides:

An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1)  fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2)  limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

*Id.* § 21.051.

The CHRA establishes a comprehensive administrative review system to carry out the policies embodied in Title VII. The Supreme Court noted that an important policy of Title VII is exhaustion of administrative remedies prior to litigation. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 487 (Tex.1991). In furtherance of that policy, the CHRA created the Commission on Human Rights (Commission) and described its powers. Tex. Lab.Code Ann. § 21.003.   The Commission has the power to "receive, investigate, seek to conciliate, and pass on complaints alleging violations" of the CHRA. Id. §  21.003(a)(2). While investigating the Commission has the power to subpoena witnesses for examination and request production of relevant documents and records as evidence. *Id.* §  21.003(a)(4).

Under section 21.201 of the CHRA, a person claiming to be aggrieved by an unlawful employment practice may file a complaint with the Commission. Such a complaint must be filed within 180 days after the date the alleged practice occurred.  *Id.* §21.201(g). A complaint filed later than the 180th day after the date the alleged unlawful employment practice occurred will be dismissed as untimely. *Id.* §21.202.   After the complaint is filed, the Commission is required to investigate that complaint and determine if there is reasonable cause to believe that the employer engaged in an unlawful employment practice as alleged in the complaint. *Id.* §21.204.  If it finds

that there is reasonable cause, the Commission must try to eliminate the unlawful employment practice by "informal methods of conference, conciliation, and persuasion." *Id.* §21.207(a).

The CHRA's administrative review system also provides for judicial enforcement.   If the Commission finds reasonable cause to believe that an unlawful employment practice has occurred, and if efforts to resolve the matter through "informal methods" have been unsuccessful, the Commission may bring a civil action against the employer. Id. §21.251.   If the Commission dismisses the complaint, or if within 180 days after the complaint was filed the Commission has not filed a civil action or successfully negotiated a reconciliation agreement, the Commission must so inform the aggrieved employee. Id. §21.208. After receiving such notice, the complainant may request from the Commission a written notice of the complainant's right to file a civil action. Id. §21.252.   If the right-to-sue notice is given, the complainant has 60 days to bring a civil action against his employer.

Here, in the instant case, Ms. Ross has satisfied and exhausted all administrative remedies. Her complaint was filed timely and she received the right-to-sue notice and timely brought this action before the Court.

### B.  MS. ROSS IS NOT COLLATERALLY ESTOPPED FROM PURSUING HER DISCRIMINATION CLAIM.

When the Legislature creates an administrative agency, it may grant the agency authority to resolve disputes that arise within the agency's regulatory arena. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). If the Legislature expressly or impliedly grants an agency sole authority to make an initial determination in such disputes, the agency has exclusive jurisdiction, and a party must exhaust its administrative remedies before seeking recourse through judicial review. *Id*. If the party files suit before exhausting exclusive administrative remedies, the courts

lack jurisdiction and must dismiss the case. *Rhule*, 417 S.W.3d at 442; see also *Essenburg v. Dallas Cty.*, 988 S.W.2d 188, 189 (Tex. 1998).

The requirement that parties exhaust administrative remedies does not deprive parties of their legal rights. *Rhule*, 417 S.W.3d at 442; see TEX. EDUC. CODE § 7.057(b) (stating that an administrative appeal to the Commissioner of Education "does not deprive any party of any legal remedy"). Instead, it honors the Legislature's intent that the appropriate body adjudicates the dispute first, *Essenburg*, 988 S.W.2d at 189, and thereby ensures an orderly procedure to enforce those rights. *Rhule*, 417 S.W.3d at 442.

By requiring the agency to address the complaints first, the law permits the agency to apply its expertise and exercise its discretion to resolve the issue and to develop a complete factual record if the courts later get involved. See *McKart v. United States*, 395 U.S. 185, 194 (1969); see also Kenneth Culp Davis, Administrative Law Doctrines of Exhaustion of Remedies, Ripeness for Review, and Primary Jurisdiction: 1, 28 TEX. L. REV. 168, 169 (1949) ("Premature judicial intervention may defeat the basic legislative intent that full use should be made of the agency's specialized understanding within the particular field."). A party who obtains relief through the administrative process avoids the expense and delay of litigation. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006); McKart, 395 U.S. at 195. And if the outcome of the administrative process leaves the party dissatisfied, it may file suit and have the courts review the agency's decision. *Tex. Water Comm'n v. Dellana*, 849 S.W.2d 808, 810 (Tex. 1993).

### C. MS. ROSS HAS SATISFIED MCDONNEL DOUGLAS BURDEN-SHIFTING FRAMEWORK

Sovereign immunity deprives a trial court of jurisdiction over lawsuits in which a party sues a school district unless the school district's sovereign immunity has been waived. *Mission*

*Consol. Indep. Sch. Dist v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). The Human Rights Act clearly and unambiguously waives immunity for suits brought against school districts under this statute. Tex. Lab. Code Ann. §§ 21.002(4), 21.002(8)(D), 21.051, 21.254 (West, Westlaw through 2015 R.S.); Garcia, 372 S.W.3d at 636. But, the Legislature has waived immunity only for those suits in which the plaintiff alleges a violation of the Human Rights Act by pleading facts that state a claim thereunder. See Tex. Lab. Code Ann. §§ 21.002(4), 21.002(8)(D), 21.051, 21.254; Garcia, 372 S.W.3d at 636–37.

There are two alternative methods by which a plaintiff may establish a discriminatory treatment case. The first is by proving discrimination through direct evidence of what the defendant did and said. *Garcia*, 372 S.W.3d at 634. Direct evidence of discrimination is evidence that, if believed, proves the fact of discrimination animus without inference or presumption. *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 653–54 (Tex. App.—Dallas 2012, no pet.); see also *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). If an inference is required for the evidence to be probative as to the employer's discriminatory animus in making the employment decision, the evidence is circumstantial, not direct. *Jespersen*, 390 S.W.3d at 653–54; see also *Sandstad*, 309 F.3d at 897–98. Courts have tended to find that insults or slurs against a protected group constitute direct evidence of discrimination. *Jespersen*, 390 S.W.3d at 654.

Statements and remarks may serve as direct evidence of discrimination only if they are (1) related to the employee's protected class, (2) close in time to the employment decision, (3) made by an individual with authority over the employment decision, and (4) related to the employment decision at issue. *Reyes*, 272 S.W.3d at 593; *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 644 (Tex. App.—Houston [1st Dist.] 2015, no pet.). If the alleged workplace comment does not meet these four requirements, the comment is treated as a "stray remark" that, standing alone,

is insufficient to establish discrimination. *Reyes*, 272 S.W.3d at 592; *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010).

However, because direct evidence of discriminatory motive is usually hard to come by, the courts created a second method, the burden-shifting mechanism of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Garcia*, 372 S.W.3d at 634. Under this approach, discrimination is presumed if the plaintiff meets an initial burden of establishing a prima-facie case of discrimination. *Id*. A plaintiff proceeding under the McDonnell Douglas approach must meet the requirement of the prima-facie case for the trial court to have jurisdiction. *Id*. at 637. The failure to present the elements of a prima-facie case means the trial court has no jurisdiction and the claim must be dismissed. *Id*.

While such a plaintiff must sufficiently plead the prima facie case of her statutory claim, she will be required to submit evidence only if the defendant presents evidence negating one of those basic facts. See *id*. In this situation, failure to raise a fact issue on a challenged element of the prima facie case means that the trial court has no jurisdiction and the claim should be dismissed. See *id*. In the absence of direct evidence of discrimination, the elements of a prima facie case of discrimination are that Ms. Ross: (1) is a member of a protected class, (2) was qualified for her position, (3) was subject to an adverse employment decision, and (4) was treated less favorably than similarly situated persons not in the protected class. *College of the Mainland v. Glover*, 436 S.W.3d 384, 393 (Tex. App.–Houston [14th Dist.] 2014, pet. denied).

The Supreme Court of Texas has concluded that "employees are similarly situated if their circumstances are comparable in all material respects." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). The United States Court of Appeals for the Fifth Circuit has

articulated a similar standard, saying that employees are similarly situated if their circumstances are "nearly identical." *Perez v. Tex. Dep't of Criminal Justice, Institutional Div.*, 395 F.3d 206, 213 (5th Cir.2004).

Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct. To prove discrimination based on disparate discipline, the disciplined and undisciplined employees' misconduct must be of "comparable seriousness." Although "precise equivalence in culpability between employees is not the ultimate question," the Fifth Circuit has held that to prove discrimination based on disparate discipline, the plaintiff must usually show "that the misconduct for which member of protected class was discharged was nearly identical to that engaged in by a non-protected class employee whom the company retained." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917–18 (Tex.2005).

Here, in the instant case Ms. Ross is an African American which means she is a member of a protected class. Exhibit _ She also was qualified for her position as she had been employed with the district for approximately 19 years and during her tenure helped revitalize and grow the district. Exhibit _She received official notice that her employment contract was being terminated and non-renewed Exhibit_ and in her Petition to this Court, she described numerous instances of similar situated employees that received more favorable treatment. Exhibit_

## 6. CONCLUSION

Plaintiff is not collaterally estopped from bringing her claim because the JISD Board of Trustees did not have and was not authorized to exert jurisdiction over state or federal Constitutional claims, and/or CHRA claims. Further, The Commissioner of Education conceded

that to the limited extent he apprehended Ms. Ross' Constitutional claims, he had no jurisdiction

over either 14th Amendment US Constitution, Section One Article 19 Texas Constitution,

claimed arbitrary and illegal actions of the JISD. There has been no clear pronouncement of

jurisdiction by either the JISD or Commissioner of Education over any CHRA matter, including

discriminatory motive by JISD functionaries. Ms. Ross timely filed her charge of discrimination,

exhausted all required administrative remedies, received her right to sue letter, and timely filed

her suit herein. JISD's plea to the Jurisdiction should be in all respects denied.

Respectfully submitted,

WATTS & COMPANY,
LAWYERS, Ltd.

/s/ Laurence "Larry" Watts
Laurence "Larry" Watts
T.B.N. 20981000
P.O. BOX 2214
Missouri City, Texas 77459
Tel: (281) 431-1500
Fax: (877) 797-4055
Email: wattstrial@gmail.com

## CERTIFICATE OF SERVICE

I certify that on March 8, 2018, I served a true and correct copy of the above and foregoing
Plaintiff's Response to Defendant's Plea to the Jurisdiction by the clerks electronic filing
scheme.
WALSH GALLEGOS TREVINO
RUSSO & KYLE, PC
100 NE LOOP 410, SUITE 900
SAN ANTONIO, TEXAS 78216

/s/ Laurence "Larry" Watts
Laurence "Larry" Watts

FILED
3/16/2018 4:16 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Cynthia Gonzales

CAUSE NO. <u>2017-CI-09876</u>

| | | |
|---|---|---|
| **CAROLINE ROSS** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | OF |
| | § | |
| v. | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| **JUDSON INDEPENDENT** | § | **73RD JUDICIAL DISTRICT** |
| **SCHOOL DISTRICT,** | § | |
| *Defendant.* | § | |

---

**PLAINTIFF'S SUPPLEMENTAL RESPONSE TO
DEFENDANT'S PLEA TO THE JURISDICTION**

---

TO THE HONORABLE DISTRICT COURT JUDGE

NOW COMES Plaintiff, Caroline Ross, and files this, her Supplemental Response to Defendant's Plea to the Jurisdiction, and respectfully shows the following:

**I. ARGUMENTS AND AUTHORITIES**

**A. MS. ROSS IS NOT COLLATERALLY ESTOPPED FROM PURSUING HER DISCRIMINATION CLAIM.**

If Ross is not required to exhaust her Texas Education Code remedies, then she should not be collaterally estopped from bringing them under the Labor Code. If the Texas labor code and the Texas Education Code are not exclusive remedies, then Ross should not be collaterally estopped from bringing her claims under the Labor Code. Ross is neither required to exhaust her Texas Education Code remedies nor are the Texas Labor Code and the Texas Education Code exclusive remedies, therefore Ross should not be collaterally estopped from bringing her claims under the Labor Code. Thematically, exhaustion of Texas Education Code remedies and the exclusivity of those remedies are inextricably intertwined and would be necessary elements of a claim for collateral estoppel.

Page 1 of 10

By requiring the agency to address the complaints first, the law permits the agency to apply its expertise and exercise its discretion to resolve the issue and to develop a complete factual record if the courts later get involved. See *McKart v. United States*, 395 U.S. 185, 194 (1969); see also Kenneth Culp Davis, Administrative Law Doctrines of Exhaustion of Remedies, Ripeness for Review, and Primary Jurisdiction: 1, 28 TEX. L. REV. 168, 169 (1949) ("Premature judicial intervention may defeat the basic legislative intent that full use should be made of the agency's specialized understanding within the particular field."). A party who obtains relief through the administrative process avoids the expense and delay of litigation. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006); McKart, 395 U.S. at 195. And if the outcome of the administrative process leaves the party dissatisfied, it may file suit and have the courts review the agency's decision. *Tex. Water Comm'n v. Dellana*, 849 S.W.2d 808, 810 (Tex. 1993).

Collateral estoppel applies to administrative agency orders when the agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate. *Nairn v. Killeen Independent School Dist.*, 366 S.W.3d 299, 247 (Tex.App—El Paso 2012). "Collateral estoppel, also known as issue preclusion, prevents re-litigation of particular issues already resolved in a prior suit. A party asserting collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action, (2) those facts were essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action. To invoke collateral estoppel on the basis of a prior administrative order, a party must show the administrative agency was acting in a judicial capacity and had jurisdiction to resolve the disputed issues of fact, which the parties had an adequate opportunity to litigate." *Walker v. Hitchcock Independent School District* (Tex.App.—Houston [1st District] 2013)(internal citations omitted).

Page **2** of **10**

When the Legislature creates an administrative agency, it may grant the agency authority to resolve disputes that arise within the agency's regulatory arena. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). If the Legislature expressly or impliedly grants an agency sole authority to make an initial determination in such disputes, the agency has exclusive jurisdiction, and a party must exhaust its administrative remedies before seeking recourse through judicial review. *Id.* If the party files suit before exhausting exclusive administrative remedies, the courts lack jurisdiction and must dismiss the case. *Rhule*, 417 S.W.3d at 442; see also *Essenburg v. Dallas Cty.*, 988 S.W.2d 188, 189 (Tex. 1998).

The requirement that parties exhaust administrative remedies does not deprive parties of their legal rights. *Rhule*, 417 S.W.3d at 442; see TEX. EDUC. CODE § 7.057(b) (stating that an administrative appeal to the Commissioner of Education "does not deprive any party of any legal remedy"). Instead, it honors the Legislature's intent that the appropriate body adjudicates the dispute first, *Essenburg*, 988 S.W.2d at 189, and thereby ensures an orderly procedure to enforce those rights. *Rhule*, 417 S.W.3d at 442.

Whether a regulatory scheme is an exclusive remedy depends on whether the Legislature intended for it to be the exclusive means. *City of Waco v. Lopez*, 259 S.W.3d 147, 153 (Tex. 2008) (internal citations omitted). "The Code Construction Act provides guidance on the extent to which the provisions of two state statutes can concurrently operate when they overlap: (a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both. (b) If [a] conflict between [a] general provision and [a] special ... provision is irreconcilable, the special ... provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail."

Ross contends that the remedies afforded by Chapter 21 of the Labor Code and Chapter 21 of the Texas Education Code can concurrently operate and should be construed so that effect is given to both. *Lowery*, *Vela*, *Sharyland*, and *Edwards* all support the position that a plaintiff is not required to exhaust her administrative remedies under the education code, if they have already exhausted their administrative remedies under the labor code. Exhaustion of remedies under the education code does not preclude plaintiff's statutory right to pursue claims under the Texas labor code.

"In *Vela v. Waco Independent School District,* our sister court explicitly rejected the dual-exhaustion requirement, holding that it was unnecessary for a school district employee "to pursue two administrative schemes, one under the [Act] and the other under the Education Code, before seeking relief in the courts." 69 S.W.3d 695, 702 (Tex. App.-Waco 2002, pet. withdrawn). The holding in *Vela* was predicated on the court's determinations that (1) unlike the education code, the Act contains specific statutes that address discrimination by an employer; and (2) a school district employee's discrimination claim under the Act does not pertain to the administration of school laws. *Id.* at 701. We are persuaded by the logic in *Vela* and conclude that Lowery's discrimination claim does not concern the administration of school laws." *Austin I.S.D. v. Lowery,* 212 S.W.3d 827, 832 (Tex. App.-Austin 2006, pet. denied).

A plaintiff is not required to exhaust her administrative remedies under the education code, if they have already exhausted their administrative remedies under the labor code. *Sharyland Independent School District v. Molina*, No. 13-12-00625-CV memorandum opinion (Tex.App.—Corpus Christi, Sept. 19, 2013) (following the Waco and Beaumont Courts) (internal citations omitted).

"[W]e believe it to be unnecessary for Vela to pursue two administrative review schemes, one under the CHRA and the other under the Education Code, before seeking relief in the courts. Administrative review under the CHRA is "mandatory" and "exclusive" when a school district employee asserts a claim under that Act." *Vela v. Waco Indep. Sch. Dist., 69 S.W.3d 695, 702 (Tex.App.—Waco* 2002, pet. withdrawn).

It is the Legislature's intent that work-related discrimination claims that fall within the purview of the TCHRA be subject only to the administrative remedies in the TCHRA. *Port Arthur Indep. Sch. Dist. v. Edwards*, No. 09-11-00628-CV, 2012 Tex. App. LEXIS 1189 *6 (Tex.App.—Beaumont Feb. 16, 2012) (internal citations omitted).

*Nairn v. Killeen Independent School District*, is readily distinguishable because it does not involve a plaintiff who has exhausted their administrative remedies under the labor code. *Nairn v. Killeen Independent School District, 366 S.W.3d 229, 248 (Tex. App.-El Paso 2012, no pet.).*

Here, Defendant is contending that that the Commissioner of Education, through the Texas Education Code, has more jurisdiction than the legislature has given to the Commissioner. Here Defendant wants to deprive the Plaintiff of the very explicit statutory rights that the legislature laid out for her, in the Ch. 21 of the labor code, and offer her only the limited and less impartial process afforded by the Texas Education Code.

If Ross is not required to exhaust her Texas Education Code remedies, then she should not be collaterally estopped from bringing them under the Labor Code. If the Texas labor code and the Texas Education Code are not exclusive remedies, then Ross should not be collaterally estopped from bringing her claims under the Labor Code. Ross is neither required to exhaust her Texas Education Code remedies nor are the Texas Labor Code and the Texas Education Code exclusive remedies, therefore Ross should not be collaterally estopped from bringing her claims under the

Page **5** of **10**

Labor Code. Thematically, exhaustion of Texas Education Code remedies and the exclusivity of those remedies are inextricably intertwined and would be necessary elements of a claim for collateral estoppel. The Court should deny Defendant's plea to the jurisdiction.

### B. MS. ROSS HAS NOT BEEN AFFORDED THE MINIMUM REQUIREMENTS OF DUE PROCESS UNDER THE U.S. AND TEXAS CONSTITUTION

#### 1. Under the Facts of the case, Ms. Ross was deprived of Due Process under the U.S. Constitution

Ross was deprived of her constitutional right to procedural due process when she was afforded a hearing lacking in impartiality. People seeking to stand on their due process rights must have a hearing. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). And, of course, an impartial decision maker is essential. "We agree with the District Court that prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker. He should not, however, have participated in making the determination under review." *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970) (internal citations omitted). On May 19, 2016, the board meeting with Ms. Ross' non-renewal on the agenda was held. Plaintiff's Second Amended Complaint. P. 7. The board voted 6-1 to not renew, taking a position on termination prior to the hearing. *Id*. The timing of events is peculiar to say the least and should be deemed a breach of procedural due process to vote on a decision before a hearing.

Ross was deprived of her constitutional right to procedural due process when she was not allowed an opportunity to confront adverse witnesses. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). On June 7, 2016, Ross and JISD Exchanged exhibits for the hearing. Plaintiff's Second Amended Complaint. P. 7. Ross

objected to Russo's JISD's Exhibits 23 and 37 because they were unreliable hearsay. *Id.* "Exhibit 23" contains highly prejudicial statements obtained by JISD with the very apparent purpose of pursuing adverse action against Ross. See Exhibit A, Attached hereto to Plaintiff's supplemental brief in response to Defendants Plea to the Jurisdiction. Further, Ross alleges that a JISD employee interfered with Ross ability to call Laura Hopkins as a witness to her allegations in "Exhibit 23". Plaintiff's Second Amended Complaint. P. 7. These actions are egregious violations by government actors on the constitutional rights of citizens, because the governmental process did not allow the Plaintiff to confront and cross examine adverse witnesses.

**"The District's wrongdoing caused Ms. Hopkins to not be available.** The Districts HR administrator proffered legal advice to Ms. Hopkins that the District could not prevent Ross from bringing criminal charges against Hopkins." District's Exhibit 37, pages 205-206. This effectively dissuaded the witness from attending live, and being subject to cross examination, on the inconsistent and discredited stories she has given. The statements should have been denied admittance. Tex R. Evid. 801(5). Consequently, not only was one of the jurors or board members who convicted Ross was missing from the vote at the hearing, but the single and only accuser of Ross refused to appear for fear of subjecting herself to perjury charges." Plaintiff's Second Amended Complaint. P. 7. Here, the inability of the Board to issue a subpoena was fatal to Ross being able to stand on her full constitutional procedural due process rights. If these issues were being resolved by a trial court, this would not be an issue.

"Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence

consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots." *Greene v. McElroy*, 360 U.S. 474, 496 (1959).

Ross was deprived of her constitutional right to procedural due process when she was not allowed an opportunity to confront adverse witnesses. Ross was deprived of her constitutional right to procedural due process when she was afforded a hearing lacking in impartiality. The Court should deny Defendant's plea to the jurisdiction.

**2. Texas Education Code §21.204(e) is facially unconstitutional under the U.S. Constitution**

The U.S. Constitution protects a broad range and variety of liberty and property interests. "While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes …the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. The established doctrine is that this liberty may not be interfered with, … by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect." *Meyer v. Nebraska*, 262 U.S. 390, 399-400 (1923) (internal citations omitted).

Texas Education Code §21.204(e) is facially unconstitutional under the U.S. Constitution. "A teacher does not have a property interest in a contract beyond its term." Tex. Educ. Code §21.204(e).   However, this is contrary to a long line of precedence from the U.S. supreme court.

"Relevant constitutional restraints apply to the discharge from public employment." *Goldberg v. Kelly*, 397 U.S. at 263. "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be condemned to suffer grievous loss, and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication." *Id.*

"It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests— especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (internal citations omitted). The Court has also made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 -570 (1972).

The existence of a legitimate constitutional property interest in the renewal of her annual contract entails the "sword and shield" of the aforementioned procedural due process rights. The specifically alleged failings of JISD are not only statutory shortcomings, but constitutional as well. Insofar as Ross has not been afforded the floor of constitutional procedural due process, this bolsters her contention that she would be collaterally estopped from asserting her statutory rights under Chapter 21 of the Texas Labor code.   The Court should deny Defendant's plea to the jurisdiction.

## II. CONCLUSION & PRAYER

Plaintiff is not collaterally estopped from bringing her claim because she exhausted all the required administrative remedies and received her right to sue letter. Her exercise of exhausting her administrative remedies does not preclude her or waive her legal right to sue in this Court.

JISD's board sat as a partial and unfair arbiter of its own decision to non-renew her contract and defame her. JISD's board did not afford Ms. Ross the minimum floor of procedural due process that the State must provide according to the U.S. and Texas Constitutions. Plaintiff's pleadings have adequately alleged jurisdictional facts and a prima facie case for discrimination has been made. The Court should deny Defendant's Plea to the Jurisdiction and grant the Plaintiff such other relief in law or equity as the Court may deem appropriate.

Respectfully submitted,

WATTS & COMPANY, LAWYERS, Ltd.

/s/ Laurence "Larry" Watts
Laurence "Larry" Watts
T.B.N. 20981000
P.O. BOX 2214
Missouri City, Texas 77459
Tel: (281) 431-1500
Fax: (877) 797-4055
Email: wattstrial@gmail.com

## CERTIFICATE OF SERVICE

I certify that on March __, 2018, I served a true and correct copy of the above and foregoing Plaintiff's Response to Defendant's Plea to the Jurisdiction by the clerks electronic filing scheme.

WALSH GALLEGOS TREVINO
RUSSO & KYLE, PC
100 NE LOOP 410, SUITE 900
SAN ANTONIO, TEXAS 78216

D. CRAIG WOOD
cwood@wabsa.com
KATIE E. PAYNE
kpayne@wabsa.com

/s/ Laurence "Larry" Watts
Laurence "Larry" Watts

Page **10** of **10**



JUDSON INDEPENDENT SCHOOL DISTRICT

## WITNESS STATEMENT

| School: Metzger MS | Date of Statement: 2/24/16 |
|---|---|
| Name of Employee or Student Preparing this Statement: Lauren Hopkins ||
| Position of Employee: Secretary | Grade: |
| Date of Incident: 2/24/16 | Time of Incident: 9:15Am |
| Description of Incident: ||

*Please include a detailed description of the incident and a detailed description of other students, employees, or parents who may have witnessed the incident. Identify individuals with names when possible. Use additional paper if necessary.*

Since April 2015 I have not signed any checks on Ms. Ross's behalf. I purchased a signiture stamp for Ms. Ross + all APs. I have used the stamp for checks a few times since. I have never signed any type of district document using her signiture.

The last time I approved forms was yesterday 2/22/16 from her computer. I approved a few request to spend funds. If I remember correctly it was for Coach Pogue to go to Sams + a Music and Arts for Band. I have confided in Ms. Debra Stephens on several occassions asking how I get my boss to approve her own forms. Ms. Stephens has always told me I have to stop. Ms. Ross would never ~~do~~ it and always asked+ gave me no choice but to approve all forms.

Signature: _____  Note: Notary not required.

Lauren Hopkins

EXHIBIT
A

2015-2016



**JUDSON INDEPENDENT SCHOOL DISTRICT**

## WITNESS STATEMENT

| School: Metzger MS | Date of Statement: 2/24/16 |
|---|---|
| Name of Employee of Student Preparing this Statement: Lauren Hopkins | |
| Position of Employee: Secretary | Grade: |
| Date of Incident: 2/24/16 | Time of Incident: 9:15 AM |
| Description of Incident: | |

*Please include a detailed description of the incident and a detailed description of other students, employees, or parents who may have witnessed the incident. Identify individuals with names when possible. Use additional paper if necessary.*

Before leaving Metzger today 2/24/16 I pulled Ms. Ross from a meeting to inform her that I was asked to come speak to Ms. Bera. Ms. Ross replied "Lauren you have to tell them you signed the checks" and I didnt know anything about them because you know they are out to get me and I will have your back" She also mentioned "nothing will happen to you, you will get a slap on the hand like I always get" This is my first secretary job & feel very confident with what I do. I only know whats ok and not ok from what Ms. Ross has taught me along with Ms. Coggins. I have always done what was asked of me to meet Ms. Ross's expectations as my direct supervisor, and her secretary.

Signature: _____ Note: Notary not required.

*Lauren Hopkins*

2015-2016



### JUDSON INDEPENDENT SCHOOL DISTRICT

### WITNESS STATEMENT

| School: Metzger MS | Date of Statement: 2/24/16 |
|---|---|
| Name of Employee or Student Preparing this Statement: Lauren Hopkins | |
| Position of Employee: Secretary to Principal | Grade: |
| Date of Incident: 2/24/16 | Time of Incident: 9:15 Am |
| Description of Incident: | |

*Please include a detailed description of the incident and a detailed description of other students, employees, or parents who may have witnessed the incident. Identify individuals with names when possible. Use additional paper if necessary.*

On 2/23/16 I was questioned by Lt. Callahan regarding signitures on checks. I was terrified and did not know the situation would turn out so huge. I mentioned "All checks are signed by Ms. Ross." When realizing loyalty was no longer a good thing I told Ms. Bena and Chief Ramon that yes I did sign Ms. Ross's name on the checks because there was a clear understanding + knowledge that I signed checks by Ms. Ross. Ms. Ross would tell me it was OK to sign when she wasn't present. I also mentioned to Ms. Bena + Cheif that Ms. Ross gave me the athority to approve AESOP, Eduphoria, E-finane Plus, + monitor her e-mail on her behalf. Her last password was Tony1234#

Signature: Lauren Hopkins    Note: Notary not required.

**EXHIBIT** 2015-2016 23



## WALSH GALLEGOS
### TREVIÑO RUSSO & KYLE P.C.

March 21, 2018

Ms. Donna Kay McKinney                    *Via Electronic Filing*
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas 78205-3411

      Re:     Cause No. 2017-CI-09876, *Caroline Ross v. Judson Independent School District*; In the District Court, 73rd Judicial District, Bexar County, Texas

Dear Ms. McKinney:

Please allow this to serve as our firm's request for a copy of the Court's docket sheet and a copy of the entire pleadings filed in the above-referenced case, including any Judge's notes on file. Please contact my office with the total amount due and when the documents are ready. Defendant's deadline to remove this matter is April 9, 2018; however, we respectfully request that this request be expedited.

Thank you for your cooperation and assistance in this matter. Meanwhile, if you should have any questions, please contact me immediately at (210) 979-6633.

                              Sincerely,

                              */s/ D. Craig Wood*
                              D. Craig Wood
                              Katie E. Payne

KEP/arm

cc:     Dr. Carl Montoya, Superintendent, *By E-mail*
        Mr. Jose Elizondo, Chief Financial Officer, *By E-Mail*
        Mr. Marco Garcia, Chief Human Resources Officer, *By E-Mail*
        Ms. Monica Rodriguez, Director of Employee Relations, *By E-Mail*

### Certificate of Service

I hereby certify that on March 21, 2018, a true and correct copy of the above and foregoing was electronically filed pursuant to the TEXAS RULES OF CIVIL PROCEDURE, which provides electronic service to counsel of record if the email address of the attorney to be served is on file. Additionally, a copy of the foregoing pleading was served upon counsel of record as set out below:

Mr. Laurence "Larry" Watts
WATTS & COMPANY, LAWYERS, Ltd.
P.O. Box 2214
Missouri City, Texas 77459
wattstrial@gmail.com

                        */s/ D. Craig Wood*
                        D. CRAIG WOOD