**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **CAROLINE ROSS**, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| **JUDSON INDEP. SCH. DIST.,** | § | CIVIL ACTION NO. SA-18-CV-269 |
| **DR. CARL A. MONTOYA,** | § | |
| **ELIDA BERA, DR. MELINDA** | § | |
| **SALINAS, RENEE** | § | |
| **PASCHALL, and RICHARD** | § | |
| **LAFOILLE**. | § | |
| *Defendant.* | § | |

---

**PLAINTIFF'S JOINT RESPONSE TO DEFENDANTS' MOTION TO STRIKE**
**AND PLAINTIFF'S MOTION FOR LEAVE TO EXCEED PAGE LIMITS IN**
**HER RESPONSES TO DOCKET #32 FILED SEPTEMBER 6, 2019**

---

TO THE HONORABLE JUDGE OF SAID COURT:

 COMES NOW, Plaintiff, Caroline Ross ("Ross" or "Plaintiff"), by and through her attorney Larry Watts ("Watts"), files this Joint Response to Defendants' Motion to Strike and Plaintiff's Motion to Exceed page limit *after the fact of having filed her 102 page* Response to Defendants' Plea to the Jurisdiction and Motion for Summary Judgment, *inadvertently* without having filed a Motion for Leave to Exceed the 20 Page Limit; and in support hereof, Ross would show the following:

**FACTUAL BACKGROUND OF CASE**

1. Judson Independent School District ("Judson" or "JISD") is a minority-majority school district in Bexar County; however its professional staff has historically been primarily composed of the White race.

2. Ross (an African American female in her fifties) was employed as an administrator in JISD for approximately 19 years until she was involuntarily separated from her employment on June 7, 2016.

3. Judson's first African American Superintendent was Dr. Willis R. Mackey, who

1

served as Judson's Superintendent until he announced his retirement during the 2014-2015 school year and was replaced by Dr. Carl Montoya.

4. Mackey's Associate Superintendent was Nancy Robinson (White) who was also affiliated with Trinity University's College of Education.

5. When Mackey accepted the position as Superintendent of JISD, he hired on an interim basis retired "Plaquemine Parish, Louisiana" Superintendent Marty Bera, who was also employed on an interim basis in San Antonio Independent School District's ("SAISD") HR Department.

6. It was widely reported that Marty Bera agreed to hire Mackey's wife in the SAISD, if Mackey would hire Elida Bera, Marty Bera's wife as Assistant Superintendent in JISD.

7. Elida Bera was hired by the JISD as Mackey's Assistant Superintendent, one step below Nancy Robinson's position as Associate Superintendent, and given supervisory responsibility over the secondary Principals of JISD.

8. In approximately 2014, Mackey was also prompted by Elida Bera to hire Irma Hernandez ("Hernandez"), a friend of Marty and Elida Bera's from SAISD, as the JISD Director of HR.

9. Elida Bera ("Bera") resented Mackey for favoring African American staff members, especially Ross, and treating Hispanic Principals less favorably than he treated Ross; specifically, Bera resented Mackey's discipline of then JISD Middle School Principal Dr. Melinda Salinas ("Salinas"), daughter of Judson Board member Arnoldo Salinas.

10. Salinas resigned as Principal and was elected to serve as a member of the JISD Board of Trustees along with her father, Arnoldo Salinas. Both Salinas and her father were on the JISD Board and voted to non-renew Ross.

11. This is an employment related case arising out of Superintendent Dr. Carl Montoya's ("Montoya") suspension of Judson ISD Metzger Middle School ("Metzger") Principal Ross on February 24, 2016, JISD Board's decision to non-

renew Ross on May 19, 2016-subject to Ross's challenge of that decision on June 7, 2016.

**12.** Bera had at her instance the authority to review the audits of each school's, including Metzger checking accounts,

**13.** While Montoya made the recommendation on May 19, 2016 to non-renew Ross, he was prompted to make that recommendation by Bera and Hernandez, and would not have made that recommendation but for the representations of Bera and Hernandez.

**14.** Ross was suspended because Metzger's Secretary-Bookkeeper Lauren Hopkins ("Hopkins") had signed Ross' name as a counter signature to 16 Metzger checks during the 2014-2015 school year, and an investigation of Hopkins' signing Ross' name was commenced on or about Febryary 24, 2016.

**15.** On February 24, 2016, while Ross attended a Principal's meeting at the JISD Central office being conducted by Bera, Hopkins was suddenly confronted in her Metzger school office by Judson Police Officer O'Callaghan regarding the authenticity of Ross' signatures on 16 countersigned, Metzger checks.

**16.** Hopkins admitted that she knowingly lied to the officer and said that Ross had signed the 16 checks during the preceding 2014-2015 school year.

**17.** When summoned the following day to be interviewed by Bera, Hernandez, and Chief Ramon, Hopkins *apparently* recanted, and admitted to having signed Ross' name on the 16 checks.

**18.** Hopkins recalled Chief Ramon told her when the two were alone that Ross had denied knowledge or responsibility for Hopkins' action; Hopkins then testified that she wrote her statement inculpating Ross on various matters.

**19.** When Teresa Ramon, the Judson Chief of Police confirmed with Judson CFO Jose Elizondo, Jr. no money was missing from any Metzger checking account, Chief Ramon withdrew from the investigation; the remainder of the investigation essentially targeted Ross and was directed by Bera and Hernandez.

**20.**     Bera resigned Judson in November 2018 and was employed by the
Kingsville ISD as Superintendent, after Bera had caused a Texas Labor
Code against the District by her Secretary and which was settled for a substantial
amount of money by JISD.

**21.** On September 23, 2019, Bera's contract was bought out was forced to resign as
Superintendent by the Kingsville ISD after all seven Principals in the Kingsville
ISD were displaced by Bera.

**22.**     May 19, 2016, based on information he received from Bera,   Hernandez,
and   Elizondo, Superintendent Montoya made a written recommendation to the
Judson Board of Trustees that Ross be non-renewed from any continuing
employment in the Judson ISD, without the Board's consideration of Ross' last
performance evaluation of Ross   Associate Superintendent Nancy Robinson
made on June 11th 2015, as required by the Texas Education Code.

**23.**     On May 19, 2016, a quorum of the Judson ISD Board voted to accept
Montoya's   recommendation for the non-renewal of Ross, subject to  Ross's
challenge at an        evidentiary type hearing where Ross would be prosecuted by
the school district's lawyer Robert Russo for non-renewal before the same Board
of Trustees.

**24.**     On May 19, 2016 JISD's Board acted to non-renew Ross' contract but
refused to comply with the Texas Education Code ("TEC") by disclosing and
providing the particular and specific information used as the basis for and
considered by the Board when it voted to accept the non-renew

**25.**     The hearing to non-renew Ross was scheduled by the Judson Board was
scheduled for June 7, 2016, to commence after the board voted on the issue of
removing Dr. Willis Mackey's name from and renaming the new Willis R Mackey
High School.

**26.**     Two types of non-renewal appeal hearing platforms from which the Board
could choose to offer Ross in her challenge of the Board's non-renewal of her
future employment relationships with the Judson District were as follows: the

first appeal hearing platform would occur before an independent hearing examiner appointed by the Board and the Texas Education Agency at which the Rules of Evidence would apply and subpoena would be available to compel the attendance of witnesses to be deposed in advance of the hearing, or their appearance at the hearing;  and the second type of appeal hearing platform would be where the Board would sit as a "jury" to consider Ross's appeal of the Board's previous decision to non-renew her employment relationship with the District.

27.     In the second appeal hearing platform, the Texas Rules of Evidence do not apply, no power of subpoena is available to compel the attendance of witnesses for depositions or live testimony, and all factual and legal decisions are made by the same Board of Trustees whose non-renewal of Ross' future employment status was being appealed by Ross; the Judson Board chose to implement the second appeal platform for Ross' appeal of her non-renewal.

28.     After the Board meeting on May 19, 2016, Superintendent Montoya hand-delivered to Ross a NOTICE OF PROPOSED NON-RENEWAL which stated, inter alia the following:

"...please be advised that the Board of Trustees, at the Board meeting held on May 19, 2016, voted to approve my recommendation to consider a               proposed non-renewal of your employment contract with the District.               Pursuant to the instructions of the Board, this document constitutes the               Board's notification to you that your employment contract is being               proposed for non--renewal. The reasons for the proposed non-renewal               found in policy DFBB are as follows (sic):

2.     Failure to fulfill duties or responsibilities.

3.     Incompetency or inefficiency in the performance of duties.

6.     Failure to comply with Board policies are administrative regulations.

15.   Failure to meet The Districts standards of professional conduct.

29.   Misrepresentation of facts to a supervisor or other District official in the conduct of district business." (Doc. 32-34, Ppg. 1-4)

**29.**   On May 30, 2016 at 5:38 PM attorney Robert Russo, Walsh Gallegos etc sent an email to Ross' non-attorney James E Conley "Judge Conley" stating, inter alia, the following: "and follow-up to your email to Ms. Laura Fowler, Earlier this afternoon, here are some more specific allegations of fact that support the     reasons for the proposed nonrenewal delivered to Ms. Carolyn Ross and you      on May 20, 2016, at Metzger Middle School…" listing 24 bullet points,

**30.**   In this case, choosing to schedule Ross' appeal of the Board's adoption of Ross' non-renewal hearing to occur on the same night as the Board's highly publicized  "de-naming" and "renaming" of "Willis R. Mackey High School", the Judson Board and Administration assured that its inflammatory, and false allegations against Ross (i.e. mishandling school monies, having alcohol on campus, being drunk at an 8th grade graduation ceremony, charging students to attend pep rallies to raise cash to feed her, Ross' "slush fund", etc.) would receive maximum media attention and publicity [the Judson Board of Trustees still publishes on its web site the complete video recording of the prosecution of Ross by Robert Russo, Walsh Gallegos Trevino Russo & Kyle PC before the Judson ISD Board of Trustees.

**31.** The televised prosecution of Ross by Judson attorney Russo on June 7, 2016, continues to be available on the Judson ISD website even through the present time.

**32.**   The Judson Board of Trustees voted to non-renew Caroline Ross, Principal of Metzger Middle School, Judson ISD from future employment in the Judson ISD on June 7, 2016, by a  quorum or 5 of the 7 member Judson ISD Board of

Trustees; the quorum voting to non-renew Ross being Dr. Melinda Salinas (former Judson Middle School Principal who according to Elida Bera (Depo Bera 18/14-25) was unjustly punished by Superintendent Dr. Willis Mackey; Arnoldo Salinas (father of Dr. Melinda Salinas), Richard Lafoille, Renee Paschall (a former teacher inJudson ISD, and whose father was the name sake of Paschall Elementary School), and Richard Salyer. One Board member, Gilbert Flores, was absent, and one Board Member Jose Macias voted against the non-renewal of Ross.

**33.**     Ross claims she was : **1.)** subjected to discriminatory employment practices by Judson ISD because of her race and gender [she is an African American female], and treated less favorably than others not in her protected class as named by her in her Charge of Discrimination which was filed within 180 days of her non-renewal, investigated by the EEOC/TWC for 180 days or until the administrative conclusion of of the investigation whichever occurred sooner, suit filed within 60 days from the date of Ross' receipt of her TWC "Notice of Right to File a Civil Action", and the elements of her discrimination claim showing that she was initially replaced by a African American male Assistant Principal, then pretextually replaced by an un-willing African American female Curricululum and Instruction Director on an interim basis, and then pretextually replaced by another African American female Principal (who was transferred because of her disruptive behavior) also on an interim basis because of Ross' suit, and Ross was punished more harshly than other administrators outside of Ross' protected class who were reasonably, similarly situated when coupled with Bera's statements revealing her racial animus in targeting Ross ; **2.)** she was subjected to un-constitutional denial of equal protection because of her association with and/or support of Mackey, and exercise of protected speech; **3.)** and or she was subjected to retaliation because of her protected association with Judson's first African American Superintendent, Dr. Willis Mackey (Bera was hostile toward Mackey and *perceived* Mackey was kin to Ross, and Mackey was called "Willis" by Ross, and

Mackey was identified by Ross as her childhood friend from the Luling/Lockhart area of Texas); **4.)** she was subjected to un-constitutional retaliation because of her protected speech in obtaining and defending a social program for Metzger on June 16, 2015 [when Ross was summoned specifically by Board Member Renee Pachall, *and* the Judson Board to appear before the Board to defend Metzger's receipt of ] a three year [multi-year], $20,000.00 (approximately) "community-social-work" grant ("United Communities of San Antonio") which had been secured and authorized for Metzger by former Associate Superintendent Nancy Robinson (who was herself disfavored by certain Board members [Lafoille, Salinas, Arnoldo Salinas, Renee Paschall, and Richard Salyer]because of her professional relationship with Mackey); **5.**) when Board Member Richard Lafoille yelled at Ross during a public session of the Judson Board on November 19, 2013 school year, Ross courteously responded by saying to Board Member Lafoille "Please do not yell at me!", causing Ross to be officially reprimanded by the the Director of Human Resources (Exh. 25) ; **6.)** she was subjected to un-constitutional retaliation because of her protected speech in supporting Dr. Willis R. Mackey's plans to have the professional educators and adult school leaders of Metzger Middle School reflect the racial demographics of that school's student body and community, even at the Judson Board meeting in the Fall of the 2015-2016 school year when she was summoned to defend her use of the Community United social workers program; **7.)** she was subjected to un-constitutional retaliation because of her protected speech in supporting naming of the new Judson High School as the Willis R. Mackey High School after Dr. Willis R. Mackey; **8.)** she was subjected to un-constitutional denial of due process, in the knowing use by Judson ISD of false or groundless discrete allegations against Ross which were not each supported by a preponderance of the plausible or credible evidence ; **9.)** she was subjected to un-constitutional denial of due process, in the knowing violation of District policies and or use by Judson ISD of discretely false/groundless allegations against Ross which were not each supported by documentation which tended to show by a

preponderance of the plausible or credible evidence, that constituted good cause fand or not alleged by Defendant(s) with intent to prove but to merely further excite the prejudices of an already hostile quorum of the Judson Board of Trustees; **10.)** she was subjected to un-constitutional denial of due process by being non-renewed with career stigmatizing reasons without a meaningful name clearing hearing; **11.)** she was subjected to un-constitutional deprivation of protected interests either property or liberty in the provisions of the JISD/TASB Policies (e.g. DFBB inter alia ) denial of due process by being recommended for non-renewal without being given the supporting documentation specific reasons and the specific policies and specific data and what the witnesses interviewed by the defendant's agents and presented to the Superintendent which supporting he presented to the Board  at the June 7, 2016 "hearing"might tend to say in support of the charges against Rossor for specific reasons other than evidence supported by the preponderance of the legal evidence, and or grounded on reasoned analysis, in the knowing use by Judson ISD of false or groundless discrete allegations against Ross which were not each supported by a preponderance of the plausible or credible evidence as the retaliation because of her protected speech in supporting  as tlida Bera, Richard Lafoillewith claims of discrimination, retaliation, and harassment under Chapter 21 of Texas Labor Code, and related claims under Article 1, sections 3, 3a, 8, and 19 of the Texas Constitution, and the United States constitution.

### LATE FILING AND EXCEEDING PAGE COUNT BY 82 PAGES WITHOUT LEAVE

34.  Plaintiff's counsel Watts experienced life-threatening health issues on April 23, May 5, and May 30, 2019. The effect of those issues was to cause intermittent  disorientation.

35.  Ross was non-renewed from her employment ending her career on the basis of approximately 24 or more claimed reasons, has produced approximately 2000 pages of production, approximately 8

depositions,                      `approximately 7 affidavits, and numerous exhibits.

36.   On May 24, 2019, Defendants filed their Plea to the Jurisdiction and Motion for
               Summary Judgment On September 4, 2019 Plaintiff was instructed that
an             amendment to her Responses to Defendants Plea to the Jurisdiction and
                       Motion for Summary Judgment should be filed on or before Friday
September 6,        2019.

37.   Defendants' dispositive motions listed approximately 4 items
               denominated as facts which did not accurately reflect the salient facts in
this case,     and Plaintiff compiled approximately 95 paragraphs of discrete facts in
                       establishing the background of this case.

38.   Watts' health and medication adjustments caused some on-task problems for
               Watts, and on September 4, 2019 the Court granted Watts for Ross an
extension            through September 6, 2019 to amend and file Ross' Responses to
the Defendants'    Plea to the Jurisdiction [Subject Matter] and Motion for Summary
Judgment.

39.   Watts was fully cognizant of the 20 page rule and need for leave, but Watts
               became distressed by the dwindling hours and misperformance of his
voice          recognition system and inadvertently overlooked the 20 page limit and
                       conflated state rules with federal rules.

40.   Watts began to panic with the size of the document and started attempting to
               pare the 32 pages of 97 facts, standard of review, argument, 9 pages of the
               timeline, and 50 pages of discussion molding the ungainly 70 pages 102
page           responses on the court's CM/ECF web site inadvertently in violation of
the 20         page rule or with leave on the evening of September 6, 2019, and was
unable to            get past error messages. Watts inadvertently filed without Leave of
Court Ross'    Responses in excess of teh page limit,, and Ross should not be
penalized for   Watts' issues or lapse in so doing. Watts deeply regrets not
following the Local      Rules or seeking Leave to exceed the page numbers. Watts
realizes that the Courts     have the authority to manage the filing of documents and

the Judges of this Western District have decided and promulgated the Rule limiting the Response to 20 pages without leave and good cause to exceed. In this event rich and document heavy case, where for a full factual disclosure to occur, more than 32 pages of facts mandates the more than 20 pages of document. The page analysis of the 102 page document is attached hereto as Plaintiff's Exhibit 1.

41. At 5:10 PM on September 6, 2019, Watts sent to opposing counsel Craig Wood the Ross Exhibit List and Exhibits 51-62. See Exhibit 2.

42. At 10:38 PM on September 6, 2019, after failing in multiple efforts to file the Responses and Exhibits in the CM/CMF system, Watts emailed to Craig Wood and Katie Payne the attachment of the body of Ross' 102 page Responses, stating *You will not believe this. I have been at this all day. I have been trying to file since about 10:14 and I have either forgotten my password or username. I have tried to reset sincePACER office doesn't open until Monday morning. I am sending to you and hope you will agree to let me file on Monday. This has been the toughest year of my professional lif*e. See Exhibit 3.

43. At 10:43 PM on September 6, 2019, after failing in multiple efforts to file the Responses and Exhibits in the CM/CMF system, Watts emailed to Craig Wood and Katie Payne the attachment of the body of Ross' 102 page Responses, saying *Sorry. I will come out in morning and try again with a motion. Please say unopposed*. See Exhibit 4.

44. In summary, Watts communicated his unforeseen Pacer/EM/CMF filing issues with opposing counsel Craig Wood and Katie Payne on Friday, September 6, 2019 at 10:38PM. At which time, Watts emailed Wood and Payne his Final Response as a means to supplement his inability to file due to being locked out of the Pacer/EM/CMF system.

45. In Defendant's Motion to Strike Plaintiff's Response to Defenadants' Motion for Summary Judgment, Or In The Alternative, Defendants' Motion for

Extension of  Time to File Reply and To Exceed Page Limits and Request for Expedited
Rulin,          Dkt. 47. Defendant states that Plaintiff untimely filed her Responses to
                    Defendants' Plea to the Jurisdiction and Motion for Summary
Judgement on          September 9, 2019, which is untimely, pursuant to the
Court's prior Order(s).          Dkt. 46. Defendant continues to state that Plaintiff
did not move the Court for an      extension, nor show good cause and excusable
neglect. Plaintiff had no knowledge      of his inability to access the Pacer?EM/CMF
system until he began submission          attempts at 10:06PM on Friday,
September 6, 20190.

46.    For late filing, no harm occurred to Defendants; Plaintiff exhausted all
available          remedies in attempting to contact Pacer/EM/CMF TechSupport,
and call the          Court. However, at such time, all attempts proved futile as both
Pacer and the          Court were unavailable and not open      to receive
communication until Monday,      September 9, 2019, at which time, Plaintiff promptly
requested override access          and new login credentials in order to officially file
her response.

34.    Plaintiff requests the opportunity to exceed the 20-page limit of
dispositive motions as stated by Local Rule CV-7(e)(3) of the District Court for
the Western District of Texas; plaintiff will trim as directed by the court
especially on long quotes.

### BACKGROUND

1. Plaintiff was ordered to submit a Response to Defendant's Plea to the
Jurisdiction and Motion for Summary Judgment on August 30, 2019.

2. Plaintiff's untimely filing with the Court was with good cause, and Defendants
were not harmed in that Watts emailed Ross' Responses to Defendants' counsel
on the night of August 30, 2019.

3.  The reason that Watts did not file the subject Responses with the Court before midnight on August 30, 2019 was that Watts was effectively locked out of PACER's CM/ECF filing system.

4.  Watts has used the Google Chrome App with y, September 6, 2019.

5.  Watts timely submitted Defendant Counsel a copy of Plaintiff's response as a means of preserving submission until Watts was able to reach PACER administration on Monday, September 9, 2016 and receive a manual override of his locked account and password reset.

6.  Defendant states that Plaintiff did not move the Court for an extension, nor show good cause and excusable neglect, as required by the Federal Rules and Plaintiff's Response should be stricken from the record accordingly. *See* Fed. R. Civ. P. 6(b).

7.  Rule 6(b)(1)'s "good cause" standard is subject to the district court's discretion and does not require a showing of "excusable neglect" if the opposing party requests the enlargement of time "before the original time or its extension expires."

8.  Defendant cites *Gul Petro Trading Co. v. Nigerian Na'tl Petroleum,* 233 F.R.D. 492, 493(E.D. Tex. 2005) (reasoning that permitting motion to exceed page limit would "invite a paper war, with briefs, responses, replies and sur-replies of geometrically increasing length." Defendant stated only four (4) material facts, which is inadequate (¶ 6 and ¶ 7). The Fact statement and timeline produced by Plaintiff to address the under plead fact statement presented by Defendant is necessary to address factual deficiencies within the brief. Dkt. No. 47.

9.  Plaintiff's page limit is justified by the factual complexities arising out of this case that are necessary to properly address the inadequacies of Defendant's good cause for termination, and a Motion for Leave was a situational lapse by Watts which will not reoccur.

10. This Motion to Exceed is not submitted for the purpose of inviting a paper war but so that justice may be done.

## PRAYER

The Plaintiff requests that the Court grant her Motion to Exceed Page Limits in her response to Docket # 32.

Respectfully submitted,
*Isl* Larry Watts
Laurence "Larry" Watts
T.B.N. 20981000
P.O. Box 2214
Missouri City, Texas 77459
Telephone: (281) 431-1500
Fax: (877) 797- 4055
e-mail: wattstrial@gmail.com

*Attorney for Plaintiff*

## VERIFICATION

The facts stated herein are true and correct to my personal knowledge and I make this statement subject to the pain and penalty of perjury.

*Isl Larry Watts*
Laurence ("Larry") Watts

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2019, a true, complete, and correct copies of the foregoing motion and attachments were served on opposing counsel by e-service, if available, and/or facsimile transmission.

*Isl Larry Watts*

14

Laurence ("Larry") Watts