UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CAROLINE ROSS, | § § | |
| Plaintiff, | § § | |
| v. | § § | SA-18-CA-269-HJB |
| JUDSON INDEPENDENT SCHOOL DISTRICT; DR. CARL A. MONTOYA; ELIDA BERA; DR. MELINDA SALINAS; RENEE PASCHALL; and RICHARD LAFOILLE, | § § § § § § § | |
| Defendants. | § | |

**ORDER**

Before the Court is Defendants' Motion for Summary Judgment, or In the Alternative, Plea to the Jurisdiction in Part. (Docket Entry 32.) The undersigned has authority to preside over these matters pursuant to 28 U.S.C. § 636(c), as the parties have consented to magistrate judge jurisdiction. (*See* Docket Entries 29, 30.) For the reasons set out below, Defendant's Motion for Summary Judgment (Docket Entry 32) is **GRANTED**, and Plaintiff's case is **DISMISSED**.

I. **Jurisdiction.**

Plaintiff Caroline Ross brings this lawsuit alleging violations of 42 U.S.C. § 1983 and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LABOR CODE § 21.001, *et seq.* (Docket Entry 1-2, at 139.) The Court has original subject matter jurisdiction over Plaintiff's § 1983 claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over her TCHRA claims pursuant to 28 U.S.C. § 1367.

II. **Procedural Background.**

Ross, a former elementary school principal, filed this lawsuit in Bexar County District Court against Judson Independent School District ("JISD"), alleging discrimination based on race,

sex, and age in violation of the TCHRA when JISD non-renewed her employment contract. (*See* Docket Entry 1-2, at 17.) Ross then filed a Second Amended Petition, adding § 1983 claims against JISD, and adding JISD administrators and Board of Trustees members as defendants. (Docket Entry 1-2, at 131.) Defendants removed the case to this Court on March 22, 2018. (Docket Entry 1.)

Defendants moved for summary judgment on all of Ross's claims or, in the alternative, dismissal of Ross's TCHRA claims for lack of subject-matter jurisdiction[1]. (Docket Entry 32, at 1–2.) Ross responded to Defendants' motion (Docket Entry 41), and Defendants moved to strike the response as overlong (Docket Entry 47, at 3). The Court ordered Ross's response stricken from the record and ordered Ross to file an amended response not exceeding thirty pages in length. (Docket Entry 52.) Ross filed her amended response on October 10, 2019 (Docket Entry 54)[2], and Defendants have replied (Docket Entry 56).

### III. Factual Background.

#### A. *Ross's Employment, Investigation, and Termination.*

Ross is an African American woman born in 1961. (Docket Entry 1-2, at 130–31.) She was employed by JISD for eighteen years, serving first as an assistant principal, then building principal, and finally as a campus principal at Metzger Middle School ("MMS"). (*Id.* at 131.) In

---

[1] Defendants' jurisdictional argument is based on *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 784–85 (Tex. 2018), in which the Texas Supreme Court held that, because the TCHRA represents a limited waiver of sovereign immunity based on a statutory violation, the elements of the violation are jurisdictional facts, and a plaintiff's failure of proof at any stage of a TCHRA analysis deprives the trial court of jurisdiction. Because that failure would also entitle Defendants to dismissal on the merits regarding TCHRA claims, the issues are considered together.

[2] The exhibits and appendix to this amended response, totaling 483 pages, were stricken by this Court's Order on October 31, 2019, for being duplicative of previously filed exhibits and for attempting to circumvent the Court's prior Order that the response not exceed thirty pages. (Docket Entry 55.)

2

February 2016, JISD investigated Ross for alleged mishandling of school funds at MMS; she was placed on administrative leave during the investigation. (Docket Entry 32-1, at 4.) The investigation revealed Ross had failed to document or erroneously documented numerous checks drawn on MMS's account; failed to redeposit change from vendors; and failed to enter required electronic requests to spend MMS funds. (*Id.* at 5.) Additionally, the investigation revealed that Ross had violated school policy by directing her secretary to sign Ross's name to certain "[C]ampus Activity Fund" checks and had instructed her secretary to lie to investigators about it. (*Id.*) Investigators also found that Ross had charged students and faculty for activities and supplies that were supposed to be covered by JISD. (*Id.*, at 5–6.)

The JISD Board of Trustees voted to propose nonrenewal of Ross's contract for the following school year. (Docket Entry 32-1, at 8.) JISD sent Ross a Notice of Proposed Nonrenewal, listing the following reasons for the proposal: (1) failure to fulfill duties or responsibilities; (2) incompetency or inefficiency in performance of duties; (3) failure to comply with Board policies or administrative regulations; (4) failure to meet standards of professional conduct; and (5) misrepresentation of facts to a supervisor or other District official in the conduct of District business. (*Id.*) It also notified Ross of her right to request a hearing and of the policies that would govern that hearing and it gave Ross copies of the policies she had allegedly violated, as well as witness statements against her. (Docket Entry 32-34, at 5–28.)

Through her representative[3], Ross requested a public hearing before the JISD Board ("the Board") on the proposed nonrenewal. (Docket Entry 32-35, at 2.) The Board conducted a hearing

---

[3] Plaintiff was represented by a former Justice of the Peace, James E. Conley III. Mr. Conley, a former attorney, was disbarred in 2001. *See* (Docket Entry 32-35); https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=222633.

on June 7, 2016, at which both parties through their representatives, examined and cross-examined witnesses. (*Id.*, at 3–5.) Following the hearing, the Board voted five-to-one not to renew Ross's contract. (*Id.*, at 10.)

Ross petitioned the Texas Commissioner of Education for review of the decision not to renew her contract. (Docket Entry 32-41, at 1.) Ross argued that the decision not to renew was: (1) arbitrary, capricious, and unlawful; (2) violated due process; and (3) was not supported by substantial evidence. (*Id.*, at 3–4.) The Commissioner upheld the Board's decision, concluding that the Board's findings that Ross had violated school policy were supported by substantial evidence. (*Id.*, at 5.) The Commissioner also concluded there was no due process violation because of Texas court precedent holding there is no property interest in a term contract beyond the contract's term. (*Id.*, at 4.) Following the adverse decision, Ross filed suit.

**B.** *Ross's Replacements.*

While the initial investigation against Ross was pending, Ross was replaced on an interim basis by Debbie Grady. (Docket Entry 32-2, at 2.) Grady is an African American woman born in 1959, two years before Ross. (*Id.*) Following the investigation and Ross's nonrenewal, Dr. Tracey Valree was appointed to permanently replace Ross as principal of MMS beginning in the 2016–2017 school year. (Docket Entry 32-44, at 1.) Valree is an African American woman born in 1967 and is approximately six years younger than Ross. (*Id.*, at 1–2.) In the 2019–2020 school year, Valree herself was replaced by Loretta Davidson, a white female. (Docket Entry 54, at 3; Docket Entry 56, at 3.)

**C.** *Alleged Racial Tension at MMS.*

Ross contends the backdrop to the investigation, and the true reason for her nonrenewal, was racial animosity between the white and Hispanic MMS faculty members on one side, and the

4

African American MMS faculty on the other. She alleges the animus against her began under the previous superintendent, Dr. Willis Mackey. (Docket Entry 54, at 1–2.) Dr. Mackey is an African American and Ross claims the white and Hispanic faculty members believed Dr. Mackey gave preferential treatment to Ross and other African American faculty during his tenure. (*Id.*, at 2.) After Dr. Mackey retired, Ross claims she was singled out for removal by Elida Bera, a Hispanic female and Ross's supervisor. (*Id.*) She claims Bera initiated the investigation against her and that it was purely pretextual; the true reason behind the investigation was that Bera and other white and Hispanic faculty members wanted her removed because they believed she was incompetent and had only retained her position based on Dr. Mackey's alleged preferential treatment. (*Id.*)

## IV. Summary Judgment Standard.

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if the record shows no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A party against whom summary judgment is sought may not rest on the allegations or denials in his pleadings but must come forward with sufficient evidence to demonstrate a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute concerning a material fact is "genuine," and therefore sufficient to overcome a summary judgment motion, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant "cannot satisfy [its] burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004). Further, Rule 56 does not "impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . . that duty [is allocated] to the opponent of the motion . . . ." *Skotak v. Tenneco Resin, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992).

V.   **Analysis.**

Defendants request summary judgment on all of Ross's claims. (Docket Entry 32, at 1.) They argue that (1) Ross cannot establish a *prima facie* case of race, sex, or age discrimination under the TCHRA; (2) her proffered comparators are not similarly situated; (3) JISD terminated Ross for legitimate, non-discriminatory reasons; (4) Ross cannot establish a retaliation claim because she did not engage in protected speech or association; and (5) Ross failed to show that she was deprived of a protected liberty or property interest to support her due process claim. Each of these contentions is addressed below.

A.   *The TCHRA Claims.*

a.   *Race and Sex Discrimination.*

The TCHRA makes it unlawful to discriminate in employment based on race, color, disability, religion, sex, national origin, or age. TEX. LAB. CODE § 21.051. A plaintiff may prove

discrimination based on a protected class through direct or circumstantial evidence. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 781–82 (Tex. 2018). The former can be shown through direct evidence of what the defendant said and did. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). Because direct evidence is rarely available, the Supreme Court created a burden-shifting mechanism which allows a plaintiff to prove her case through circumstantial evidence. *Id.*

The applicable burden-shifting framework is the familiar one set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013).[4] Under the *McDonnell Douglas* framework, (1) the plaintiff must establish a *prima facie* case of discrimination; (2) the burden then shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions; and (3) once the defendant articulates a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to prove that the defendant's reason was either a pretext for discrimination or that, even if the employer's reason is true, she was terminated because of her membership in the protected class. *Miller*, 716 F.3d at 144 (citing *Gross v. FBL Fin. Svcs., Inc.*, 557 U.S. 167, 180 (2009)).

To establish a *prima facie* case of discriminatory discharge under the *McDonnell Douglas* framework, Ross must show that she was: (1) a member of the protected class; (2) qualified for her employment position; (3) terminated by the employer; and (4) replaced by someone outside of the protected class. *Garcia*, 372 S.W.3d at 632. Defendants argue that Ross cannot establish a

---

[4] The TCHRA was "modeled after federal civil rights law" and "purports to correlate state law with federal law in the area of discrimination in employment." *Shiyan Jiang v. Tex. Comm'n on Env. Qual.*, 321 F. Supp. 3d 738, 745 n.3 (W.D. Tex. 2018) (quoting *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999)). Accordingly, Plaintiff's TCHRA discrimination claims are analyzed under the same analytical framework as federal discrimination claims.

*prima facie* case of race- or sex-discriminatory discharge because her replacement belonged to the same racial group, and was a member of the same sex.

Defendants' arguments are well taken. Ross was initially replaced on an interim basis by Debbie Grady, an African American woman who is two years older than Ross. (Docket Entry 32-2, at 2.) She was then permanently replaced by Dr. Tracey Valree, an African American woman. (*Id.*, at 1–2.) Ross has not contested any of these facts, but instead argues that Valree's ultimate replacement by Loretta Davidson, a white female, supports her *prima facie* case. (Docket Entry 54, at 3; Docket Entry 56, at 3.) Ross contends that her supervisor Elida Bera intended to promote a white person all along and that Grady and Valree were mere placeholders. (Docket Entry 54, at 3.) She cites the deposition of Renee Lafreniere, the former Career Director at JISD, who stated that JISD's top picks for Ross's replacement were Davidson and Liza Guerro who is a Hispanic female, but that they appointed Dr. Valree to avoid the perception of racial bias. (Docket Entry 41-3, at 47–48.)

Absent other evidence, an employee does not make out a *prima facie* case where the first and second persons to replace her were not outside the protected class, but the third person was, especially where the third replacement was not made until more than three years after her termination. Ross has provided no case law or other authority holding that choosing a replacement of the same race or sex in order to avoid litigation supports a *prima facie* case of discrimination. Any such rule would render the *prima facie* case requirement meaningless; it would effectively read the replacement element out of the *prima facie* test. Accordingly, Ross has not established a *prima facie* case on this record for discriminatory discharge based on race or sex. *Garcia*, 372 S.W.3d at 632.

Another way to raise an inference that an adverse employment action was motivated by race- or sex-discrimination is by use of comparators. To make out a *prima facie* case in this way, a plaintiff must show that she (1) is a member of a protected class, (2) was qualified for the position at issue, (3) was the subject of an adverse employment action, and (4) was treated less favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protect class, under nearly identical circumstances. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). Generally, comparators will not be deemed "similarly situated" under "nearly identical circumstances" where they have different supervisors, work for different divisions of a company, or "were the subject of adverse employment actions too remote in time" as compared to the plaintiff. *Id.* "Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated." *Id.*, at 259–60.

Ross proffered several putative comparators in support of her race and sex discrimination claims. (*See* Docket Entry 32-46, at 4–5.) None of the comparators, however, have a similar violation history to Ross, and less than half had similar work responsibilities. (*See id.*) Furthermore, most of the proffered comparators apparently work for high schools, not elementary schools; if any worked for MMS, they are not identified as such. On this record, Ross cannot show she was treated less favorably than other similarly situated employees under nearly identical circumstances. *Lee*, 574 F.3d at 259. Accordingly, Ross has failed to raise a genuine dispute as to her race and sex discrimination claims and summary judgment is proper.

### b. *Age Discrimination.*

As Defendants acknowledge in their motion, Ross's permanent replacement was six years younger than her; accordingly, Ross can establish a *prima facie* case as to age discrimination.

9

(Docket Entry 32, at 6.) The burden therefore shifts to the Defendants to articulate a legitimate, non-discriminatory reason for Ross's discharge. *Miller*, 716 F.3d at 144. To support their burden of production, Defendants have pointed to the multiple MMS policy violations uncovered by the JISD investigation, the reasons stated in the Notice of Proposed Nonrenewal, and the Education Commissioner's decision finding that substantial evidence supported the Board's conclusions that Ross had violated school policy. (*See* Docket Entry 32, at 6.) This evidence shifts the burden back to Ross to show pretext or improper motivation.

Ross has presented nothing in reply to show the non-discriminatory reasons offered for her termination were mere pretext, other than her own uncorroborated speculation. Such speculation is insufficient to survive a motion for summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (uncorroborated, self-serving speculation does not create a genuine issue of material fact precluding summary judgment). To meet her burden, Ross was required to offer sufficient evidence to create a genuine issue of material fact that either (1) the Defendants' reason is false and is a pretext for age discrimination, or (2) that although the Defendants' reason is true the Ross's age was a "motivating factor" in its decision. *McDonnell Douglas*, 411 U.S. at 804–05; *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 394 (5th Cir. 2008). She has failed to do so here.

Furthermore, while Ross proffered several comparators to support her race and sex discrimination claims, Ross failed to point to a single comparator to support her age discrimination claim. (*See* Docket Entry 54, at 22; Docket Entry 32-46, at 4–5.) To raise an inference that an adverse employment action was motivated by age discrimination and was therefore pretextual, Ross needed to establish that (1) she is a member of a protected class, (2) was qualified for the position at issue, (3) was the subject of an adverse employment action, and (4) she was treated less

favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protect class, under nearly identical circumstances. *Lee*, 574 F.3d at 259. Because Ross failed to identify comparators satisfying the fourth requirement, she has failed to raise an inference of age discrimination. Accordingly, summary judgment is proper as to her age discrimination claim.

**B.     *First Amendment Retaliation.***

Ross's complaint alleges that JISD violated 42 U.S.C. § 1983 by retaliating against her for exercising her First Amendment rights of free speech and association. (Docket Entry 1-2, at 139.) The government may not compel a person to give up their First Amendment rights as a condition of public employment. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999). To recover for a First Amendment retaliation claim, Ross must satisfy four elements: (1) she must suffer an adverse employment decision; (2) her speech must involve a matter of public concern; (3) her interest in commenting on matters of public concern must outweigh the Defendants' interest in promoting efficiency; and (4) her speech must have motivated the adverse employment decision. *Id.*

In responding to Defendants' motion for summary judgment, Ross asserts that the true reasons for her termination were her "support" during board meetings of previous superintendent Dr. Mackey, her support for the school's proposal to rename MMS after Dr. Mackey, and a grant she obtained for social work at MMS. (Docket Entry 54, at 28–29.) While speech at public board meetings and support for renaming the school could qualify as protected speech involving matters of public concern, Ross does not cite to record evidence to show she actually engaged in speech on these issues. Even if she had, she also failed to cite to any record evidence showing causation, *i.e.*, that JISD's nonrenewal of her contract was motivated by her speech. A plaintiff "cannot

11

satisfy [her] burden with conclusory allegations [or] unsubstantiated assertions." *Freeman*, 369 F.3d at 860.

With regard to Ross's contentions regarding a grant obtained for social work, obtaining the grant appears to be an action undertaken in the course of performing her job, and any speech regarding it was directed to her supervisors and fellow employees, not to persons outside the workplace. "Activities undertaken in the course of performing one's job are activities pursuant to official duties and [are] not entitled to First Amendment protection." *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008).

In a single sentence, Ross asserts her right to association was violated by the school's retaliatory non-renewal of her contract. (*See* Docket Entry 54, at 28.) She does not elaborate on how exactly her right to association was infringed, but it appears to have been based on her support at board meetings for the former superintendent Dr. Mackey and another assistant superintendent. (*Id.*; Docket Entry 32-47, at 11, 19.) As with her speech claim, to demonstrate a claim for political association, Ross was required to show (1) an adverse employment action; (2) engagement in a constitutionally protected activity; and (3) her association was a substantial or motivating factor in the adverse employment action. *Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014). While Ross, like all citizens, "cannot be fired for exercising constitutionally protected rights unless some governmental interest outweighs the employee's interest in exercising those rights," *McCormick v. Edwards*, 646 F.2d 173, 175 (5th Cir. 1981), her allegations fail to provide record support for an association claim or any citation to authority that internal "support" for a supervisor or fellow employee is a protected association.

Accordingly, Ross has failed to raise a genuine dispute that she engaged in protected activity that led to retaliation against her, and summary judgment is proper regarding her § 1983 First Amendment claims.

### C.  *Due Process.*

Ross claims that her nonrenewal hearing violated her right to due process under the Fourteenth Amendment. To establish a violation of due process under § 1983, Ross must show (1) a valid liberty or property interest which has been interfered with by the State; and (2) the procedures used to interfere with her interest were not constitutionally sufficient. *Kentucky Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The liberty or property interests must be more than "an abstract need or desire" and must be based on more than "a unilateral hope." *Id.*, (*quoting Bd. of Regents of St. Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

Defendants contend Ross has failed to support her due process claim. (Docket Entry 32, at 13.) Specifically, they argue (1) she cannot show a violation of a protected liberty interest because she received notice and an opportunity to be heard; (2) she cannot show she was deprived of a protected property interest because there is no property interest in a term contract beyond the contract termination date; and (3) she received all the state process she was due at the hearing on the Board's proposal to nonrenew her contract. (Docket Entry 32, at 13–17.)

#### a.  *Liberty Interest.*

To support a § 1983 claim that JISD infringed upon a valid liberty interest, Ross must show that: (1) she was discharged; (2) stigmatizing charges were made against her in connection with the discharge; (3) the charges were false; (4) she was not provided notice or an opportunity to be heard prior to her discharge; (5) the charges were made public; (6) she requested a hearing to clear

her name; (7) her employer refused her request for a hearing. *See Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000) (setting out elements).

Ross asserts, generally, that she was deprived of a liberty interest without due process. (Docket Entry 1-2, at 139; Docket Entry 54 at 28.) But she cites to no evidence to support this claim in her response to Defendants' motion. Further, Ross appears to admit in her response that she was provided an opportunity to be heard, and that JISD gave her a hearing on June 7, 2016. (Docket Entry 54, at 11.) She also does not dispute that she received the notice of proposed nonrenewal from JISD. Ross therefore cannot establish elements (4) and (7) of her liberty interest claim. Ross has failed to present a genuine dispute that a protected liberty interest was violated, and summary judgment is proper as to that claim.

### b. *Property Interest.*

A state-conferred property interest in continued employment cannot be deprived without due process of law. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). In the employment context, the existence of the property interest must be decided by reference to state law. *Nunez v. Simms*, 341 F.3d 385, 387–88 (5th Cir. 2003). The Texas Education Code provides that "[a] teacher does not have a property interest in a contract beyond its term." TEX. EDUC. CODE § 21.204 (West 2003). A plaintiff's unilateral belief that she will be retained beyond her contract term because of her outstanding performance does not create a constitutionally protected property interest. *Ray v. Nash*, 438 Fed. App'x. 332, 335 (5th Cir. 2011).

Ross acknowledges that, under the Texas Education Code, an educator cannot have a property interest in a term contract beyond the term stated in the contract, but she claims she had a protected interest in not being "denied public employment except in a fundamentally fair manner." (Docket Entry 54, at 11.) She contends that she was denied due process of law when

14

JISD voted to nonrenew her employment contract because certain aspects of the hearing were fundamentally unfair, specifically: the introduction of hearsay, a missing witness, and the absence of one member who voted with the majority during the hearing. (Docket Entry 1-2, at 137.)

The absence of a valid property interest in continued employment after the expiration of her term contract is fatal to Ross's claim. "[T]he clearly established constitutional right of due process is not implicated" where the plaintiff cannot show a valid property interest. *Nunez*, 341 F.3d at 392. Ross does not contest that she lacks that property interest; accordingly, her attacks on the reasonableness of the procedures used by JISD at the hearing, standing alone, will not support her property interest claim. *Thompson*, 490 U.S. at 460; *see also Nunez*, 341 F.3d at 392.

### c. *Nonrenewal Process Under State Law.*

Finally, Ross attacks the procedures at the nonrenewal hearing on state law grounds, arguing that the hearing was not conducted in accordance with the Board's rules for such hearings under state law. (Docket Entry 54, at 9, 12–13.) She also contends the Board did not consider her most recent employee evaluation, even though it was obligated to do so under the Texas Education Code. (*Id.*, at 8–9.)

While the Texas Education Code does not create a property interest in an educator's continued employment beyond the term in her contract, it does require the board of trustees to notify a teacher in writing if the board intends to renew or not renew the contract, provide the teacher with a hearing if requested, and also provide the procedures to be used at that hearing. TEX. EDUC. CODE §§ 21.206–208. The hearing must be closed unless the teacher requests an open hearing. TEX. EDUC. CODE § 21.207(a). The Code also provides that the hearing must be conducted in accordance with the rules adopted by the board. *Id.*, at § 21.207(b). Regardless of the rules adopted by the board, however, the Code permits the teacher to: (1) be represented by a

representative of the teacher's choice; (2) hear the evidence supporting the reason for nonrenewal; (3) cross-examine adverse witnesses; and (4) present evidence. *Id.*, at § 21.207(c). The board must provide the teacher with notice of its decision following the hearing, and the teacher is entitled to appeal the decision to the Commissioner of Education. *Id.*, at §§ 21.208–209.

Here, JISD sent Ross a Notice of Proposed Nonrenewal listing the reasons for the proposal, Ross requested a public hearing before the JISD Board on its proposal to nonrenew, and a hearing was held on June 7, 2016. (Docket Entry 32-35, at 2.) Ross was represented at the hearing by her chosen representative, presented evidence, examined and cross examined eleven witnesses, and was present to hear the proceedings and evidence against her. (Docket Entry 32-37, 2–4.) After the Board notified her of its decision to nonrenew, she appealed her decision to the Commissioner of Education. (Docket Entry 32-41, at 1.)

Ross has pointed to no evidence in the record that the Board violated its own rules for the hearing, and instead relies on the fact that the Texas Rules of Evidence were not followed, asserting their absence demonstrates the requisite violation. The rules of evidence are applicable, however, only if a board of trustees provides for their application pursuant to its own policy. *Los Fresnos Consol. Indep. Sch. Dist. v. Vazquez*, 481 S.W.3d 742, 745 (Tex.App.—Austin 2015, pet. denied) (Texas Rules of Evidence do not apply at hearings unless the board adopts policy making them applicable); *cf.* TEX. EDUC. CODE § 21.256(d) (West 2005) (providing that in hearings before a hearing examiner, the Texas Rules of Evidence apply). Because the Board did not adopt that policy here, Ross is incorrect in asserting that the introduction of hearsay violated her right to due process. The same is true for her contention regarding the absence of one of her witnesses and the alleged absence of one of the voting members of the Board—she cites no regulations that those

16

absences violate. Accordingly, she has not raised a genuine dispute that she was denied the process she was due under the Texas Education Code.

As to the Board's alleged failure to consider her most recent employee evaluation before deciding to nonrenew her contract, Ross actually concedes that this was reviewed during the hearing. (*See* Docket Entry 54, at 9.) Though couched in terms of failure to consider, her complaint appears to be that it was considered but not given sufficient weight. (*Id.*) Section 21.203 of the Texas Education Code only requires that a teacher's most recent evaluation be *considered* before deciding not to renew a teacher's contract, and then only if "the evaluations are relevant to the reason for the board's action." TEX. EDUC. CODE § 21.203 (West 2003). Because Ross has not raised a material fact issue that JISD failed to consider her most recent evaluations before nonrenewing her contract, summary judgment is proper on this issue.

## VI. Conclusion.

Based upon the foregoing, Ross has failed to demonstrate the existence of a contested material fact, and summary judgment as to her claims is proper. Therefore, Defendant's Motion for Summary Judgment (Docket Entry 32) is **GRANTED**, and this case is **DISMISSED**.

**SIGNED** on December 19, 2019.

Henry J. Bemporad
United States Magistrate Judge